## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

EX 4



FILED
Jun 22 2022, 9:24 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Andrew U.D. Straw<br>Washington, D.C. | Theodore E. Rokita<br>Attorney General for Indiana<br><br>Benjamin M.L. Jones<br>Deputy Attorney General<br>Indianapolis, Indiana |

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew U.D. Straw,<br>*Appellant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee.* | June 22, 2022<br><br>Court of Appeals Case No.<br>22A-PL-766<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Geoffrey J. Bradley, Judge<br><br>Trial Court Cause No.<br>53C01-2110-PL-2081 |

**Bailey, Judge.**

# Case Summary

[1]   Andrew Straw ("Straw") appeals the dismissal, pursuant to Indiana Trial Rule 12(B)(6),[1] of his inverse condemnation claim based upon an alleged State taking without compensation of his license to practice law in the State of Indiana. Straw presents the sole issue of whether the dismissal was erroneous.[2] We affirm.

# Facts and Procedural History

[2]   In 2017, the Indiana Supreme Court Disciplinary Commission ("Disciplinary Commission") suspended Straw's license to practice law in the State of Indiana for 180 days, without automatic reinstatement. *See Matter of Straw*, 68 N.E.3d 1070 (Ind. 2017). As a matter of reciprocal discipline, Straw's license to practice was also suspended in four federal districts.

[3]   After commencing various other litigation in federal and state courts, without resolution in his favor, Straw filed the instant action in the Monroe Circuit Court on October 5, 2021. He named as defendants the State of Indiana and

---

[1] Rule 12(B)(6) permits a defense motion for "failure to state a claim upon which relief can be granted."

[2] In its Appellee's Brief, the State makes a claim preclusion argument, although claim preclusion was not raised and litigated in the trial court. In his reply brief, Straw articulates several additional issues, also not raised and litigated below. The sole count of Straw's Amended Complaint concerned his claim of inverse condemnation, and this was the sole basis for the trial court's order of dismissal. We address the sole issue of whether the face of the complaint shows that Straw is not entitled to relief.

Straw has also requested that Judge Weissman recuse herself from voting upon the merits of the instant appeal, because of her prior associations with the Disciplinary Commission. Judge Weissman was not assigned as a panel member in the instant matter. Accordingly, Straw cannot be granted the requested relief.

Governor Holcomb.[3] Straw's complaint alleged that the Disciplinary Commission had taken his property, specifically, his license to practice law, without paying just compensation. Straw demanded five million dollars – one million for each suspended license – compensation to which he claimed entitlement under Article 1, Section 21 of the Indiana Constitution. Upon the State's motion, the trial court dismissed Straw's complaint, purportedly with prejudice.[4] Straw now appeals.

## Discussion and Decision

[4]  A motion to dismiss for failure to state a claim tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortg. Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind. 2007). Accordingly, our review of a trial court's grant of a Trial Rule 12(B)(6) motion is de novo. *Id*. When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id*. A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id*. at 605.

---

[3] In his Amended Complaint, Straw did not name Governor Holcomb as a defendant, and the trial court subsequently dismissed the Governor as a party.

[4] Trial Rule 12(B) provides in relevant part: "When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule."

[5]  Article 1, Section 21 of the Indiana Constitution prohibits state taking of services or property without just compensation:

> No person's particular services shall be demanded, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

[6]  Similarly, the Fifth Amendment to the United States Constitution provides that "nor shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states via the Due Process Clause of the Fourteenth Amendment. *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009). Our Indiana Supreme Court has held that the state and federal takings clauses are textually indistinguishable and are to be analyzed identically. *Cheatham v. Pohle*, 789 N.E.2d 467, 472-73 (Ind. 2003). An exercise of the State's eminent domain power such as the condemnation of a parcel of property is a constitutional "taking." *Kimco*, 902 N.E.2d at 210. "Other forms of governmental action, however, are 'takings' only if they meet the prevailing federal standard, which is that government action effects a taking if it deprives an owner of all or substantially all economic or productive use of his or her property." *Id.* at 211.

[7]  Where there is no initiation of formal condemnation proceedings, an inverse condemnation action may be pursued for an alleged "taking." As explained by our Indiana Supreme Court:

> The state has inherent authority to take private property for public use. *Kelo v. City of New London*, 545 U.S. 469, 477, 125 S. Ct. 2655, 162 L.Ed.2d 439 (2005). The Indiana Constitution and the Fifth Amendment require just compensation if this authority is exercised. *Schnull v. Indianapolis Union Ry. Co.*, 190 Ind. 572, 575, 131 N.E. 51, 52 (1921). Indiana Code Chapter 32-24-1 (2004) outlines the process by which the state is to initiate eminent domain proceedings. If the government takes property but fails to initiate proceedings, Section 32-24-1-16 explicitly allows an owner of property acquired for public use to bring a suit for inverse condemnation to recover money damages:
>
>> A person having an interest in property that has been or may be acquired for a public use without the procedures of this article or any prior law followed is entitled to have the person's damages assessed under this article substantially in the manner provided in this article.
>
> An action for inverse condemnation requires: "(1) a taking or damaging; (2) of private property; (3) for public use; (4) without just compensation being paid; and (5) by a governmental entity that has not instituted formal proceedings." 29A C.J.S. Eminent Domain § 560 (2007).

*Murray v. City of Lawrenceburg*, 925 N.E.2d 728, 731 (Ind. 2010).

[8] Here, the trial court concluded that Straw failed to state a claim for inverse condemnation because Straw's license to practice law was not a property right, but rather a permit. The trial court relied upon the decision in *Hulbert v. Mybeck*, 44 N.E.2d 830 (Ind. 1942). *Hulbert* involved a request for a permanent injunction prohibiting a county clerk from providing assistance akin to the practice of law. The Court observed that the unauthorized practice of law

"works an injury to the public" and concluded that attorneys in the State of Indiana had no special interest allowing them to maintain an action to enjoin that conduct. *Id.* at 836. The Court explained that attorneys did not possess "a property interest in emoluments" invaded by the unauthorized practice of law. *Id.* at 832. The Court reiterated that the practice of law "'should be termed a privilege, which, when once lawfully acquired, continues during good behavior.'" *Id.* at 535-36 (quoting *In re McDonald*, 200 Ind. 424, 428, 164 N.E.261, 262 (1928)).

[9] We, like Straw, do not read *Hulbert* as setting forth a bright-line rule that the holder of a professional license has no property interest whatsoever. "Whether one has a property interest in a license depends upon whether an individual has a legitimate claim of right to it, which in turn is dictated by the amount of discretion given to the licensing authority." *Ross v. Ind. St. Bd. of Nursing*, 790 N.E.2d 110, 120 (Ind. Ct. App. 2003) (citing *Indiana Fam. & Soc. Servs. Admin. v. Jones*, 691 N.E.2d 1354, 1356 (Ind. Ct. App. 1998)). The *Ross* Court concluded that, "[the appellant] having been granted a license, he was entitled to certain [procedural due process] protections before it was revoked or suspended." *Id.* at 121.

[10] That said, Straw's Complaint does not challenge the merits of his suspension from the practice of law, nor does he assert that he was denied procedural due process in the disciplinary proceedings. Rather, Straw has simply contended that the taking of his intangible property by a State actor, without compensation, establishes prima facie a claim of inverse condemnation. But an

inverse condemnation claim is not established solely by showing that a property interest was taken without payment; rather, it must be taken for State "use." *Murray*, 925 N.E.2d at 731. "[A] State … may not transform private property into public property without compensation … . This is the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164, 101 S. Ct. 446, 452 (1980). But Straw has identified no State use or action to "transform private property into public property," *see id*.

[11] Straw points to instances in which claims based upon State demands for legal services without adequate compensation have been considered within the context of eminent domain provisions. For example, the Alaska Supreme Court has concluded:

> requiring an attorney to represent an indigent criminal defendant for only nominal compensation unfairly burdens the attorney by disproportionately placing the cost of a program intended to benefit the public upon the attorney rather than upon the citizenry as a whole. As such, the appropriation of the attorney's labor is a "taking" under the provisions of Alaska Constitution article I, section 18.

*DeLisio v. Alaska Superior Court*, 740 P.2d 437, 443 (Alaska 1987). *See also Fam. Div. Trial Lawyers v. Moultrie*, 725 F.2d 695, 705 (D.C. Cir. 1984) (observing that, while "some pro bono requirements do not constitute a 'taking,' we think it equally clear that an unreasonable amount of required uncompensated service

might so qualify.") In *Scheehle v. Justices of the Supreme Court of Ariz.*, 508 F.3d 887, 896 (9th Cir. 2007), the Court found that the issue of whether the requirement that Scheehle devote up to two days a year to serving as an arbitrator with minimal compensation constitutes a taking under the Fifth Amendment to the United States Constitution was to be determined by application of a regulatory takings test. Applying that test, the Court held: "we determine that the services required of Scheehle by the Appointment System do not amount to a taking of property for which he has a right to compensation under the Fifth Amendment." *Id.*

[12] In this instance, such cases are distinguishable because the State of Indiana did not likewise compel Straw to provide services. The Disciplinary Commission neither conscripted Straw's labor without compensation nor appropriated intangible property for public use. The Disciplinary Commission suspended Straw's license to practice law as a sanction for professional misconduct, thus prohibiting his provision of legal services.[5] The suspension was ordered not for a public use, but to further a public policy. Considering the allegations of the Amended Complaint as true, Straw has stated no claim for inverse condemnation.

---

[5] The "inherent authority" of a court to suspend or disbar lawyers "derives from the lawyer's role as an officer of the court which granted admission." *In re Snyder*, 472 U.S. 634, 643, 105 S. Ct. 2874, 2880 (1985). *See also In re McDonald*, 200 Ind. 424, 164 N.E. 261, 262 (1928) (stating that "An attorney is an officer of the court and charged with the duty of aiding the court in the due administration of justice" and recognizing that the practice of law "should be termed a privilege, which, when once lawfully acquired, continues during good behavior.")

## Conclusion

[13]   Straw failed to state a claim upon which relief could be granted. Accordingly, the dismissal of his complaint was not erroneous.

[14]   Affirmed.

Najam, J., and Bradford, C.J., concur.