Filed: 1/4/2023 3:41 PM
Monroe Circuit Court 1
Monroe County, Indiana

# STATE of INDIANA

EX 6

Indiana Supreme Court
Disciplinary Commission
30 South Meridian Street, Suite 850
Indianapolis, IN 46204
Phone (317) 232-1807
Fax (317) 233-0261

www.courts.IN.gov/discipline

G. MICHAEL WITTE
EXECUTIVE SECRETARY

CHARLES M. KIDD
DEPUTY EXECUTIVE SECRETARY

January 5, 2015

Andrew U. Straw
Attorney at Law
NW Registered Agent Svc.
1900 E. Golf Rd.
Schaumburg, Illinois 60173

Dear Mr. Straw:

I am enclosing a copy of a grievance filed against you with the Disciplinary Commission by Brenda F. Rodeheffer.

This is a demand for a written response. You are required to provide a written response to this office within twenty (20) days of the date you receive this letter, or such additional time as you are granted upon request, as provided by Admission and Discipline Rule 23, §§ 10(a)(2) and (e). You could be suspended from the practice of law for failure to respond to this grievance and cooperate with our investigation, as provided by Admission and Discipline Rule 23, § 10(f). In addition, your knowing failure to respond or failure to timely respond may subject you to disciplinary action for a violation of Rule of Professional Conduct 8.1(b), even in the absence of any other misconduct. Please submit any documentation that is material to the issues presented in the grievance.

**An extension of time to respond to the grievance must be submitted in writing to this office. An extension of time will not be granted by telephone request. Please do not call the office to request an extension of time to file a response.**

A member of our staff will conduct a preliminary investigation of this grievance based upon it and your response, as well as other information. A decision will then be made to either: 1) dismiss this matter as not presenting reasonable cause to believe you engaged in misconduct, or 2) docket the case for further investigation and presentation to the full Disciplinary Commission. The Commission will then consider whether reasonable cause exists to believe you engaged in misconduct warranting disciplinary action.

Thank you for your anticipated cooperation.

Sincerely,

G. Michael Witte
Executive Secretary

GMW/ah
cc: Brenda F.Rodeheffer

## REQUEST FOR INVESTIGATION

Brenda Rodeheffer
Your Name (Please type or print in ink)

30 S. Meridian St., Suite 500
Address

Indianapolis, IN 46204
City/State/Zip

( 317  )234-3936
Telephone

*Return to:*

**Indiana Supreme Court Disciplinary Commission**
**30 South Meridian Street, Suite 850**
**Indianapolis, IN 46204-3520**
**Phone (317) 232-1807**
**TDD for Deaf (317) 233-6111**

**I wish to submit the following Request for Investigation and information concerning the following attorney:**

Attorney's Name  Andrew U.D. Straw

Attorney's Address  1900 E. Golf Road, Suite 950A, Schaumburg, IL 60173

Date Employed not applicable _____Purpose for Employing_____

Cause Number of Case multiple _____Court_____

Agreed Attorney's Fee n/a _____Total Fees Paid_____

**Nature of complaint against the attorney (use additional pages if necessary; do not write on the back). Please be specific as to dates, names, and events. Include copies (not originals) of documents that support your complaint:**
Andrew U. D. Straw is physically and mentally disabled. His physical disabilities do not impact his ability to practice law, but his mental health problems have become sufficiently severe that I believe he is not competent to practice law. He has filed multiple lawsuits in the last month that are nonsensical. He is currently advertising that he takes ADA cases in Illinois (he is admitted to the federal bar in Illinois) and Ukrainian Political Asylum Seekers cases for a flat fee of $5000.
I learned of Mr. Straw because he has applied multiple times for attorney positions here and because he periodically writes to complain about this termination of employment from State Court Administration. Mr. Straw worked for STAD from 2/22/01 to 7/11/02 (he was not in an attorney position.) Mr. Straw was admitted to the Indiana Bar on 6/14/2002 and his license is active in good standing.
Attached are copies of documents from current or recent cases in support of this complaint:
Exhibit 1: Complaint against fifty law schools seeking an order requiring the schools to provide Mr. Straw with statistics on applicants;
Exhibit 2: Petition for Redress before the Indiana Supreme Court related to his discharge 12 years ago and embarassment he felt when he was admitted to the Bar in 2002. This was not accepted for filing as it is not an action of original jurisdiction for the Supreme Court. A follow-up email to the Clerk of the Court is included in which Mr. Straw then sought redress from the General Assembly.
Exhibit 3: Complaint against Sconiers, Dixon and St. Joseph County Superior Court. Ms. Sconiers was represented by Mr. Straw and he failed to file a complaint or have a complaint filed for her within the jurisdictional time limits. When she sued for malpractice, he brought this complaint against her, her malpractice counsel and the court in which the malpractice suit was filed.
Exhibit 4: Motions to Dismiss the complaint in Straw v Sconiers et al.
Exhibit 5:  Opinion issued in Straw v. Kloecker et al: 2014 WL 883289; 7th Circuit Order affirming opinion and requiring Straw to show cause why he should not be sanctioned; and Mr. Straw's response to Show Cause order.

I have never met nor been represented by Mr. Straw. I am filing this only because I believe it is my ethical duty to do so to protect the public.

In filing this Request for Investigation, I understand that the attorney will receive a copy; that I am immune from civil suit for statements I make to the Commission; and that nothing herein limits me from consulting with an attorney about my legal rights. I agree to cooperate with the Commission and to testify at any hearing that may be held.
**VERIFICATION**
I swear or affirm, under the penalties for perjury, that the foregoing statements are true.

_____
**Signature (only original signatures accepted)**

9 - 3 · 2014
**Date**

9.3.14 JB
**Date Filed (Office use only)**

(version 4.12.10)

Andrew U. D. Straw,

    Plaintiff

v.

American Bar Association Section of

Legal Education and Admission to

the Bar,

Yale Law School,

Harvard Law School,

Stanford Law School,

Columbia Law School,

Univ. of Chicago Law School,

New York University Law School,

Univ. of Pennsylvania Law School,

Univ. of Virginia Law School,

Univ. California-Berkeley Law School,

Duke University Law School,

Univ. of Michigan Law School,

Northwestern Univ. Law School,

Cornell Law School,

Georgetown Law School,

Univ. of Texas-Austin Law School,

) United States District Court

) Northern District of Illinois

)

)    Case No. 1:14-cv-5194

)    Jury Trial Not Demanded

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

)

1



UCLA Law School,                                )

Vanderbilt Law School,                         )

Washington U. St. Louis Law School,   )

Emory Univ. Law School,                     )

George Washington Law School (DC),  )

Univ. of Minnesota Law School,          )

Univ. of S. California Law School,        )

Univ. of Alabama Law School,             )

William & Mary Law School,               )

Univ. of Washington Law School,        )

Notre Dame Univ. Law School,           )

Boston Univ. Law School,                   )

Univ. of Iowa Law School,                  )

Indiana Univ.-Maurer Law School,      )

Univ. of Georgia Law School,             )

Arizona State Univ. Law School,         )

Ohio State Univ. Law School,             )

U of N. Carolina Chapel Hill Law,       )

Univ. of Wisconsin Law School,          )

Wake Forest Law School,                   )

Boston College Law School,               )

Brigham Young Univ. Law School,       )

Fordham Law School,                        )

Univ. of California Davis Law School, )

Univ. of Arizona Law School,           )

U. of Ill., Urbana-Champaign Law,      )

S. Methodist Univ. Law School,         )

Univ. of Colorado Law School,          )

Washington & Lee Univ. Law School,  )

Florida State Univ. Law School,        )

George Mason Univ. Law School,         )

Tulane Univ. Law School,               )

Univ. of Maryland Law School,          )

Univ. of Florida-Levin Law School,     )

Univ. of Utah-Quinney School of Law, )

    Defendants.                          )

## COMPLAINT

Comes now plaintiff Andrew U. D. Straw, for my complaint for

redress of damages from the American Bar Association Section of Legal

Education and Admission to the Bar, et. al., defendants, for their

violations of his civil rights under the Rehabilitation Act of 1973, §504,

the Americans with Disabilities Act, Title II (for state university

3

defendants) and Title III (for private university defendants and the ABA):

## STATEMENT

1. Plaintiff alleges that he is a person with mental and physical disabilities. He has bipolar disorder. He also has injuries from a reckless driver hitting him on the way to work at the Indiana Supreme Court. These include a crushed hip and leg broken in four places; he has approximately 30 pins holding his hip and leg together, plus a total hip replacement.

2. His injuries give Straw standing to challenge discrimination on the basis of both physical and mental disabilities. He has standing here.

3. Straw is an attorney and practices disability rights law. He is also a political advocate for disability rights. (See Plaintiff's Exhibits 1 & 2)

4. Straw was recognized by the American Bar Association's Commission for Disability Rights as its "Spotlight" disabled American attorney for January of 2014. (See Plaintiff's Exhibit 2)

5. Straw has challenged disability violations in state and federal
   court on his own account, *pro se*, and before state and federal civil
   rights agencies, *pro se*. *Straw v. Chamber, et.al.*, 2013L063066
   (Cook Cty Cir. Ct.), *Straw v. Kloecker, et. al.*, 14-1714 (U.S. Court
   App. 7th Cir.), *Straw v. Indiana Democratic Party*, 93A02-1406-
   EX-399 (Ind. Ct. App. 2014), *Straw v. Illinois*, CR-13-8 (U.S.
   Treasury), *Straw v. Indiana*, DJ# 204-26S-189 (U.S. Department
   of Justice).

6. Straw was found "qualified" by the U.S. Office of Personnel
   Management to be general counsel for the U.S. Access Board, the
   federal agency that establishes disability access standards in the
   United States, including for the Americans with Disabilities Act.
   (See Plaintiff's Exhibit 3)

7. Straw has a Doctor of Jurisprudence degree from Indiana
   University-Maurer School of Law. Graduation: 12/31/1997

8. Straw is admitted to practice law in Virginia (1999) and Indiana
   (2002), and he alleges that he was discriminated against on the
   basis of disability by the Indiana State Board of Law Examiners
   in 2002. When he challenged the consent decree he was forced to

5

sign to get his license, alleging ADA Title II violations, the
Indiana State Board of Law Examiners provided him an
unencumbered license in 2006.

9. Straw wishes to write a dissertation and obtain a Ph.D. with his
topic to be: discrimination on the basis of disability in law school
admissions and state supreme court rules of admission and
discipline, to cover all 50 states.

10. Straw's Ph.D. dissertation title is: "Combating Disability
Discrimination in the U.S. Legal System." (See Plaintiff's Exhibit
6)

11. "All law schools approved by the American Bar Association
are LSAC members…" (See Plaintiff's Exhibit 4)

12. Discrimination in law school admissions is universal. The
Law School Admission Test was conducted by the LSAC so that
disabled test-takers who asked for accommodations were "flagged"
by its publisher, the Law School Admissions Council (LSAC). This
"flagging" was then provided to the law schools. This of course is
discriminatory, and the LSAC (with all ABA-accredited law
schools as members) admitted as much in May of 2014 in its

consent agreement with the U.S. Department of Justice. (See Plaintiff's Exhibits 5 & 8)

13.     Straw sought to know which law school was admitting the highest percentage of its class with disabilities, because his work is very sensitive and he wanted a school that is not discriminating as much as the others. Following the May announcement by the Department of Justice of LSAC's consent agreement, he began searching for such a school.

14.     What Straw found is that none of the top 50 law schools, according to U.S. News & World Report, provide disability statistical information online regarding their classes.

15.     All of them provide gender or minority status, or both. (See Plaintiff's Exhibits Class1-Class50)

16.     All universities are required to have accommodations after admission, and this is not the issue for Plaintiff Straw. The issue is *discrimination in admissions* before students are even eligible to ask for those accommodations. Not providing information on class profiles allows schools to hide their poor records, and hide the likelihood that further discrimination is likely at that school.

7

17.     Because all ABA-accredited law schools have been provided the "flagged" information to identify disabled students, and because all are on the LSAC which flagged these students for them, hiding disabled student statistics is these schools' means to hide the discrimination in which they have been engaging through this system. The *law schools already discriminated* and *admitted as much*, since LSAC admitted it and they are *all members*.

18.     These schools are leaders in the field of law, and graduated the top attorneys in law firms, government, and the private sector. When they discriminate, they create generations of lawyers with an artificially low number who have disabilities. That low number is not sufficient to meet the needs of the millions of Americans who have mental and physical disabilities.

19.     This is what must change. Straw's Ph.D. after years of experience will document the barriers in law school admissions and bar admissions that make the legal profession insensitive to disability rights, even when Congress voted unanimously to strengthen the ADA in both the United States House of Representatives and the United States Senate. Those unanimous

8

changes reversed five U.S. Supreme Court decisions limiting disability rights, and those reversed decisions are a symptom of the problem.

20.     When the law schools hid class profile disability information, it affected Plaintiff Straw's ability to choose a school that discriminates less, since he has mental and physical disabilities himself and he is studying this phenomenon. He alleges that a school that discriminates less will be more supportive of his work, and less likely to undermine his work.

21.     The American Bar Association Section of Legal Education and Admission to the Bar mandates its Standard 509 form for all accredited law schools to report information about the schools. (See Plaintiff's Exhibits 509.1-509.50)

22.     Disability is not a mandated information regarding law school classes on the 509 form. (See Plaintiff's Exhibits 509.1-509.50)

23.     When Straw asked, the American Bar Association refused to adjust its 509 form to include disability statistics in class

9

information. This is wrong, contrary to law and human rights, and the ABA must change the form.

24.    The refusal injured Straw, since he seeks to do his Ph.D. at a school that publishes this information to reduce the chance of discrimination to himself.  Disability discrimination in the legal system and barriers to becoming a lawyer or judge with disabilities are the battleground of a hot civil rights war. Following the LSAC's defeat in discriminating with the very test used by law schools in admissions, the LSAT, it is time to find out the raw numbers of students with disabilities as a benchmark.

25.    Women needed these statistics decades ago, and now we can see officially (on the 509 form) how most schools have about 50% women now.  Minority students needed these statistics decades ago, and now we see how most schools have improved these numbers also.  Students with disabilities need these statistics just as much to combat discrimination and make choices about where to study.  Law schools may not make the specious argument that asking admitted students these numbers is discriminatory.  They have already discriminated; the purpose of asking (with

10

anonymity) now is to record these raw numbers and use them as a benchmark to evaluate future classes and progress.

26.    Plaintiff Straw needs the numbers, as he was not only discriminated against by this lack of information, but he needs it for his work. This very discrimination is the topic of his Ph.D. dissertation. (See Plaintiff's Exhibit 6)

27.    Straw is well prepared, and the U.S. government has affirmed it. In May/June of 2014, Straw was deemed highly qualified, and referred to the hiring official at the Library of Congress (to be an Administrative Librarian), the U.S. Department of Transportation (to be the Director, Departmental Office of Human Resources Management), and the U.S. Army (to be Attorney Advisor, Army Medical Command). (See Plaintiff's Exhibit 7)

28.    Straw believes that not providing the information he requested creates an *information barrier* to admissions for himself and to his Ph.D. work, since students with disabilities like himself were being discriminated by every single one of these law schools

11

through their membership in the discriminating Law School

Admission Council.  (See Plaintiff's Exhibits 5 & 8)

29.     Congress has found in 29 U.S.C. §701 that:

"(5) individuals with disabilities **continually encounter various

forms of discrimination** in such critical areas as employment,

housing, **public accommodations**, **education**, transportation,

**communication**, recreation, institutionalization, health services,

voting, and **public services**; and"

"(6) the goals of the Nation properly include the goal of providing

individuals with disabilities with **the tools necessary** to—

(A) **make informed choices and decisions**; and

(B) achieve **equality of opportunity, full inclusion and integration

in society**, employment, independent living, and economic and

social self-sufficiency, for such individuals."

30.     These "top 50" law schools, as defined by the U.S. News and

World Report rankings, have discriminated, and continue to

discriminate.  These "top 50" law schools have refused to provide

**"the tools necessary to make informed choices and decisions"**

about which school to attend.

12

31.     Straw wished to attend a school that discriminates less on

the basis of disability, as is his right, and these schools are **hiding**

**which school that is**.  These law schools are hiding their history of

discrimination from students by hiding their disability enrollment

statistics.  They are hiding their current discrimination in the

latest class, even after LSAC admitted what their discriminatory

scheme was: flagging LSAT scores, then identifying students who

had flagged scores to LSAC's members, all ABA-accredited law

schools.

32.     The American Bar Association is assisting these "top 50" law

schools in discriminating by not mandating disability statistics on

its Standard 509 form.  The 509 form should show how many

students with mental and physical disabilities are in law school

classes, just as it does minority status or gender.

33.     Without this benchmark, schools will have no motivation to

change and take affirmative steps to reverse the discrimination

that has existed up to this time.

34.     This discrimination has harmed prospective Ph.D. student

Andrew Straw in his seeking a university that discriminates less,

13

and it harms every disabled prospective law student, who deserve
to know which schools were discriminating against them in the
severest and most basic ways, and which schools were doing
better.

35.     Straw wishes also to know the disability statistics in
employment of law school teaching staff, for the same reasons.
Disabled professors will teach in a manner that is more sensitive
to these human rights, Straw alleges.

## AMERICANS WITH DISABILITIES ACT, TITLES II AND III

36.     The ADA, Title II, prohibits public entities such as law
schools at public universities from discriminating. 42 U.S.C.
§12132. "Subject to the provisions of this subchapter, **no qualified
individual with a disability shall**, by reason of such disability, be
excluded from participation in or be denied the benefits of
**services, programs, or activities** of a public entity, or **be subjected
to discrimination by any such entity**."

37.     The ADA, Title III, prohibits private entities such as law
schools at private universities from discriminating as "public
accommodations." 42 U.S.C. §12181(7)(J).

14

38. 42 U.S.C. §12182(a) General rule:

39. "No individual shall be discriminated against on the basis of disability in the **full and equal enjoyment** of the **goods, services, facilities, privileges, advantages**, or **accommodations** of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

40. 42 U.S.C. §12182(b)(1)(D)

(D) Administrative methods

An individual or entity shall not, directly or through **contractual** or **other arrangements**, utilize **standards or criteria or methods of administration**

(i) that **have the effect of discriminating** on the basis of disability; or (ii) that **perpetuate the discrimination of others** who are subject to common administrative control.

41. 42 U.S.C. §12182(b)(2)(A)(ii) prohibits:

42. "a failure to make reasonable modifications in **policies, practices, or procedures**, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity

15

can demonstrate that making such modifications would

fundamentally alter the nature of such goods, services, facilities,

privileges, advantages, or accommodations;"

43.     In the case of these "top 50" law schools, all of them

discriminated under the terms of their consent agreement with

the Department of Justice in May of 2014. Not providing the

statistics allows them to perpetuate their own discrimination with

no oversight.

44.     The law schools have agreed that they discriminated,

because all are members of the Law School Admission Council,

and all received the "flagged" scores.

45.     The terms of that agreement did not include the positive

step of mandating them to provide statistics on disabled students

in law school classes, but this is **absolutely necessary to ensure**

**discrimination stops**, and to see the extent of the discrimination

that has been happening under the previous discriminatory LSAT-

"flagging" regime. Similarly, it is necessary to reveal the

disability statistics of law school teaching staff, because these staff

run law schools, participate in hiring deans, and participate in
admission decisions.

### REQUEST FOR RELIEF

46.    Plaintiff Straw respectfully seeks no monetary damages
against the American Bar Association Section on Legal Education
and Admission to the Bar, but instead appropriate injunctive
relief. Straw respectfully requests that this honorable Court
provide injunctive relief to mandate that the American Bar
Association will immediately include disability (both mental and
physical) statistics about both law student classes and faculty
members on its Standard Form 509. Law students from each
incoming class and professors teaching at each school should be
required to provide this information in an absolutely confidential
manner, **just as they do with gender and minority status**.

47.    I respectfully request $400 from the American Bar
Association to reimburse my court filing costs here, plus $300 to
pay for my other costs incident to filing, i.e., postage. Defendant
American Bar Association has taken part in the "flagging-
discriminating-hiding statistics" system which has heretofore been

17

used to exclude disabled law students. Its Standard Form 509 does not ask for disability statistics, and this has been the excuse law schools give in not providing this vital information. Forcing the ABA Section of Legal Education and Admission to the Bar to include disability on its mandatory form 509 is critical to addressing disability discrimination we know is taking place. The ABA accredits law schools, and its lack of leadership has encouraged law schools to discriminate, knowing full well that the ABA has not made them reveal their discrimination in mandated statistics.

48.     Plaintiff respectfully further requests that this honorable Court provide injunctive relief to mandate each law school defendant to immediately survey each class currently in the law school and provide to Plaintiff Straw the disabled student enrollment statistics at that school, and the rate of mental and physical disability in the teaching staff employed at each school. The legal authority for this is the Americans with Disabilities Act, Titles II and III.

49.     LSAC admitted that its flagging of disabled students' scores was a discriminatory scheme by the Council to exclude disabled students from law school. ALL ABA-accredited law schools were participating.

50.     As a physically and mentally disabled prospective Ph.D. student, I need this information to make informed choices about these schools, and I am entitled to this information by law. I respectfully request that the schools disgorge this information.

51.     The remedy here is for the schools not just to provide accommodations for students with disabilities, but to let the world know how much they have discriminated, and that is precisely what Plaintiff Straw is asking for, as he intends to publish these statistics in his Ph.D. dissertation and in an appropriate law journal. The 509 form is published by each and every ABA-accredited law school each year. Changing this form is therefore absolutely essential.

52.     Beyond that, law schools also have obligations to make up for their hundreds of years of past discrimination starting immediately. Straw respectfully requests that this Honorable

19

Court provide injunctive relief to mandate all of these 50 law schools to reveal to Straw the disability statistics of its law professors. This is just as important as law school class profiles, and it will show which schools have the most professors sensitive to these issues. This will allow prospective students to choose with adequate information, as required by law.

53.     Straw respectfully seeks statistics that will serve as benchmarks to show whether schools improve in their admission practices and employment of law teaching staff.

54.     These reports should appear in the same place that race and gender information appears about each class. Every student should be required to provide this information, but anonymously, to the school, and then the school should be ordered to provide this information to Plaintiff Straw as statistics (raw numbers of students and faculty with a mental or physical disability out of total numbers of students and faculty) with no identifying information.

20

## JURISDICTION

55.    The Court has jurisdiction over this action pursuant to 42

U.S.C. §12133 (public law school defendants) and 42 U.S.C.

§12188(a)(1) (private law school defendants), and 29 U.S.C.

§794(a).  The Court may grant injunctive relief pursuant to the

Americans with Disabilities Act, 42 U.S.C. §§12101, 12188(a)(2).

Therefore, this case is under federal question jurisdiction under 28

U.S.C. §1331.

## VENUE

56.    Venue lies in this District and this Division pursuant to 28

U.S.C. § 1391 because the plaintiff lives in Cook County, Illinois,

and discrimination took place there.  The American Bar

Association Section of Legal Education and Admissions to the Bar

is located in this federal District, in Chicago.  All of the law

schools are subject to the federal laws mentioned, and they

advertise on the Internet with web pages, and appear on the

Internet within the Northern District of Illinois.  Straw

downloaded the 509 forms and the class profile information on his

laptop in Streamwood, Illinois.

I, Andrew U. D. Straw, provided the above statements and verify under penalty of perjury that they are true to the best of my knowledge and belief.

Respectfully submitted,

ANDREW U. D. STRAW
241A Brittany Drive
Streamwood, IL 60107
Telephone:          (574) 971-0131
Fax:                (877) 310-9097
Email:          andrew@andrewstraw.com

Date: this 9th Day of July, 2014

22

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing:

COMPLAINT, EXHIBITS 1-8, EXHIBITS 509.1-509.50, EXHIBITS CLASS1-CLASS50, and CIVIL COVER SHEET

with the Court using the CM/ECF system, which will serve the attached on all counsel of record. In addition, I am serving all of the following defendants the COMPLAINT on disk, plus EXHIBITS 1-8 on disk, plus EXHIBITS 509.1-509.50 on disk, plus EXHIBITS CLASS1-CLASS50 on disk, plus Requests for Waiver of Service of Summons with two copies of Waiver of Summons forms, with a postage-paid return envelope, via certified U.S. Mail:

Yale Law School
127 Wall Street
New Haven, CT 06511

Harvard Law School
1585 Massachusetts Avenue
Cambridge, MA 02138

Stanford Law School
Crown Quadrangle
559 Nathan Abbott Way
Stanford, CA 94305

Columbia Law School
435 W. 116 Street
New York, NY 10027

Univ. of Chicago Law School
1111 E. 60th Street
Chicago, IL 60637

New York University Law School
40 Washington Square South
New York, NY 10012

Univ. of Pennsylvania Law School
3501 Sansom Street
Philadelphia, PA 19104

Univ. of Virginia Law School
580 Massie Rd
Charlottesville, VA 22903

Univ. California-Berkeley Law School
Boalt Hall 215
Berkeley, CA 94720-7200

Duke University Law School
210 Science Drive
Durham, NC 27708

23

Univ. of Michigan Law School
625 S. State Street
Ann Arbor, MI 48109

Cornell Law School
Myron Taylor Hall
Ithaca, NY 14853

Univ. of Texas-Austin Law School
727 E Dean Keeton Street D1800
Austin, TX 78705

Vanderbilt Law School
131 21st Ave South
Nashville, TN 37203

Emory Univ. Law School
1301 Clifton Rd
Atlanta, GA 30322

Univ. of Minnesota Law School
229 19th Avenue South
Mondale Hall
Minneapolis, MN 55455

Univ. of Alabama Law School
101 Paul Bryant Drive
Tuscaloosa, AL 35487

Univ. of Washington Law School
4293 Memorial Way NE
Seattle, WA 98195

Boston Univ. Law School
765 Commonwealth Ave
Boston, MA 02215

Indiana Univ.-Maurer Law School
211 S. Indiana
Bloomington, IN 47405

Northwestern Univ. Law School
357 East Chicago Avenue
Chicago, IL 60611

Georgetown Law School
600 New Jersey Avenue, NW
Washington, DC 20001

UCLA Law School
385 Charles E. Young Drive East
Los Angeles, CA 90095

Wash. U. St. Louis Law School
1 Brookings Drive
St. Louis, MO 63130

Geo. Wash. Law School (DC)
2000 H Street, NW
Washington, DC 20052

Univ. of S. California Law School
699 Exposition Blvd.
Los Angeles, CA 90089-0071

William & Mary Law School
613 S. Henry St.
Williamsburg, VA 23187

Notre Dame Univ. Law School
1100 Eck Hall of Law
Notre Dame, IN 46556

Univ. of Iowa Law School
280 Boyd Law Building
130 Melrose Avenue
Iowa City, IA 52242

Univ. of Georgia Law School
Herty Drive
Atlanta, GA 30602

IN THE INDIANA SUPREME COURT

Case No.: _____

In the matter of                    )
Andrew U. D. Straw                  )

_____

PETITION FOR REDRESS OF GRIEVANCES

_____

Andrew U. D. Straw
241A Brittany Dr
Streamwood, IL 60107-1389
Tel. (574) 971-0131
Fax (877) 310-9097
andrew@andrewstraw.com
*Petitioner, Pro Se*

Comes now Petitioner, Andrew U. D. Straw, and seeks relief from

this Honorable Court regarding disability-based discrimination against

him in his application to become a member of the Indiana bar and

during his time working as a staff member of the Indiana Supreme

Court Division of State Court Administration.

I applied to take the February 2002 Indiana bar exam to the

Indiana State Board of Law Examiners.  I answered the questions on

the application dutifully, fully, and honestly.  The questions included

1

29  invasive questions about mental disabilities, including bipolar disorder.

30  I answered them. I have bipolar disorder.

31      I went through the character and fitness process and was found fit

32  in all other respects. I have no criminal record in Indiana or any other

33  state. Despite this, I was commanded to come before a committee of

34  people to discuss and explain every instance of mania I had ever

35  experienced. This committee included some people I worked with at the

36  Indiana Supreme Court, where I was an employee at the time. The

37  committee demanded descriptions of when I became manic in detail. It

38  was a torture, so painful that it made me unwell.

39      On the date of taking the oath to become a lawyer, June 7, 2002, I

40  stood before the justices and the many of the people on the Indiana

41  State Board of Law Examiners and stated my name. I felt stripped of

42  dignity, with those people watching after having demanded

43  embarrassing information from me in such an aggressive and

44  insensitive manner. That night, I became manic at home.

45      Because I am responsible about my illness, I immediately called

46  my doctor, and he said I needed to take 4 weeks off work from the

47  Indiana Supreme Court.

2

48    To be quite honest, it felt like the Indiana Supreme Court had

49    repeatedly kicked me in the hip and leg that had been crushed on my

50    way to work at the Court on February 22, 2001.  When I returned to

51    work in July of 2002, I received an aggressive, vague letter from Chief

52    Justice Randall Shepard and Lilia Judson attacking me and firing me.

53    I gave my all to the Indiana Supreme Court, and in the first six

54    months of my service, I got to know many of the over 400 trial judges

55    and court staff in Indiana as I gathered their statistics and provided

56    disability-related trial court services.  My idea for a national database

57    of protective orders at the FBI was deemed one of the top 8 e-

58    government ideas in the United States eight years before Indiana

59    implemented such a system statewide.  I came up with this idea while

60    at the Indiana Supreme Court, and when Harvard's Kennedy School of

61    Government honored it with national finalist status, this was an honor

62    for the Court as well.

63    My supervisor, Kurt Snyder, just weeks before the car accident

64    stated that he wanted to promote me to a director position.

65    Unfortunately, instead, I was in a near-fatal, 6-car accident and

66    the Court and its executive director, Lilia Judson, soured on me.  I was

3

67  physically broken when I came back to work, and severely depressed

68  due to the damage the entire rest of the time I was at the Court.  I was

69  on much stronger medication, because I became manic between major

70  surgeries when the surgeon took me off my medications cold turkey due

71  to damage to my liver.  There was no compassion whatsoever from

72  Executive Director Judson, and my supervisor was switched to Mr. Ron

73  Miller, who made derogatory remarks about bipolar disorder *after I*

74  *stated that I have this in my bar application.*

75      Mr. Miller placed all of my duties, broken down into component

76  parts, on a white board in the hallway outside my office so everyone

77  could see who walked by.  After each thing that I did, he would place a

78  line through it.  Everyone saw that he did this, including Lilia Judson,

79  and she refused to let me have another supervisor when I asked, even

80  after I stated that I have bipolar disorder directly to her and that Miller

81  made derogatory comments against bipolar.  Miller ordered me to take

82  remedial Microsoft Office classes, despite the fact that I was corporate

83  counsel to the famous transportation planner who designed the

84  Interstate Highway System and the Metro in Washington, DC.  Despite

85  the fact that I had provided corporate counsel services to Autometric,

4

86    which provides satellite surveillance that keeps all U.S. air traffic

87    (military and civilian) safe from terrorist attack.  Remedial Microsoft

88    Office was meant to humiliate me, and it did so.

89        No other person in the office was subjected to this treatment.  No

90    other employee's duties were placed on a whiteboard for the entire

91    Division of State Court Administration to see.  This was abuse in

92    employment, and disability discrimination by the Indiana Supreme

93    Court's officers.

94        I got my bar admission on June 7, 2002, but it came only because I

95    signed a consent agreement prior to that date stating that I would

96    report to the Board about seeing a doctor regularly, taking medications,

97    inter alia.  Later, when I moved to New Zealand and put my license in

98    inactive status, I refused to provide this information.  The Board

99    demanded that I provide it with a show cause order, and I responded

100   with a letter explaining how the Board's consent agreement was

101   violating the Americans with Disabilities Act, Title II.  The conditions

102   were promptly removed and the consent agreement removed.

103       My license has been active since 2010, and there have been no

104   disciplinary actions taken against me.  I have at various times

5

105  communicated with Lilia Judson to express my disappointment with

106  her actions over the years, as well as the former Chief Justice of

107  Indiana.

108      I have learned from other lawyers that the Board has continued to

109  treat lawyers with mental disabilities in the same inappropriate and

110  violating fashion it treated me.  There have been hearings,

111  interrogations, just like with me.  There have been consent agreements,

112  just like with me.  The continued discrimination by the Board, a

113  Supreme Court agency, shows lack of remorse.  All of us who have been

114  discriminated against deserve redress.  I am speaking for myself only,

115  but all of us deserve redress.

116      All of the Court's Board's actions on these matters have remained

117  violations of the Americans with Disabilities Act, Title II, as well as the

118  retaliation provisions of the ADA.  Finally, the U.S. Department of

119  Justice entered into a consent agreement with the Louisiana Supreme

120  Court in August of 2014, forcing that state court to abandon the same

121  discriminatory practices and procedures that the Indiana Supreme

122  Court and its Board of Law Examiners have been engaging in.

123     Removing disability-based discrimination from law school

124   admissions and bar admissions processes is a big part of my career at

125   this time.  My federal law suit, *Straw v. ABA Section of Legal*

126   *Education and Admission to the Bar, et. al,*, 1:14-cv-05194 (ND IL

127   2014), includes all 50 of the top U.S. law schools, who all admitted to

128   discriminating on the basis of disability in "LSAT flagging" by their

129   LSAC.  Now is the time to open the legal profession to disabled lawyers,

130   and stop the immoral and illegal discrimination against them.

131     "Disabled U.S. citizens need disabled lawyers."  We do not need a

132   legal system that hobbles and humiliates lawyers with disabilities,

133   making it even harder to be part of this profession.  The Indiana

134   Supreme Court has been injuring disabled lawyers up to now, including

135   myself, and it needs to stop immediately.

136                     **REQUEST FOR RELIEF**

137     I believe this honorable Court is well aware of the level of pain it

138   has caused me, and continues to cause other lawyers with disabilities,

139   in violation of the Americans with Disabilities Act.  I have asked this

140   Court to retroactively, nunc pro tunc, make so that I never had a

141   consent agreement.  I ask that this Court immediately abolish asking

7

142  information about  disabilities in the application to be a member of the

143  bar.  It is purely discriminatory to ask it, as any questions about

144  character and fitness and criminal record are asked elsewhere in the

145  application and the interview.

146      I ask most respectfully for Ms. Judson to resign or be removed.

147  Her attitude toward my mental and physical disabilities and her

148  punishing me with a supervisor who was overtly prejudiced were too

149  much.  She must not be allowed to continue discrimination as a de facto

150  or de jure Court policy.

151      I ask for monetary compensation for the discriminatory treatment

152  I received at this Court, both in bar admissions and my employment.  I

153  have only been fired from one job in my life, and it was at the Indiana

154  Supreme Court.  It was due to discrimination by the Court and its

155  employees.  Discrimination from the Chief Justice of Indiana.  The pain

156  from this after my service to the Court and the State of Indiana was

157  severe.  I still have pain from my injuries sustained on the way to work

158  at the Court.  I respectfully ask for monetary compensation as the Court

159  deems truly just under the circumstances, without regard to any statute

160  of limitations or any other excuse for allowing discrimination to stand.

161   I ask for the justice that only this honorable Court can give me, directly

162   and without reservations, freely, and without denial, including an

163   apology.  I ask for justice under Section 12 of the Indiana Bill of Rights.

164       My earnings after being fired by the Indiana Supreme Court

165   plummeted.  As an attorney, earning the same Division salary of

166   $53,000 over the past 12 years (assuming no raises), I should have

167   earned $636,000 if I had simply stayed in the Indiana Supreme Court's

168   employ, but instead I earned less than $150,000 total during the past 12

169   years.  Approximately $500,000 lost.  Adding pain and suffering to this,

170   the amount needs to be more.  4x the earnings lost is appropriate to

171   compensate the pain and emotional injury and suffering.  $500,000 +

172   ($500,000 x 4) = $2,500,000.  The amount I seek as redress is

173   **$2,500,000.**

174       In sum, I seek $2,500,000 from the Indiana Supreme Court, plus

175   the removal of Ms. Judson as Executive Director of the Division of State

176   Court Administration, plus a letter of apology signed by the justices.  In

177   addition, I seek removal of discriminatory questions and procedures in

178   bar admissions and in the admission and discipline rules of the Indiana

179   Supreme Court.  After waiting 13 years since my near-fatal accident

9

180  serving this Court and the discrimination I faced during my time at the

181  Court, getting these remedies will be the justice I have hungered for

182  over a long period of time. I thank the Court for considering my

183  Petition and Request for Redress, and I ask that only those justices who

184  were not on the Court at the time of these injuries to be involved in

185  deciding this matter. I am asking for recusal of Chief Justice Dickson

186  and Justice Rucker.

187      I, Petitioner Andrew U. D. Straw, verify that to the best of my

188  knowledge, information, and belief, formed after an inquiry reasonable

189  under the circumstances, that the above statements and factual

190  representations are true.

191               Respectfully submitted,

192

193  ANDREW U. D. STRAW
194  Indiana Bar Number: 23378-53
195  241A Brittany Drive
196  Streamwood, IL 60107
197  Telephone: (574) 971-0131   Fax: (877) 310-9097
198  andrew@andrewstraw.com
199
200  August 15, 2014
201
202

10

## CERTIFICATE OF SERVICE

203
204
205    I hereby certify that a copy of the foregoing Petitioner's **Petition**
206 **for Redress to the Indiana Supreme Court,** with Exhibits A-D has been
207 served upon the following by Email, and served upon the following by
208 certified United States Mail, postage prepaid this 15th day of August,
209 2014:    + 5 copies
210
211             Clerk of the Indiana Supreme Court, Court of Appeals, and
212             Tax Court
213             100 N. Senate
214             Indianapolis, IN 46204
215
216 Further, I certify that I am sending an emailed copy of the foregoing
217 PETITION with EXHIBITS A-D to the following on this 15th day of
218 August, 2014:
219
220             U.S. Department of Justice, Civil Rights Division
221
222             Respectfully submitted,
223             Andrew U. D. Straw (Atty. #23378-53)
224             241A Brittany Dr
225             Streamwood, IL 60107-1389
226             Tel.: 574-971-0131  Fax: 877-310-9097
227             Email:    andrew@andrewstraw.com
228             *Petitioner, Pro Se*
229
230
231

11

EXHIBIT A

Department of Justice

Office of Public Affairs

FOR IMMEDIATE RELEASE                    Friday, August 15, 2014

Department of Justice Reaches Agreement with the Louisiana Supreme Court to Protect Bar Candidates with Disabilities

The Justice Department announced today that it has entered into a settlement agreement with the Louisiana Supreme Court that will resolve the department's investigation of the court's policies, practices and procedures for evaluating bar applicants with mental health disabilities.  The department's investigation found that during the Louisiana bar admissions process licensing entities based recommendations about bar admission on mental health diagnosis and treatment rather than conduct that would warrant denial of admission to the bar.

The settlement agreement ensures the right of qualified bar applicants with mental health disabilities to have equal access to the legal profession as required by the Americans with Disabilities Act (ADA).  It prohibits the court from asking unnecessary and intrusive questions about bar applicants' mental health diagnosis or treatment.  It also requires the court to refrain from imposing unnecessary and burdensome conditions on bar applicants with mental health disabilities, such as requests for medical records, compulsory medical examinations or onerous monitoring and reporting requirements.  Title II of the ADA prohibits public entities, including licensing entities, from imposing unnecessary eligibility criteria that tend to screen out individuals with disabilities, or imposing unnecessary burdens on individuals with disabilities that are not imposed on others.

The department found that diagnosis and treatment, without problematic conduct, did not effectively predict future misconduct as an

1

EXHIBIT A

attorney and did not justify restrictions on admission. Yet the
Louisiana bar admissions process imposed unnecessary burdens on
applicants and attorneys based on their diagnosis and treatment, in
violation of the ADA. Questions about mental health diagnosis and
treatment, such as those used by Louisiana, are counterproductive to
licensing entities' interest in attorney fitness because individuals who
would benefit from mental health treatment may be deterred from
obtaining it by the knowledge that they will have to disclose their
treatment to licensing authorities.

"Today's agreement will ensure that qualified bar applicants with
mental health disabilities are able to pursue their dream of becoming
licensed attorneys, without discrimination based on diagnosis or
treatment," said Acting Assistant Attorney General Molly Moran for the
Civil Rights Division. "Qualified individuals with disabilities, including
mental health disabilities, have valuable contributions to make to the
legal profession and to their communities. Their diagnosis should not
hinder or prevent them from doing so. Though bar licensing entities
have the important responsibility of ensuring that all licensed attorneys
are fit to practice law, licensing entities must discharge this
responsibility in a manner that is consistent with civil rights laws."

"This agreement is a testament to the United States Department of
Justice's commitment to fighting discrimination against persons with
disabilities and further ensures that qualified individuals will have the
opportunity to pursue their career goals and make valuable
contributions to our community," said U.S. Attorney Kenneth Allen
Polite Jr. for the Eastern District of Louisiana. "The cooperation
between the parties in reaching this agreement demonstrates a shared
priority of protecting against discrimination."

Under the agreement, the court will, among other actions:

2

EXHIBIT A

•            Revise its character and fitness screening questions so that they focus on applicants' conduct or behavior, and ask about an applicant's condition or impairment only when it currently affects the applicant's ability to practice law in a competent, ethical and professional manner or is disclosed to explain conduct that may otherwise warrant denial of admission;

•            Refrain from imposing unnecessary burdens on applicants with mental health disabilities by placing onerous disability-based conditions on their admission, invading their privacy, or violating their confidentiality;

•            Re-evaluate prior and pending applications of applicants who disclosed mental health disabilities under the revised, non-discriminatory procedures set forth in the agreement; and

•            Pay $200,000 to compensate a number of affected bar applicants and attorneys.

Since the department's letter of findings concluding that the court was in violation of Title II of the ADA was issued in February, the court has worked cooperatively with the department to negotiate an agreement and to implement corrective measures.

The department has also raised issues about unnecessary bar application questions related to mental health disabilities with the states of Vermont and Connecticut and with the National Council of Bar Examiners (NCBE).  The NCBE revised two of its questions about mental health on February 24, 2014.

More information about this settlement agreement and the obligations of licensing entities under the ADA may be found at www.ada.gov or by calling the toll-free ADA Information Line at 800-514-0301 or 800-514-0383 (TTY).

3

# Exhibit B

**STATE OF INDIANA**

**SUPREME COURT**

August 30, 2000

December 2000

Cindy:

It has been a pleasure getting to know you over the last few months and I am truly excited about what is ahead for the two of us. Although the coming year will be full of challenges and obstacles — I think we will be able to get through it together. It is exciting to think of the long term positive impact our initiatives will have on the Indiana Judiciary.

I am looking forward to many more years of us working together. And more importantly, I am looking forward to building a friendship that will last even longer. Keep up the good work and have a great holiday!

SEASON'S GREETINGS
BEST WISHES FOR
NEW YEAR

STATEHOUSE · ROOM 321
INDIANAPOLIS, IN 46204

May 29, 2001

Dear Andy,

I am embarrassed to have been so long delayed in writing following your terrible auto accident. You certainly have been in my thoughts and prayers and I have tried to follow your recovery progress through Kurt's reports.

You may know that I was in Washington several months back and several people asked about you.

JTAC continues to make progress with much work yet to be done. We look forward to your return.

Again, best wishes for your recovery.

Sincerely,

THE COUNCIL FOR
**EXCELLENCE**
IN GOVERNMENT

*Excellence*

Andrew U. D. Straw
Finalist



BEFORE THE STATE BOARD OF LAW EXAMINERS
STATE OF INDIANA

IN RE: Application of Andrew U.D. Straw)
Admission to the Bar of Indiana    )

CONSENT AGREEMENT

Andrew U.D. Straw, hereinafter referred to as "Applicant," hereby agrees to the

following conditions in the event the Supreme Court of Indiana grants the Applicant a

license to conditionally practice law in the State of Indiana:

1. The applicant's license to practice law shall be subject to the conditions of this

Consent Agreement for a period of a minimum of two years and a maximum of five years. After

the conditions of this Consent Agreement have been completed for the minimum two year

period, the State Board of Law Examiners shall review the terms of the Conditional

Admission and applicant's compliance with the conditions of this Consent Agreement.

At that time, the State Board of Law Examiners may remove the conditions of this

Consent Agreement and the applicant shall then be unconditionally admitted to practice

law or the Consent Agreement and conditions under the terms of this Consent Agreement

Failure to observe the conditions of the Conditional Admission or any violation of the Consent Agreement may result in revocation of the Conditional Admission, to be determined by the Board of Law Examiners and subject to all applicable appeal and Admission and Discipline Rules.

I hereby certify that I have read this Consent Agreement and that I understand it. I also accept the advice of an attorney to [illegible] and that I am entering into this Consent Agreement [illegible]

# STATE OF INDIANA

March 23, 2004

Andrew C. D. Shaw
17 Tollgate Street
Halifax Bank
Dunedin, New Zealand

Dear Mr. Shaw:

Our records show that the last report we received from your treatment provider was dated September 2003. Therefore, you are not in compliance with the Consent Agreement you signed into with the State Board of Law Examiners. Please contact this office immediately with an explanation regarding this failure to report. Include a current report for this reporting period.

Enclosed is a copy of your Consent Agreement. Please note Paragraph 4 that states that failure to observe the conditions of the conditional agreement may result in revocation of the conditional admission.

Very truly yours,

Mary Pat Seebey
Executive Director

cc: Karen Glasser, Andrew C. Shaw

**Andrew U. D. Straw**
77 Gilkison Street
Dunedin, New Zealand 9001
(03) 476-7807
andrewudstraw@yahoo.com

Executive Director Mary Place Godsey                                  31 March 2006
State Board of Law Examiners
South Tower, Suite 1370
115 West Washington Street
Indianapolis, Indiana 46204

Dear Director Godsey,

Thank you for bringing to my attention the fact that I have not sent in reports since September 2004.

As you may be aware, I am not currently practicing law under either my Virginia or Indiana licenses (both inactive as I live in New Zealand), but instead I do education research at the University of Otago.  Nonetheless, I do wish to retain these law licenses should I later return to the United States.

Further, it has come to my attention that the Consent Agreement may be in violation of the Americans with Disabilities Act.  In particular, by denying me an unconditional license on the basis of my disability (bipolar disorder), the Board is likely in violation of my rights under 42 U.S.C. § 12132:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Andrew U. D. Straw                        Page 1                        3/31/2006

The U.S. Supreme Court affirmed in 2004 that Title II of the ADA does not violate the Eleventh Amendment, unlike Title I. *Tennessee v. Lane*, 541 U.S. 509 (2004).

Provision of licenses to practice law is part of the "services, programs, or activities of a public entity." That public entity is the Indiana Supreme Court. Requiring a person with a specific type of disability to provide medical reports and infringe on the liberty (whether or not to take certain medications) of that person in order to qualify for the benefit (the law license) is discriminatory. People who do not have a disability are not required to submit such medical reports, are not interrogated regarding use of medications, and are not threatened with the revocation of their licenses if they refuse to comply with such requirements.

For these reasons, I respectfully refuse to supply medical reports solely to retain this public benefit (a law license). I hope the Board will agree and see fit to revoke the Consent Agreement and confer unconditional status to my license.

Sincerely,

Andrew U. D. Straw, J.D.

# State of Indiana



April 27, 2006

Andrew E. H. Shaw
57 Gilkison Street
Dunedin, New Zealand 9001

Dear Mr. Shaw:

On April 21, 2006, the State Board of Law Examiners considered your Consent Agreement dated May 31, 2002 and reviewed the terms of your Conditional Admission. The Board determined to remove the conditions of the Consent Agreement. Therefore, your admission is unconditional.

Very truly yours,

Mary Place Graham
Executive Director

To:  Voters of Indiana's 2nd Congressional District

From:  Professor Fred Aman, IU Maurer School of Law, Bloomington,

RE: Andrew Straw for Congress

Date: June 27, 2011

I am writing to endorse Andrew Straw for Congress, as the representative of the 2nd Congressional District of Indiana. I have known Andy since 1996 when he was a law student here in Bloomington – where in addition to his brilliant coursework, he worked as my research assistant.  In that capacity, Andy analyzed the legal aspects of public policy issues of all kinds, including economic issues, disability questions and civil rights.  Andy Straw's work was superb—his professionalism, scholarly acumen, careful attention to detail, and just plain common sense made his analyses enormously valuable.  I knew I could trust Andy as a lawyer even then, and I relied on his work.  Looking back over my thirty-five years as a law teacher, I can say that Andy has the best combination of head and heart of any young lawyer with whom I have had the pleasure to work.  At a time in our state's history when we face difficult challenges involving the economy and job creation, we need – more than ever – political leaders who understand their complexity and human impact but also the potential for positive change. Andy Straw has the kind of humane intelligence and leadership qualities we need in Congress at this crucial time.  He will serve with great distinction.

MID-ATLANTIC ASSOCIATION
OF COURT MANAGEMENT

hereby certifies that

Andrew U.D. Straw

has attended

MAACM's LEADERSHIP DEVELOPMENT SERIES
October 3 - 6, 1989        Ocean City, Maryland

# Exhibit C

**Andrew U. D. Straw**
241A Brittany Drive
Streamwood, IL 60107
574-971-0131
andrew@andrewstraw.com

## SUMMARY
Indiana/Virginia attorney and disability rights lawyer and advocate. Providing negotiations for plaintiffs. Law practice has included clients sexually harassed at work, people with disabilities, tort victims, and small, medium, and large businesses across the US. Worked on projects & contracts at Library of Congress, Library of Virginia, Virginia Historical Society, the Council for Excellence in Government in Washington, D.C., and state, federal, and local governments.

Advised clients on both federal and state criminal law. Worked with ESRI and other software companies on a pilot project on court records automation, and was on the Virginia State Bar Task Force on Technology. Provided statistical analysis for all 400+ Indiana trial courts' case data, and edited the annual report of the Indiana Judicial Branch. Human rights immigration work: asylum cases.

Evaluated for U.S. Access Board general counsel position by U.S. Office of Personnel and Management. Found "qualified," June 2014. Found highly qualified to be Director, Office of Human Resources Management, U.S. Department of Transportation (Senior Executive Service), July 2014. Found highly qualified to be Administrative Librarian, Library of Congress (Senior Executive Service, July 2014. Found "highly qualified" to be Attorney-Advisor, U.S. Army Medical Command, June 2014.

## EMPLOYMENT
**Andrew U. D. Straw, Esq.**
Employment and Civil Rights Lawyer. Indiana firm based in Streamwood, Illinois. 3/2010 -
- Negotiated settlements in employment law and disability rights cases.
- Drafted legislation and advised a state representative candidate on election law.
- Drafted the first Indiana local air pollution control ordinance.

- Successfully achieved largest public records request in Indiana history: 29,000 emails. Consulted Indiana Public Access Counselor.
- Pursuing parking lot and entrance disability access in businesses, local government, schools, the post office, and the local Chamber of Commerce in Streamwood, Illinois. Village found 146 parking spaces for disabled people were missing.
- US Department of Justice complaint against Indiana on election procedures and violations of the Americans with Disabilities Act. Civil declaratory judgment suit to expand access to ballot for disabled candidates.
- Advised judge candidate on election law.

**Indiana Center for Excellence in Government, Streamwood, IL**
President & Director. 11/2010 - 4/2014
- Manage non-profit and non- partisan government reform program, including government sensitivity to disabilities, transparency, accessibility, accountability, and efficiency projects.
- Conducted study of trace lithium concentrations in drinking water to determine whether there was enough to prevent violent crime, drug use, and suicides. Chicago has only 5% of what it needs, NYC 0%.

**University of Otago, Dunedin, New Zealand**
Research Assistant, Social Media Analyst. 3/2006 - 2/2010
- Researched critical literacy education in New Zealand.
- Advised head of university's marketing on creation of Facebook page.

**SGL Global, Buenos Aires, Argentina**
Corporate compliance translator. 2007
Translated hundreds of pages of corporate financial documents from Italian into English to facilitate criminal investigation audit.

**Anja Klinkert Lawyers, Dunedin, New Zealand**
Legal Researcher. 2005-2007
- Researched family law, human rights, senior law, and disability law.
- Research on New Zealand disability and human rights laws helped win a divorce property case for a mentally disabled client.

**Medlicotts Barristers and Solicitors, Dunedin, New Zealand**
Legal Researcher for former University of Otago Chancellor. 2005

- Researched legal theory for family law cases in New Zealand.
- Analyzed corporate documents and determined existence of assets for property to be divided.

## Indiana University-Maurer School of Law
Assistant Dean for International Programs.  2/2003 - 5/2003
- Provided support and leadership to international graduate students in the Law School's international legal studies program.
- Advised on academic, bar exam, cultural, immigration (SEVIS), and disability/medical advice to international lawyers and judges.

## Indiana Supreme Court
Statistical Analyst.  8/2000 - 7/2002
- Analyzed the case load data of all 400+ Indiana trial courts and wrote state-wide Annual Service Report of the judicial branch.  Wrote articles for the state court administration newsletter.
- Advocated for and obtained software for a vision-impaired trial judge. Justice Sullivan approved request.  Managed provision of email to all trial judges in State of Indiana.
- Consulted hearing-impaired community for a statewide trial court transcript pilot project.
- Planned new format of Indiana Supreme Court webpage, especially attorney section.

## Alan M. Voorhees, Woodbridge, VA
Corporate Counsel to famous transportation planner.  8/1998 - 8/2000
- Advocated to Virginia Supreme Court, state legislative committees, as well as individual court clerks and legislators on court records reform.
- Served on Virginia State Bar Task Force on Technology and co-chaired Education of Bench & Bar subcommittee.
- Clerked for Hon. Joseph E. Spruill, past president of the Virginia State Bar on civil cases and researched Virginia death penalty law for a triple murder trial.
- Received leadership training from the Council for Excellence in Government in Washington, which Voorhees initiated in the 1980s.
- Corporate work for Autometric (aerospace/satellite-protects all US air traffic), Lizardtech, Cinecom, International Land Systems, Sylvan Internet, Richmond County clerk.

- Provided counsel on projects at the Library of Congress, the Library of Virginia, and the Virginia Historical Society.
- Provided advice and counsel regarding millions in donations to Voorhees College (Historically Black College) and the University of Virginia.

**Indiana University-Maurer School of Law**
Legal Researcher.  9/1996 - 12/1997
- Researched administrative, constitutional, disability, and globalization law for Dean Aman's textbook supplement and treatise.

**McConnell for Congress, Princeton, IN**
Internet Director.  1/1996 - 5/1996
- Created and maintained web site for U.S. House campaign.
- Wrote Internet press releases and canvassed for candidate in Bloomington and Evansville.

**Italian Foreign Ministry, Bologna, Italy**
Communications System Advisor.  12/1995 – 1/1996
- Wrote educational software and instructions to teach Foreign Ministry telecommunications officers how to use secure communication systems.

**Options for Better Living, Bloomington, IN**
Assistant Manager.  9/1992 - 8/1993
- Planned and implemented daily activities and personal care for mentally and developmentally disabled adults in a group home.
- Assisted multidisciplinary team, including health practitioners and psychologists.
- Advocated for residents' rights to participate in community activities as per the Americans with Disabilities Act.

**Oaklawn Mental Hospital, Goshen, IN**
Nurse's Aide.  1989
- Assisted in care of patients with mental disabilities, including veterans with Post Traumatic Stress Disorder and patients with depression, bipolar disorder, schizophrenia, and eating disorders.

4

**Association for the Disabled of Elkhart County, Elkhart, IN**
Supervisor.  5/1988 – 8/1988
- Managed work for teens with mental and physical disabilities.

EDUCATION
**University of Otago, Dunedin, New Zealand.**
Graduate studies in New Zealand Bioethics & Health Law, 2004.
GPA: 3.2

**Indiana University-Maurer School of Law, Bloomington, Indiana, USA.**
J.D. - 12/1997.  Dean's List, Fall 1997.  GPA: 3.2
- Concentrated on administrative and political law and worked as the Dean's research assistant. Highest mark in class in Negotiations.

**Indiana University, Bloomington, Indiana, USA.**
Master's Degree - 12/1995.  GPA: 3.77
- Language Education (ESL/ EFL).

**Indiana University, Bloomington, Indiana, USA.**
Bachelor's Degree - 5/1992.  GPA: 3.2
- Majors: English and Philosophy.  Minor: Political Science.

AFFILIATIONS
- Indiana bar: admitted 2002.
- Virginia bar: admitted 1999.
- Fourth Circuit U.S. Court of Appeals: admitted 1999.
- Northern and Southern U.S. District Courts of Indiana: admitted 2002.
- U.S. District Court for the N. District of Illinois: admitted 2013.
- Indiana State Bar Association: Member.
- Indiana Association of Mediators: Board Member, 2012-2013.

AWARDS
- American Bar Association Commission on Disability Rights: "Spotlight" disabled attorney, January 2014. http://www.americanbar.org/groups/disabilityrights/initiatives_awards/spotlight/straw_a.html

5

- "Most active student leader," one of five 1996 Parker- Powell Indiana University Student Association fellowships.
- Trained with Health and Human Services executives at Council for Excellence in Government, 2000.
- Kennedy School of Government and Council for Excellence in Government recognized my domestic violence real-time FBI protective order database proposal as one of the top 8 e-government ideas in the USA. 2001.
- National Merit Scholar.
- Passed U.S. Foreign Service Exam, Written Portion, 1998.

POLICY/ACADEMIC EDITING
- Advised clients on federal criminal law and state criminal law.
- Developed hundreds of policies and positions as a state and federal candidate and campaign manager/legal advisor, 2010-2014.
- Indiana Daily Student columnist and editorial board member.
- Edited books by University of Otago instructors: one on Chinese folktales and another on Chinese administrative law and human rights reform.
- Advised Ph.D. student and edited her dissertation on Chinese administrative law and human rights reform in China.

COMMUNITY INVOLVEMENT
- Law School Representative to Indiana University Student Government, Bloomington. 1995-1996.
- International Law Association membership director. 1995-1997.
- Featured debater, Federalist Society, IU-Maurer School of Law. 1998.
- Law School Educational Policy Committee member, Bloomington, IN. 1996-1997.
- Legal Services volunteer for poor, elderly, & disabled legal clients, Bloomington IN. 1996-1997.
- Tutor for Thompson factory workers to get GEDs after plant moved to Mexico. 1996.
- Tutor at Monroe County Public Library for disabled youths. 1995.
- Age Concern Otago volunteer, Dunedin, New Zealand. Visited disabled senior regularly. 2010.
- United Way Program Evaluator (breast cancer screening). 1995.
- Volunteer: Free Burma, Amnesty International. 1996-1997.

6

DISABILITY CIVIL RIGHTS WORK

- U.S. Navy. Federal Tort Claims Act claim. **File# 140367**. Claim for injury from exposure to trichloroethylene and other poisons in the drinking water at Camp LeJeune Naval Hospital, where I was born. Includes my mother's early death from cancer at 48. 11/27/2013.
- U.S. Treasury. Rehabilitation Act of 1973 claim. **Case# CR-13-8**. Claim for discrimination on the basis of mental disability in loan program specifically for disabled people. 07/2013.
- U.S. Department of Justice Civil Rights Division, Disability Rights Section. **DJ# 204-26S-189**. Discrimination in the laws, rules, and procedures governing elections in Indiana. 10/2012
- Negotiations with Illinois State Board of Elections to make ballot access petitions acceptable online and accessible to all.
- Indiana Civil Rights Commission. Indiana Civil Rights Law claim. **PAha12111565**. Claim for discrimination because the Indiana Democratic Party's headquarters in South Bend, Indiana, lacks access in its parking lot and entrance, and the Party's Rule 10 discriminates on the basis of mental disability. Initial Notice of Finding denied probable cause, but Commission in a 6-0 bipartisan decision gave Notice of its Intent to Reverse those findings on 2/28/2014, and Oral Argument took place on 4/25/2014. ICRC reversed its unanimous Intent to Reverse; now on appeal at Indiana Court of Appeals. *Straw v. Indiana Democratic Party*, 93A02-1406-EX-399 (Ind. Ct. App. 2014). 10/2012.
- Cook County Circuit Court. Defamation, Illinois Human Rights Act, retaliation, and contractual rights claim. **2013L063066**. After demanding handicap parking in Streamwood, the Chamber of Commerce and newspaper violated my human rights. One defendant has settled. 146 spots lacking.
- U.S. District Court, Northern District of Illinois. Civil RICO claim, 18 U.S. Code §1964(c). *Straw v. Kloecker, et. al.*, **14-C-1420** (ND Ill. 2014). Claim based on letter from newspaper's lawyer demanding SSN, DOB, and Medicare Number, and threatening Medicare fines of $1,000 per day if I do not comply. Letter demanded consent to give newspaper access to my Medicare information online. This is now on appeal in the U.S. Court of Appeals for the Seventh Circuit. **14-1714**.
- Ran for Congress on disability rights platform in Indiana's 2nd district. 2011-2012. Ran against own district chair on the issues in *Straw v. Indiana Democratic Party*.