IN THE SUPREME COURT
OF THE
STATE OF INDIANA

EX 14

IN THE MATTER OF          )
                          )      Cause No. 98S00-1601-DI-12
ANDREW U. D. STRAW        )
Attorney Number 23378-53  )

**COMMISSION'S RESPONSES TO INTERROGATORIES**

The Disciplinary Commission, by counsel, submits the following responses to

Respondent's Interrogatories:

1. The Commission has stated in **question 1** of its Response to my Request for Admissions

   that the 4 counts against me **do not include** 3 counts with ADA claims and 1 count with a

   Civil RICO claim.  This answer was false.  I ask the Commission to get on pacer.gov and

   check the complaints and review the Commission's Verified Complaint.  These are the

   four cases listed as reason for the four counts:

   ***Straw v. Kloecker, et. al.,*** 1:14-cv-1420 (N.D. Ill.).  Count 1 of the Verified Complaint

   notes that this case was brought as a **Civil RICO case**.  (at ln 8)

   ***Straw v. ABA, et. al.,*** 1:14-cv-5194 (N.D. Ill.).  Count 2 of the Verified Complaint notes

   that this case was brought **under the ADA**.  (at ln 36)

   ***Straw v. Sconiers, et. al.,*** 3:14-cv-1722-JD-CAN (N.D. Ind.).  Count 3 of the Verified

   Complaint notes that this case was brought **under the ADA**.  (at line 63)

   ***Straw v. Zalas, et. al.,*** 2:14-cv-369-JTM-PRC (N.D. Ind.).  Count 4 of the Verified

   Complaint notes that this case was brought **under the ADA**.  (at line 94).

   I ask the Commission to explain why the Verified Complaint said the **same thing I asked**

   **(that 3 ADA and 1 Civil RICO cases were the subject of the Verified Complaint)** and

   the Commission denied it, namely that the 4 counts include 3 ADA-based complaints and

1

one Civil RICO complaint focused on health information privacy about my mental

disability.  Why did the Commission deny it?

**RESPONSE:**

Objection:  The Commission objects to the argumentative nature of this interrogatory.

The Commission further objects to the argumentative nature of this interrogatory, and

does not accept the explicit and/or implicit assumptions therein.

Notwithstanding any objection, the Commission denied Respondent's Request for

Admission No. 1, because the Commission does not agree that "all four counts presented

in the Verified Complaint represent cases based on one or more disability rights

presented to the courts by Andrew Straw."  Specifically, the Commission does not agree

that *Straw v. Kloecker*, an action based on the civil RICO statute, was an action about

disability rights.  Furthermore, the Commission does not agree that *Straw v. Sconiers* was

premised on a disability right.  Instead, it was an improper collateral attack on a state

court matter and/or retaliation against a former client and her lawyer.


2.  Please provide the name of the ADA Coordinator who provided ADA protection services

to the disabled public for the Commission as of September 3, 2014.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.


3.  Please provide the name of the ADA Coordinator who provided the ADA protection

services to the disabled public for the Commission as of January 11, 2016.

**RESPONSE:**

<u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

4. Please provide the name of the ADA Coordinator who now provides ADA protection services to the public as of the date of this Interrogatory, April 4, 2016.

   **RESPONSE:**

   <u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

5. Did anyone besides Gordon Michael Witte review the Verified Complaint prior to it being filed against me, Andrew Straw, and did that review include consideration of the ADA and the fact that the Verified Complaint was filed while I continued to have an ADA-based federal lawsuit against the Indiana Supreme Court?  Please explain.

   **RESPONSE:**

   <u>Objection</u>: This interrogatory requests confidential attorney work product and/or attorneys' mental impressions about a case which are not discoverable.

6. If Brenda Rodeheffer was at any time the ADA Coordinator for the Commission in the past 16 years, please list the time periods she performed this role to protect people with disabilities during that time.

   **RESPONSE:**

   <u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.

7. Brenda Rodeheffer's complaint specifically mentioned several of the cases that later became counts. Besides my ADA cases, has Ms. Rodeheffer ever filed a complaint with the Commission based on a disabled lawyer filing an ADA case? If so, how many times did she do this? Please ask her, since she works in another part of the Indiana Supreme Court.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. This interrogatory further seeks information which is confidential pursuant to Indiana Admission and Discipline Rule 23(22)(a) and Indiana Administrative Rule 9(G)(2)(i).

8. How many complaints in the past 16 years have been filed by the Commission as Verified Complaints based on ADA cases where a disabled lawyer lost because **federal judges would not cooperate** with "eliminating discrimination?" (In other words, non-cooperating non-disabled judges with little or no disability law experience outside the bench context)

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

Notwithstanding any objection, the Commission believes that there have been zero cases "in the past 16 years [that] have been filed by the Commission as Verified Complaints based on ADA cases where a disabled lawyer lost because **federal judges would not cooperate** with 'eliminating discrimination?'"

9. The Rodeheffer disciplinary complaint specifically mentioned that I had brought ADA, disability-related concerns to her in the form of a **Petition for Redress for Grievances**. She then stated that she was filing her complaint in response to my "nonsensical" case filings. Please explain my rights to make complaints to the ADA Coordinator of the Indiana Supreme Court or any of its agencies. Do I have this right or not, and if so, why was there a retaliatory disciplinary complaint when I exercised this right?

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this interrogatory is overly broad and unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

Notwithstanding any objection, the Commission has no personal knowledge of and takes no position regarding Respondent's rights to make complaints to the ADA Coordinator of the Indiana Supreme Court or any of its agencies. The disciplinary complaint filed by Brenda Rodeheffer was not retaliatory.

10. Please review the First Amendment of the U.S. Constitution.

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of

the people peaceably to assemble, and to **petition the government for a redress of grievances**."

Do I have the right to bring a <u>Petition for Redress of Grievances based on disability rights I claim were violated</u>, per the First Amendment of the U.S. Constitution, a right protected by the Fourteenth Amendment of the U.S. Constitution, given *every lawyer employee* of the Commission, including Ordway and Witte, took oaths to uphold the U.S. Constitution over any state law, regulation, or even constitution, **including the rules and policies of the Commission**?  Please explain.

**RESPONSE:**

<u>Objection</u>:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

11. Clerk of the Indiana Supreme Court, Kevin Smith, refused to docket my **Petition for Redress of Grievances**, instead referring it to Rodeheffer, who retaliated against it with a disciplinary complaint.  Rodeheffer works in the office where I used to work at the Indiana Supreme Court.  I want the Commission to explain why both Smith and Rodeheffer were not punished under Rule 8.4(g) when **they denied my disability rights and First Amendment rights** and the Commission became aware of it in 2014.

**RESPONSE:**

<u>Objection</u>:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.

12. Please explain how, after reading the Rodeheffer complaint, including its mention of my

**Petition for Redress of Grievances**, any investigation or Verified Complaint resulted

from that.  Explain why an investigation was not a violation of Rule 8.4(g) and other

disability civil rights laws.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

interrogatory further requests confidential attorney work product and/or attorneys' mental

impressions about a case which are not discoverable.

13. I was an employee of the Indiana Supreme Court and I helped a blind judge and

approached the Indiana Association of the Deaf to get their input on trial court

technology I was working on as a senior staff member of the Court.  I want the

Commission to tell me if it has ever reached out to either the deaf or blind community in

Indiana.  I want the Commission to tell me if anyone from the Indiana Supreme Court

followed up on my work in 2001, or if the Indiana Association of the Deaf would tell me

that no further contacts were made, since the IAD told me I was the **ONLY** person from

the Indiana Supreme Court to *ever* contact them for input about *anything*.  Please explain.

7

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

14. Please explain why there was a count about the ABA case when the disciplinary complaint was filed **before the ABA case was concluded**, in January 2015.

    **RESPONSE:**

    Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

    Notwithstanding any objection, the Verified Complaint was filed in January 2016, after *Straw v. ABA* was concluded.

15. Please explain why there was a count filed about the ABA case when the judge **did not label the case frivolous** and I did not appeal.  Keep in mind that the clerk serving Judge Durkin informed me the judge did not understand why I am being disciplined for what I did in that case, which was attempt to force law schools to provide **disability statistics on their entering classes**, like the ABA forces them to do with regard to race and gender. In other words, mine was a disability civil rights case to give disabled people wanting to attend law school the same privileges that women and minorities get.  Please explain.

8

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein. This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

Notwithstanding any objection, the Verified Complaint contains a count regarding *Straw v. ABA* because that lawsuit was without a basis in law and fact.

16. If the Commission knew that I had applied to a Ph.D. program in North Carolina to study precisely the issues I brought up in the ABA case, would it have brought this count, and why? I was in that application process at Eastern Carolina University, close to Camp LeJeune, where I was born and poisoned as an infant and fetus.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein. This Request further seeks information regarding a hypothetical scenario, about which the Commission cannot have personal knowledge.

17. My main physical disabilities came from a car wreck on the way to work at the Indiana Supreme Court. *See*, the page I created to present my disabilities: www.andrewudstraw.com My mental disabilities were the reason for discrimination and

9

ADA violations in my law licensing in 2002, and I was fired less than a week after taking 4 weeks of FMLA leave in 2002. Please explain how investigating and prosecuting from 2014-2016 a disabled lawyer with my background was NOT a violation of Rule 8.4(g) or other disability civil rights laws (discrimination *and* retaliation) on the basis of my disabilities.

**RESPONSE:**

<u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. . Furthermore, this interrogatory is overly broad and unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

Notwithstanding any objection, the Verified Complaint does not involve Respondent's alleged disabilities.

18. Please explain, given the discrimination history I have provided in the Affidavit of February 17, 2016, incorporated here by reference, and on www.andrewudstraw.com, how this or any other Indiana court can *without conflict of interest* discipline me based on my disability rights work, including these four counts.

**RESPONSE:**

<u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this interrogatory is overly broad and unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein. This Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

19. Does the Commission lose jurisdiction once a Verified Complaint of the Commission appears to be in violation of federal law, such as the Indiana Civil Rights Law, the ADA, the Rehabilitation Act or 18 USC 241 or 242?  Explain why or why not.

    **RESPONSE:**

    Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

20. I currently provide legal work for people poisoned at Camp LeJeune, where I was also born.  I have two federal lawsuits pending in the Camp LeJeune Multi-District Litigation (MDL), 1:11-md-2218 (N.D. Ga.).  I have reviewed the rules of several of the federal courts where I am admitted and at least one states that if I am disciplined, that will disqualify me from practicing in that district.  My work will be further impaired beyond what the Indiana Supreme Court **has already done to me**.  It could cost me and my family millions of dollars if I am abruptly yanked of all casework.

    Please explain how discipline from the Commission will not affect my work in the MDL and for those of the **1 million veterans and their families** who were poisoned, disabled, and killed, like members of my family were.  Does the Court and the Commission realize how unpatriotic it is to prevent me from doing this work?  Explain in detail.

11

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

Notwithstanding any objection, if this disciplinary action results in a suspension or a disbarment, Respondent will not be able to practice law in Indiana.  Respondent's ability to practice law in other jurisdictions could be affected if other jurisdictions take reciprocal action based on a decision in Indiana.

21. I have a lawsuit poised to be filed in Wisconsin regarding petitioning for redress of grievances, similar to what I did to the Court and Rodeheffer, and other First Amendment and Fourteenth Amendment rights.  Please explain how discipline here **will not affect the rights of my client**, who specifically sought me out for that service.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

Notwithstanding any objection, if this disciplinary action results in a suspension or a disbarment, Respondent will not be able to practice law in Indiana. Respondent's ability to practice law in other jurisdictions could be affected if other jurisdictions take reciprocal action based on a decision in Indiana.

22. Please explain whether Mr. Witte or Ms. Ordway have ever brought an ADA lawsuit or administrative complaint to protect the rights of a disabled person, including any lawyer. Explain in detail.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this interrogatory is overly broad and unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

23. Please explain whether the Commission or Witte or Ordway have ever protected the rights of a disabled person under Rule 8.4(g). I want to know how many times in the last 15 years, and when.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this interrogatory is overly broad and unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.

24. Please explain how the ADA's purposes—elimination of discrimination—have all been
accomplished in Indiana courts, since Ordway denied that more needed to be done in the
Request for Admissions. Keep in mind that the Indiana courts settled with a deaf man,
Mr. Prakel, in 2015, and my former supervisor at the Indiana Supreme Court, Lilia
Judson, was one of the named defendants. Please explain in detail.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence. Furthermore, this interrogatory is overly broad and
unduly burdensome. The Commission further objects to the argumentative nature of this
interrogatory, and does not accept the explicit and/or implicit assumptions therein.

25. If the Commission has no one to advise it on ADA matters or disability issues generally,
such as an ADA Coordinator specifically serving the Commission, please explain how
Witte can file a Verified Complaint with so little knowledge of disability personally, or
disability law, and certainly knowledge of what it is like to have two broken legs and a
crushed pelvis coming to work at the Indiana Supreme Court, not to mention lifelong
disability from Camp LeJeune poisoning. Given the fact that Randall T. Shepard's
negligence in failing to warn me was a cause of the car wreck I was in, and the fact that
Witte was appointed by Shepard, I want a very detailed answer.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the
discovery of admissible evidence. Furthermore, this interrogatory is overly broad and
unduly burdensome. The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

26. Given my two broken legs and broken pelvis and my bipolar disorder and depression and

migraines and social anxiety and allergies and scoliosis, I ask whether either Witte or

Ordway has such extensive personal experience of physical or mental disability as I have.

If you need to review my disability data, it is here: www.andrewudstraw.com   Yes or no

for Ordway and yes or no for Witte.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  The Commission further objects to the argumentative

nature of this interrogatory, and does not accept the explicit and/or implicit assumptions

therein.  This Request is also impermissibly vague and does not allow the Commission to

make a reasoned response.

27. The ADA has been a statute under fire by the Courts.  The ADA Amendments Act of

2008 can be found at this U.S. Department of Justice URL and I ask that the Commission

read the findings and purposes of the Act (Sec. 12101 (a) and (b):

http://www.ada.gov/pubs/adastatute08.htm

Please explain the Commission's refusal to agree that the ADA has been attacked by the

federal courts such that Congress had to amend it.  These findings and purposes show the

Commission was not researching these facts I provided, and I want an answer now.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

28. I was recognized for my disability rights work on several occasions and the Commission

denial of my national stature on disability law and politics appeared disingenuous and

even spiteful.  Please review the following:

http://www.americanbar.org/groups/disabilityrights/initiatives_awards/spotlight/straw_a.

html

Please also note the following:

**a.** I was a finalist for **Executive Director** of Indiana Protection and Advocacy Service

(IPAS) in 2014.  IPAS provides disability legal work for disabled people across the

whole state of Indiana.

**b.** U.S. Office of Personnel Management found me "qualified" to be General Counsel of

the **U.S. Access Board** in **2014**.  The U.S. Access Board sets regulatory standards under

the ADA for other federal agencies to follow.  General Counsel of that agency is a Senior

Executive Service (SES) position in the federal government, equivalent to an O-7 rank in

the military (Brigadier General in U.S. Army).

**c.** The **U.S. Army Medical Command** found me "highly qualified" and referred me to

the selection officer to be an Attorney-Advisor at that agency in **2014**.  The military rank

of that position was O-5, or Lt. Colonel in the military.

**d.** I was a featured panel speaker at the annual conference of the **National Association of**

16

**Law Students with Disabilities** in October of 2015, and my topic was "Attitudinal

Barriers" in the legal profession and judicial branch. I chose to talk about the

discrimination and retaliation of the Indiana Supreme Court and its agencies, which have

plagued me for 15 years. I mentioned to disabled law students, private lawyers with

disabilities, and federal agency lawyers with disabilities how this Indiana Attorney

Disciplinary Commission investigation was **continuing the 15 years of pain and**

**suffering** and deprivation in my career, solely because people like Witte and Judson and

Rodeheffer and Shepard, and Smith and Ordway refuse to allow me to practice law as a

**disability rights attorney in peace**.

**e.** I founded a political party for people with disabilities on February 5, 2013 called

simply, "Disability Party." This party has over 1,400 followers in over 39 countries on

Facebook pages as of April 3, 2016.

**f.** When I worked at the Indiana Supreme Court at the rank of staff attorney as Statistical

Analyst, I provided services both to blind and deaf court users.

**g.** As an undergraduate, graduate, and law student, I worked with disabled youths and

adults. I was assistant manager of a group home for disabled adults for about a year from

1992-1993 (epilepsy, Down Syndrome, cerebral palsy, autism, Asberger's). I began

planning community inclusion activities so as to implement the *new* Americans with

Disabilities Act of 1990 in my own work.

**h.** I invented a protection order database that the Indiana Supreme Court now uses to

protect domestic violence victims. Harvard's Kennedy School of Government

recognized it as one of the top e-government ideas in the United States in a White House

contest in 2001. Disabled people are more prone to becoming domestic violence victims.

**i.** I studied Bioethics and Health Law as a master's student in New Zealand, where I studied the New Zealand Human Rights Act and other law related to disability and human rights.  I did legal research for New Zealand lawyers, including the former Chancellor of the University of Otago, and helped a disabled woman win a family law dispute where the other side was discriminating and tempting the family court to follow suit, in violation of the New Zealand Human Rights Act.  Instead of winning, that discriminating lawyer lost and was warned not to try doing that again.

**j.**  I have advocated for disability access programs and improvements to the U.S. Supreme Court, U.S. Department of Health & Human Services, Social Security Administration, National Council on Disability, the U.S. Marine Corps Commandant, U.S. Rep. Tammy Duckworth, IU Provost Lauren Robel, the National Center for State Courts, Indiana Civil Rights Commission, the ABA, Illinois State Board of Elections, Indiana Secretary of State, and hundreds of businesses in Illinois through my advocacy, public education, and news coverage.

**k.** I have 9 perfected complaints for disability access violations currently pending at the Illinois Department of Human Rights.  I have put my portfolio of photos of violations at this URL: www.accessviolations.com

**l.** I represent myself and 3 other family members of mine in seeking compensation for **disabilities and death** due to Camp LeJeune poisoning, including myself and my mother and daughter.  These are before the MDL at this time.  I have consulted with Jerry Ensminger, whose daughter Janey is the namesake of the Janey Ensminger Act of 2012. The seriousness of this issue is reflected in the remarks of President Obama ("moral, sacred duty"):

18

https://www.youtube.com/watch?v=v624yne2eYE

and NC sponsor in the U.S. House, Rep. Miller ("took on their own government"):

https://www.youtube.com/watch?v=QhhO2gLuzww

and Mr. Jerry Ensminger's Documentary (trailer):

https://www.youtube.com/watch?v=K6-k-CaMIOE

**m.** I advocated to Congress to pass a comprehensive legislative reform to recognize, compensate, and provide health coverage to the roughly 200,000 civilians (20,000 babies, like myself) poisoned at Camp LeJeune.  This was covered on TV nationally in several different states in 2015:

https://youtu.be/MKojwUm0qwk

**n.** my mother was disabled with cancer the last 2 years of her life at the age of 48 and died from a Camp LeJeune cancer my final year of law school.  She never met any of her five grandchildren.  An inheritance from my hearing-impaired grandfather paid my final 2 semesters of law school.  He was disabled during WWII in the engine room of a U.S. Navy ship in the Pacific.

**o.** I pursued an Indiana Civil Rights Law claim, unsuccessfully, even though the facts were entirely in my favor and I was unable to get cooperation from either the ICRC or the Indiana courts.  See this ABC 57 coverage of the topic:

https://www.youtube.com/watch?v=2DebpmIA0oc

**p.** I was denied a loan from the Advantage Illinois Program, funded by the U.S. Treasury, after the chief interrogated me about my disabilities to make sure I did not "look too disabled" so that a bank would reject me.  U.S. Treasury ignored the facts and refused assistance.

**q.** I demanded from the U.S. Federal Reserve and the U.S. Treasury in 2014 whether there was any document that showed the relationship between being on SSDI, like I am, and having a low FICO credit score.  Both of these huge agencies indicated there was no such document.

**r.** I have lodged complaints with the Federal Highway Administration because the City-County Building in South Bend does not have appropriate handicap parking (it was parallel parking with no access aisles).  This complaint also demanded handicap parking around the federal courthouse in South Bend.  Incidentally, two of my ADA cases were denied in the Northern District of Indiana while the South Bend courthouse had **no handicap parking serving it**.

**s.** I sued the Illinois State Board of Elections when it refused to accommodate my two broken legs and hip that I got from driving to work at the Indiana Supreme Court.  My pleas were ***denied***.  ***Straw v. Illinois State Board of Elections***, 2016CH0227 (Cook Co. Cir. Ct.)


Given the above public service to people with disabilities, and the blatant refusal to accommodate and protect disabled people from so many organizations at so many levels, I want the Commission to **explain why it denied** that I am a national leader on disability rights.  Explain why many authorities, including **state and federal courts**, refuse to provide disability rights, access, and opportunities, since my failure to make them understand is **more a failure of these agencies and courts to listen**.  Explain in detail why I am not a national leader in this area, since Ordway denied it.

20

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

29. I led reform at the South Bend Housing Authority (HASB) for 5 different clients, leading to the executive director resigning and the mayor replacing the entire Commission of HASB.

https://www.youtube.com/watch?v=HJZyHJYCRMg

https://www.youtube.com/watch?v=AO_-5Fb6fog

https://www.youtube.com/watch?v=KEAO_Olt8tw

The Housing Authority in South Bend is a very large organization with thousands of residents.  I want the Commission to explain how **my choices to protect civil rights** have been unethical in this or any other case, when no one at the Indiana Supreme Court or any other agency, state or federal, ever helped me in any way.  My claims were denied, and now my integrity and ethics impugned.  Explain why you are impugning my ethics when I do so much to protect disabled persons, challenging rules, regulations, laws, policies, procedures and even constitutional interpretations to expand disability rights.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

30. Count 3 was about Attorney Dixon and my former client, who, *after my work at the Housing Authority*, asked for help with a sexual harassment claim.  Dixon has represented a number of Democrat officials in South Bend, and his firm's partner gave donations to the highest level of the Indiana Democratic Party, former House Speaker B. Patrick Bauer.  I have sued the Indiana Democratic Party.  It is more likely than not that Dixon and my former client were a set up to retaliate against my work on reform at the Democratic HQ and the Housing Authority in South Bend.  Dixon took a discriminating disciplinary complaint from Rodeheffer when it had not even been investigated yet, and Dixon put it into the state malpractice case against me, clearly to bias the court in violation of Rule 8.4(g).  I asked Witte to discipline Dixon, but he absolutely refused.  This was a conspiracy from 2014 to 2015 against me to violate my civil rights.  Please explain how my disability case against Dixon and the trial court and Sconiers was unethical, given the violations of my privacy and refusal of the Commission to protect me from ethical violations.  Explain in detail.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

31. I want the Commission to explain again, given all of the questions in the Request for Admissions and these Interrogatories, **why it is violating my rights as a disabled person** harmed by the Indiana Supreme Court and discriminated against for so long, when my work is to protect other people with disabilities, and **any discipline will interfere with that work**.  I want a detailed and thorough answer to this question.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

32. A nationally-recognized academic, Professor Ruth Colker, has stated that, "[m]y research suggests that the appellate litigation outcomes under the ADA *are more pro-defendant* than under other civil rights statutes." Colker, Ruth, *Winning and Losing under the Americans with Disabilities Act*, Ohio State Law Journal, 2000, v. 62, 239, 242.  She said that, in a previous article, she found that, "defendants prevail in more than **ninety-three percent** of reported ADA employment discrimination cases decided on the merits at the trial court level * * *" (p. 239) If this is true, as the professor says, does this not indicate that federal judges are more favorable toward other civil rights categories, and also more willing to state that a disability claim is frivolous, since ADA employment claims **almost**

**always fail**? Explain why or why not.

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and unduly burdensome.  The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

33. Professor Colker said in another article that, "*[c]ourts* are **abusing the summary judgment device** and **failing to defer to agency guidance** in interpreting the ADA." Ruth Colker, *The Americans with Disabilities Act: a Windfall for Defendants*, 34 Har. C.R.-C.L. L. Rev. 99, p. 1.  I believe this was the case in all 3 of my ADA cases.  The courts simply refused to recognize the strength of my facts and the law and regulations implementing the ADA.  Professor Colker provides, from an academic perspective, the precise argument that most dictates **dismissal** of the Verified Complaint.  I said that the Courts were wrong, and **they were wrong**.  They are wrong much of the time, since it is impossible that ADA cases are faulty 93% of the time.  The professor says that judges are ignoring the law and dismissing summarily, without a jury.  In fact, all of my cases were dismissed.  But on top of the abuse, the judges in some cases heaped new abuse on top, using the word "frivolous."  And no wonder, since they are used to tossing the rights of disabled people out the window as a matter of course.  Keeping in mind that only *7% of ADA, Title I cases prevail*, is it not **a stretch** to say I did something unethical when the Courts are abusing these rights according to one of the leading academics on ADA law?

24

Explain why or why not. And if the Commission agrees, why has this Verified

Complaint not been withdrawn yet?

**RESPONSE:**

<u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. Furthermore, this interrogatory is overly broad and

unduly burdensome. The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein. This

Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

34. Note that I went through the EEOC claims process and received a letter of right to sue

from EEOC on March 31, 2015 against the Indiana Supreme Court to enforce my rights

under the ADA. Also note that I filed my case in a timely fashion in federal court, and it

was dismissed shortly after the Verified Complaint was filed, immediately upon the heels

of my request for this proceeding to be halted due to discrimination. Judge Richard

Young did not call my case frivolous and did not dismiss it with prejudice. *Straw v.*

*Indiana Supreme Court, et. al.*, 1:15-cv-1015-RLY-DKL (S.D. Ind.). The disciplinary

complaint on which the Verified Complaint was based was included in this federal ADA

lawsuit. I want the Commission to explain how, if my case was **NOT** found to be

frivolous, the disciplinary complaint could go forward and turn into a Verified

Complaint, with that cloud over it. Please explain fully.

**RESPONSE:**

<u>Objection</u>: This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence. Furthermore, this interrogatory is overly broad and

unduly burdensome. The Commission further objects to the argumentative nature of this interrogatory, and does not accept the explicit and/or implicit assumptions therein. This Request is also impermissibly vague and does not allow the Commission to make a reasoned response.

Notwithstanding any objection, the Verified Complaint does not involve *Straw v. Indiana Supreme Court.*

35. In the **Kloecker** case, I had a threatening letter and identical email that said, falsely, that Medicare would fine me $1,000 per day unless I handed over my SSN, Medicare#, and claims information in the Medicare claims database, to which they wanted my consent to access. Medicare's EDDI manager told me not to provide the data or consent and that the Kloecker letter was **misleading**. My private health data was to go to the newspaper I was suing for **defamation**! The facts are outrageous. Perhaps I should have sued under HIPAA or another health information privacy statute, but my case was absolutely not frivolous. The facts stood on their own. The Seventh Circuit has scolded Judge Shadur for his hostility and unwarranted antics **in the same year my case was before Shadur!** See the following:

http://www.abajournal.com/news/article/posner_opinion_tosses_judge_from_case_partly
_for_his_tone_of_derision

And on top of this, the reason I did not get any sanctions, which **Witte conveniently neglected to mention**, was because Locke Lord LLP hired the former law firm employer of Judge Shadur for my appeal. This is patently unethical and I suspect there was foul play in my case, both at the trial and appellate level. The 7th Circuit was well aware that that law firm employed Shadur, who has been on the bench since 1980. Why would that

huge law firm hire Shadur's former employer except to demonstrate that it can do anything it wants, and that was PRECISELY the problem with the Kloecker letter and email to me trying to shake me down for my health claims data at Medicare. I deserved to win that case and the entire $15 million I claimed.

This count by Witte was baseless, as was the label "frivolous" by both Shadur and the 7th Circuit. Where are the sanctions? Where is my justice? Luckily the Medicare manager stepped in to assure me the Kloecker letter was bogus.

In the other three ADA cases, the National Council on Disability supported me on one (count 4), the Indiana Supreme Court's Rodeheffer intervened to make me lose a case that was frivolous on my ex-client's part (count 2), and in the ABA case, even Judge Durkin who presided does not know why there is a count for that case.

None of these counts was worthy of a Verified Complaint, and each violates my rights under Rule 8.4(g), the ADA, the Rehabilitation Act, and the Indiana Civil Rights Law, all of which apply to the Commission. I have made complaints with the U.S. Department of Justice, the ICRC, the Federal Bureau of Investigation, and the U.S. Attorney for the S.D. of Indiana, and am seeking counsel to sue the Indiana Supreme Court again based on these truly frivolous and irrationally hostile charges against me. And of course I had a federal lawsuit **before it was dismissed** without prejudice. I want the Commission to explain why this case should continue, given none of my disability rights work was frivolous. Explain in detail.

**RESPONSE:**

Objection: This interrogatory is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

36. Another academic made perhaps the most striking comment about the ADA, Title II,

which applies to the Indiana Supreme Court and the Commission.  "The most striking

venue for **non-application of disability law** within the legal profession is lawyer

discipline related to mental disability.   Bar disciplinarians accusing a lawyer of

misconduct related to mental impairment will typically proceed as if the protections

written into law **do not pertain to their sanctioning powers**, even though the ADA

governs public services, a category that covers the lawyer-discipline apparatus * * *

Regulators will cut mentally disabled lawyers little slack * * * the tendency of this

profession to regard itself as **ungoverned** by the legal rights and entitlements of persons

with disabilities joins an unfortunate larger stance of **unwarranted self-exemption**."

Professor Anita Bernstein, *Lawyers with Disabilities: L'Handicapé C'est Nous*, Univ. of

Pittsburgh L. Rev., 2008, vol. 69: 389, pp. 391-392.  I want the Commission to explain

how it has indeed protected my disability rights.  I want to know what actions it has ever

taken to protect my rights when I asked for them, including my opposition to this abusive

Verified Complaint.  Why is this attack on me still continuing, especially when the

process was commenced by someone who betrayed my rights and retaliated when I asked

for help, Brenda Rodeheffer, an ***ADA Coordinator***?

**RESPONSE:**

Objection:  This interrogatory is irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  Furthermore, this interrogatory is overly broad and

unduly burdensome.  The Commission further objects to the argumentative nature of this

interrogatory, and does not accept the explicit and/or implicit assumptions therein.  This

Request is also impermissibly vague and does not allow the Commission to make a

reasoned response.

Respectfully submitted,

Angie L. Ordway
Attorney No. 25039-49
Staff Attorney
Indiana Supreme Court
          Disciplinary Commission

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was deposited in the United States Mail, postage prepaid, on this **5th** day of **May 2016**, addressed to the following:

Andrew U.D. Straw
1900 E. Golf Rd., Suite 950A
Schaumburg, IL  60173

_Angie L. Ordway_
Angie L. Ordway

Indiana Supreme Court
Disciplinary Commission
30 S. Meridian Street, Suite 850
Indianapolis, Indiana  46204
(317) 232-1807