Filed: 1/4/2023 3:41 PM
Clerk
Circuit Court 1
Monroe County, Indiana

# IN THE SUPREME COURT

## OF THE

## STATE OF INDIANA

| | |
|---|---|
| IN THE MATTER OF | ) |
| | ) |
| ANDREW U. D. STRAW | ) |
| Attorney Number 23378-53 | ) |

Cause No. 98S00-1601-DI-12

EX 17

## COMMISSION'S TENDER OF PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Indiana Supreme Court Disciplinary Commission, by counsel, hereby tenders its

proposed Findings of Fact, Conclusions of Law and Recommendation in the above cause, which

is attached hereto.

Respectfully submitted,

Angie L. Ordway      Attorney No. 25039-49
Staff Attorney
Indiana Supreme Court
  Disciplinary Commission

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was deposited in the United States

mail, first class, postage prepaid, on this 13th day of June, 2016, to the following:

| | |
|---|---|
| Hon. James R. Ahler | Andrew U.D. Straw |
| Jasper Superior Court | 1900 E. Golf Rd., Suite 950A |
| 115 W. Washington St. | Schaumburg, IL  60173 |
| Rensselaer, IN  47978 | |

Angie L. Ordway

Indiana Supreme Court Disciplinary Commission
30 South Meridian Street, Suite 850
Indianapolis, IN 46204
317-232-1807

IN THE SUPREME COURT

OF THE

STATE OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | Cause No. 98S00-1601-DI-12 |
| ANDREW U. D. STRAW | ) | |
| Attorney Number 23378-53 | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Honorable James R. Ahler, who was duly appointed and qualified as the Hearing

Officer in this matter, now submits the following findings of fact and conclusions of law

pursuant to Indiana Admission & Discipline Rule 23, Section 14.

### FINDINGS OF FACT

### Procedural History

1. This matter commenced on January 11, 2016, with the filing of the Disciplinary

Commission's Verified Complaint for Disciplinary Action ("Verified Complaint").

(Commission's Exhibit 1.) The Verified Complaint alleges, under Counts I through IV, that the

Respondent violated Rule 3.1 of the Rules of Professional Conduct in four instances.

2. The Respondent filed his Response with Answer Under Protest on February 5,

2016. (Commission's Exhibit 2.)

3. The Honorable James R. Ahler, Hearing Officer, heard the evidence offered by

the Commission regarding the charges against the Respondent on May 12, 2016.

4. The Disciplinary Commission was represented by Staff Attorney Angie L.

Ordway.

5.    The Respondent, *pro se*, failed to appear despite having actual notice of the hearing setting.  The Respondent expressed in writing, both before and after the hearing setting, that he was refusing to participate in the disciplinary proceeding as a protest.

6.    At the final hearing, the Disciplinary Commission submitted documentary evidence.

7.    On the basis of the documentary evidence presented at the evidentiary hearing in this matter, the Hearing Officer now makes the following specific findings of fact.

### Specific Findings

8.    Andrew U.D. Straw ("Respondent") is an attorney in good standing, who was admitted to practice law in the State of Indiana on June 7, 2002, subjecting him to the Court's disciplinary jurisdiction.  (Verified Complaint, Commission's Exhibit 1 ("V.C.") ¶ 1; Response with Answer Under Protest, Commission's Exhibit 2 ("Ans.") ¶ 1.)

9.    At all times relevant to this proceeding, Respondent has practiced law in Streamwood and/or Schaumburg, Cook County, Illinois.  (V.C. ¶ 2; Ans. ¶ 2.)

### Facts Related to Count I – Straw v. Kloecker

10.    In 2013, Respondent sued Paddock Publications for defamation in Cook County Circuit Court in Illinois.  Attorney John Kloecker ("Kloecker") of the law firm of Locke Lord LLP represented Paddock Publications in the action.  Respondent represented himself.  (V.C. ¶ 3; Ans. ¶ 3.)

11.    In the course of the 2013 action, on February 13, 2014, Kloecker sent to Respondent a letter which referenced a statute requiring liability insurers to report to Medicare

the details of settlements, judgments, awards or other payments to Medicare recipients ("the Medicare letter"). (V.C. ¶ 4; Ans. ¶ 4; Commission's Exhibit 8 at 126-28.)

12.     In the Medicare letter, Kloecker stated that the statute imposed "steep penalties for noncompliance with its reporting obligations of $1000 per claim per day." (V.C. ¶ 5; Ans. ¶ 5; Commission's Exhibit 8 at 126.)

13.     In the Medicare letter, Kloecker asked Respondent to disclose whether he was enrolled in the Medicare program, his medicare number or social security number, his first and last name, his date of birth and his gender. (V.C. ¶ 6; Ans. ¶ 6; Commission's Exhibit 8 at 127.)

14.     On February 27, 2014, Respondent filed a lawsuit as a *pro se* plaintiff against Kloecker and Locke Lord LLP, in the United States District Court, Northern District of Illinois, under cause number 1:14-cv-01420. (V.C. ¶ 7; Ans. ¶ 7; Commission's Exhibit 8.)

15.     In the complaint, Respondent alleged that Kloecker and Locke Lord LLP engaged in civil RICO racketeering activity by sending the Medicare letter. (V.C. ¶ 8; Ans. ¶ 8; Commission's Exhibit 8.)

16.     In the complaint, Respondent requested $15 million in damages and injunctive relief. (V.C. ¶ 9; Ans. ¶ 9; Commission's Exhibit 8 at 101-02.)

17.     Locke Lord LLP was not a "person" that could be the target of a civil RICO claim. (Commission's Exhibit 10 at 139.)

18.     Respondent's allegation that the letter was "racketeering activity" was a mischaracterization. (Commission's Exhibit 10 at 139.)

19.     Respondent was not entitled to $15 million in damages or injunctive relief. (Commission's Exhibit 10.)

20.    Respondent's lawsuit against Kloecker and Locke Lord LLP was frivolous. (Commission's Exhibit 10 at 139.)

21.    On March 5, 2014, the district court issued an order and memorandum opinion dismissing the lawsuit. (V.C. ¶ 14; Ans. ¶ 14; Commission's Exhibit 10.)

22.    In its order, the district court ruled that the lawsuit filed by Respondent was frivolous. (V.C. ¶ 15; Ans. ¶ 15; Commission's Exhibit 10 at 139.)

23.    In its order and memorandum opinion, the district court stated, "In sum, Straw's effort to bootstrap the Letter into a criminal violation through which he hopes to mulct $15 million from Kloecker and Locke Lord must be characterized as legally frivolous in the sense employed in Lee v. Clinton, 209 F.3d 1025 (7th Cir. 2000)." (V.C. ¶ 16; Ans. ¶ 16; Commission's Exhibit 10 at 139.)

24.    In its memorandum opinion, the district court called the lawsuit filed by Respondent an "attack." (V.C. ¶ 17; Ans. ¶ 17; Commission's Exhibit 10 at 138.)

25.    In its memorandum opinion, the district court called the prayer for relief in the complaint "bizarre." (V.C. ¶ 18; Ans. ¶ 18; Commission's Exhibit 10 at 138.)

26.    In its memorandum opinion, the district court stated, "It might have been expected that a lawyer such as Straw would have looked into the requirements of civil RICO before shooting from the hip as he has done in his Complaint, filed as it was less than two weeks after he received the Letter." (V.C. ¶ 19; Ans. ¶ 19; Commission's Exhibit 10 at 138.)

27.    On March 19, 2014, Respondent filed a request for reconsideration. (V.C. ¶ 20; Ans. ¶ 20.)

28.     On March 26, 2014, the district court denied Respondent's request for reconsideration. (V.C. ¶ 21; Ans. ¶ 21.)

29.     On April 3, 2014, Respondent appealed the district court's decision to the Seventh Circuit. (V.C. ¶ 22; Ans. ¶ 22; Commission's Exhibit 11.)

30.     Respondent's appeal did not have a sound legal basis. The Seventh Circuit stated: "Straw lists 16 issues for our review, but he elaborates on none of them. Instead, he simply repeats the allegations from his complaint and accuses the district court of abusing its discretion." (Commission's Exhibit 12 at 145.)

31.     In the course of the appeal, Respondent filed several extraneous memoranda and filings, including a notice of intent to file Memorandum Regarding Summons in Case Below, Memorandum Regarding Privacy Act and HIPAA, a motion to file Amended Complaint from state case below, notice of intent to file Plaintiff's Letter Regarding Other Defendants and Information Demands, Memorandum Regarding Ethical Issues with Counsel and Renewal of Request for Relief, and Memorandum Updating Information in Brief on defendant Bowers in state case. (Commission's Exhibit 11.)

32.     In the course of the appeal, Kloecker and Locke Lord LLP hired counsel and filed an appellant's brief and responses to other filings by Respondent. (V.C. ¶ 25; Ans. ¶ 25; Commission's Exhibit 11.)

33.     On August 19, 2014, the Seventh Circuit affirmed the judgment of the district court. (V.C. ¶ 26; Ans. ¶ 26; Commission's Exhibit 12.)

34.     In its order, the Seventh Circuit stated, "We agree with the district court that Straw's lawsuit under RICO is frivolous, as is this appeal." (V.C. ¶ 27; Ans. ¶ 27; Commission's Exhibit 12 at 146.)

35.     In its order, the Seventh Circuit ordered Respondent to show cause within 30 days why he should not be sanctioned under Federal Rule of Appellate Procedure 38 for taking the appeal. (V.C. ¶ 28; Ans. ¶ 28; Commission's Exhibit 12 at 146.)

36.     The Respondent filed a Response to Sanctions Show Cause Order in which he stated, "[S]anctioning me with paying the appellee's fees will simply push me into bankruptcy. I am on SSDI due to my disabilities. I don't even own a car." (Commission's Exhibit 13 at 149.)

37.     Ultimately, the Seventh Circuit did not impose sanctions on Respondent. (V.C. ¶ 29; Ans. ¶ 29; Commission's Exhibit 11.)

38.     On August 20, 2014, Respondent filed a petition for rehearing *en banc*. (V.C. ¶ 30; Ans. ¶ 30.)

39.     On September 16, 2014, the Respondent's petition for rehearing *en banc* was denied. (V.C. ¶ 31; Ans. ¶ 31.)

40.     Thereafter, Respondent filed a Petition for Writ of Certiorari before the United States Supreme Court. (V.C. ¶ 32; Ans. ¶ 32.)

41.     Respondent's Petition for Writ of Certiorari was denied. (V.C. ¶ 33; Ans. ¶ 33.)

**Facts Regarding Count II – Straw v. ABA**

42.     On July 8, 2014, Respondent filed a lawsuit as a *pro se* plaintiff against the American Bar Association ("ABA") and 50 U.S. law schools, in the United States District Court, Northern District of Illinois, under cause number 1:14-cv-05194. (V.C. ¶ 35; Ans. ¶ 35;

6

Commission's Exhibit 15.)

43.     In his complaint, Respondent alleged that the ABA and the 50 U.S. law schools had violated Title II and/or Title III of the Americans with Disabilities Act ("ADA"), which prohibit discrimination on the basis of disability in providing access to public entities and/or public accommodations.  (V.C. ¶ 36; Ans. ¶ 36; Commission's Exhibit 15.)

44.     In his complaint, Respondent alleged that he has mental and physical disabilities, and that he planned to apply to a U.S. law school for a PhD program.  (V.C. ¶ 37; Ans. ¶ 37; Commission's Exhibit 15.)

45.     In his complaint, Respondent alleged that he wished "to know which law school was admitting the highest percentage of its class with disabilities", because he wished to choose a school that does not discriminate as much as other law schools.  (V.C. ¶ 38; Ans. ¶ 38; Commission's Exhibit 15 at 179.)

46.     In his complaint, Respondent alleged that he was discriminated against because the ABA does not publish statistics regarding admissions of students and employment of faculty with disabilities at U.S. law schools.  (V.C. ¶ 39; Ans. ¶ 39; Commission's Exhibit 15.)

47.     In his complaint, Respondent sought injunctive relief to require the ABA to include information about disabilities in its data collection efforts from law students and faculty. (V.C. ¶ 40; Ans. ¶ 40; Commission's Exhibit 15.)

48.     In his complaint, Respondent also sought injunctive relief to require each law school to collect disability information from law students and faculty and provide that information to Respondent.  (V.C. ¶ 41; Ans. ¶ 41; Commission's Exhibit 15.)

49.     In his complaint, Respondent failed to allege an injury-in-fact.  (Commission's

7

Exhibit 21 at 272-73.)  He alleged he would benefit from having access to statistics, but he did not allege he had been harmed by not having such access. (Id.)

50.     In his complaint, Respondent failed to establish a causal connection between the publishing of statistical information and an increased chance he would be admitted to a law school PhD program.  (Commission's Exhibit 21 at 273-74.)

51.     In his complaint, Respondent did not show that it was likely that the relief he sought would redress the harm alleged by him.  (Commission's Exhibit 21 at 274-76.)

52.     In his complaint, Respondent was seeking rights based on congressional findings, not actual statutory language.  (Commission's Exhibit 21 at 278.)

53.     In his complaint, Respondent failed to state a cognizable claim against the ABA, because the ADA does not require an entity to alter the goods or services it provides to the general public, and because Respondent did not allege that the ABA discriminated against him by denying him goods or services it provides to the public at large.  (Commission's Exhibit 21 at 279-82.)

54.     Respondent's lawsuit against the ABA and 50 U.S. law schools was frivolous. Respondent was seeking to obtain a policy change that would have been more appropriately sought through legislative action.  There was no statutory or legal basis for Respondent's action.

55.     On September 5, 2014, University of Wisconsin Law School filed a Motion to Dismiss for Failure to State a Claim.  (V.C. ¶ 48; Ans. ¶ 48; Commission's Exhibit 14 at 168.)

56.     On September 8, 2014, Ohio State University Law School filed a Motion to Dismiss.  (V.C. ¶ 49; Ans. ¶ 49; Commission's Exhibit 14 at 168.)

57.     On September 19, 2014, Respondent filed two responses in opposition to the two

pending motions to dismiss.  (V.C. ¶ 50; Ans. ¶ 50; Commission's Exhibit 14 at 168.)

58.     On October 8, 2014, George Mason University Law School, University of

Virginia Law School and William & Mary Law School filed a joint Motion to Dismiss for

Failure to State a Claim.  (V.C. ¶ 51; Ans. ¶ 51; Commission's Exhibit 14 at 169.)

59.     On October 31, 2014, Respondent filed a First Verified Amended Complaint, in

which he expressed that he no longer wished to pursue his suit against the individual law

schools, and only wanted to proceed against the ABA.  (V.C. ¶ 52; Ans. ¶ 52; Commission's

Exhibit 16.)  He stated that he recognized that mandating law professors to reveal disability

information, as his lawsuit sought to have the court to do, could be an invasion that leads to

discrimination.  (Commission's Exhibit 16 at 211.)  He also stated that he realized that what he

really wanted was a change to the ABA's reporting form, which would address the issue without

seeking action by the individual law schools.  (Commission's Exhibit 16 at 212.)  Respondent's

readiness to drop 50 defendants from the lawsuit in its initial stages is evidence that the lawsuit

was ill-considered and frivolous.

60.     On November 11, 2014, the district court dismissed all defendants with the

exception of the ABA.  (V.C. ¶ 53; Ans. ¶ 53.)

61.     On November 21, 2014, the ABA filed a motion to dismiss the first amended

complaint.  (V.C. ¶ 54; Ans. ¶ 54; Commission's Exhibits 14, 18.)  In support of its motion to

dismiss, the ABA argued that the Respondent had not suffered any injury of a legally protectable

interest and so lacked standing to sue, that he had not stated a claim upon which relief could be

grounded because the ABA was not a covered entity under Title III of the ADA, and because the

Respondent had not alleged that the ABA was discriminating against him.  (Commission's

9

Exhibit 18 at 224.)

62.     On December 20, 2014, Respondent filed a response in opposition to the motion

to dismiss. (V.C. ¶ 55; Ans. ¶ 55.)  Respondent's response was devoid of any rational legal

reasoning. (Commission's Exhibit 19.)

63.     On January 9, 2015, the ABA filed a reply in support of its motion to dismiss.

(V.C. ¶ 56; Ans. ¶ 56; Commission's Exhibit 20.)

64.     On February 11, 2015, the district court issued a memorandum opinion and order

granting the ABA's motion to dismiss, citing Respondent's lack of standing and failure to state a

cognizable claim under the ADA.  (V.C. ¶ 57; Ans. ¶ 57; Commission's Exhibit 21.)

65.     In its 17-page opinion, the district court cited numerous reasons why the

Respondent's lawsuit failed. (Commission's Exhibit 21.)  The district court found that the

Respondent lacked standing because he had failed to allege an injury-in-fact, had failed to show

a causal connection between the ABA's actions and the Respondent's alleged harm, and had

failed to show a likelihood of redress that was not merely speculative.  (Commission's Exhibit 21

at 272-76.)  The district court also found that the Respondent failed to show a statutory right to

the statistics he wished to compel; the only statutory authority cited by the Respondent was the

congressional findings section, and not operative text.  (Commission's Exhibit 21 at 276-78.)

The district court further found that the Respondent had failed to state a claim under the ADA,

because Respondent had not alleged that the ABA discriminated against him by denying him

access to goods or services it provides to the public at large.  (Commission's Exhibit 21 at 279-

82.)

66.     Respondent did not appeal the district court's order.  (Commission's Exhibit 14.)

10

Instead, he filed a "Letter to Court" in which he chastised the district court for using the term "lacked standing" in its dismissal of his claims when Respondent had previously had two broken legs. (Commission's Exhibit 22.) Respondent argued that terms such as "standing" perpetuate discrimination. (Id.) The "Letter to Court" demonstrates Respondent's lack of fitness to practice law. His argument about the term "standing" is better suited to a satirical comedy sketch than a serious document filed in a legal proceeding.

### Facts Related to Count III – Straw v. Sconiers

67.     In 2012, Respondent represented Brenda Sconiers ("Sconiers") in connection with an employment discrimination claim. (V.C. ¶ 60; Ans. ¶ 60.)

68.     On October 18, 2013, Sconiers brought a legal malpractice action against Respondent in the St. Joseph County Superior Court, alleging that Respondent let the statute of limitations lapse without filing Sconiers' employment discrimination action. (V.C. ¶ 61; Ans. ¶ 61.)

69.     On August 3, 2014, Respondent filed a lawsuit as a *pro se* plaintiff against Sconiers, her attorney Thomas Dixon ("Dixon") and the St. Joseph County Superior Court, in the United States District Court, Northern District of Indiana, under cause number 3:14-cv-01722-JD-CAN. (V.C. ¶ 62; Ans. ¶ 62; Commission's Exhibit 24.)

70.     In his complaint, Respondent alleged that Sconiers and Dixon discriminated, harassed and retaliated against him on the basis of his disability by bringing a malpractice action against him, in violation of the ADA. (V.C. ¶ 63; Ans. ¶ 63; Commission's Exhibit 24.)

71.     In his complaint, Respondent alleged that the St. Joseph County Superior Court was being used by Sconiers and Dixon to discriminate against him. (V.C. ¶ 64; Ans. ¶ 64;

Commission's Exhibit 24.)

72.     In his complaint, Respondent sought damages based on the cost of defending against the malpractice action and his emotional distress.  (V.C. ¶ 65; Ans. ¶ 65; Commission's Exhibit 24 at 300-01.)

73.     In his complaint, Respondent requested that the federal district court mandate the St. Joseph County Superior Court to dismiss the malpractice action filed by Sconiers.  (V.C. ¶ 66; Ans. ¶ 66; Commission's Exhibit 24 at 300.)

74.     In his complaint, Respondent did not allege that the St. Joseph County Superior Court had engaged in any violations of the ADA.  The only time Respondent addressed the St. Joseph County Superior Court was in his prayer for relief, when he asked for an injunction against the St. Joseph County Superior Court, and when he stated, "The state court is governed by ADA, Title II, and must not discriminate, and Sconiers and her attorney are inappropriately using the state court in the discrimination and retaliation scheme." (Commission's Exhibit 24 at 300.)  Having asserted no substantive allegations against it, Respondent should not have named the St. Joseph County Superior Court as a defendant.

75.     Sconiers and Dixon are not covered employers, public entities or facilities offering public accommodation that would be subject to the requirements of the ADA. (Commission's Exhibit 31 at 364-65.)

76.     Respondent's lawsuit against Sconiers, Dixon and the St. Joseph County Superior Court was frivolous.  (Commission's Exhibit 31 at 359.)

77.     Respondent's lawsuit against Sconiers, Dixon and the St. Joseph County Superior Court was an improper collateral attack against the state malpractice action.

78.     On August 21, 2014, St. Joseph Superior Court filed a motion to dismiss. (V.C. ¶ 71; Ans. ¶ 71; Commission's Exhibit 25.)  In its brief in support of its motion to dismiss, the St. Joseph Superior Court pointed out that the Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from entering an injunction to stay state court proceedings absent express statutory authorization.  (Commission's Exhibit 25 at 320-23.)  It also pointed out that Respondent did not plead any of the factors necessary to show a right to injunctive relief. (Commission's Exhibit 25 at 325-26.)

79.     On August 25, 2014, Dixon filed a motion to dismiss.  (V.C. ¶ 72; Ans. ¶ 72; Commission's Exhibit 26.)  In his brief in support of his motion to dismiss, Dixon pointed out that Respondent had not alleged that Sconiers or Dixon were his employer or that either employs the minimum number of employees of 15 or more to fall under the ADA, that either attempted to deprive him of public services, or that either had attempted to deprive him of public accommodations.  (Commission's Exhibit 26 at 332.)

80.     On August 28, 2014, Sconiers filed a motion to dismiss.  (V.C. ¶ 73; Ans. ¶ 73.)

81.     On August 28, 2014, Respondent filed a response to the St. Joseph Superior Court's motion to dismiss.  (V.C. ¶ 74; Ans. ¶ 74; Commission's Exhibit 27.)

82.     On August 29, 2014, Respondent filed a motion for Rule 11 sanctions against Dixon. (V.C. ¶ 75; Ans. ¶ 75.)  Respondent's motion for Rule 11 sanctions was scattered and vague. (Commission's Exhibit 28.)  It appears to request sanctions against Sconiers for filing the state court malpractice action and against Dixon for sending a letter warning about the potential for Rule 11 sanctions to Respondent.  (Id.)  It does not assert any legitimate basis for Rule 11 sanctions.

13

83.     On December 7, 2014, Respondent filed a motion for summary judgment against all defendants.  (V.C. ¶ 77; Ans. ¶ 77.)

84.     On December 10, 2014, Sconiers and Dixon filed a joint response in opposition to Respondent's motion for summary judgment.  (V.C. ¶ 78; Ans. ¶ 78.)

85.     On December 24, 2014, the St. Joseph Superior Court filed a response in opposition to Respondent's motion for summary judgment.  (V.C. ¶ 79; Ans. ¶ 79.)

86.     On December 30, 2014, the district court issued an opinion and order dismissing Respondent's lawsuit for lack of subject matter jurisdiction and, alternatively, failure to state a claim upon which relief may be granted.  (V.C. ¶ 80; Ans. ¶ 80; Commission's Exhibit 31.)

87.     In its opinion and order, the district court called Respondent's claims "utterly frivolous" and "wholly insubstantial."  (V.C. ¶ 81; Ans. ¶ 81; Commission's Exhibit 31 at 359, 365.)

88.     In its opinion and order, the district court denied Respondent's request for sanctions and his motion for summary judgment.  (V.C. ¶ 82; Ans. ¶ 82; Commission's Exhibit 31 at 368-69.)

89.     On January 30, 2015, Respondent filed a motion to amend his complaint.  (V.C. ¶ 83; Ans. ¶ 83.)

90.     On April 23, 2015, the district court denied Respondent's motion to amend the complaint, citing the futility of the proposed amended complaint.  (V.C. ¶ 84; Ans. ¶ 84; Commission's Exhibit 32.)

91.     In its order, the district court stated, "Plaintiff's proposed amended complaint simply repackages the same conclusory, frivolous claims previously rejected by this Court."

14

(V.C. ¶ 85; Ans. ¶ 85; Commission's Exhibit 32 at 374.)

92.     In its order, the district court called Respondent's pleadings "confusing and jumbled." (V.C. ¶ 86; Ans. ¶ 86; Commission's Exhibit 32 at 376.)

93.     On April 23, 2015, Respondent filed a motion for review of magistrate judge decision by a district court judge. (V.C. ¶ 87; Ans. ¶ 87.)

94.     On December 1, 2015, the district court judge affirmed the magistrate judge's decision to deny the motion to amend the complaint. (V.C. ¶ 88; Ans. ¶ 88; Commission's Exhibit 33.)

95.     In its order, the district court judge called the claims in the proposed amended complaint "confusing, fantastical, and vague." (V.C. ¶ 89; Ans. ¶ 89; Commission's Exhibit 33 at 383.)

96.     On May 9, 2016, Respondent filed another lawsuit against Dixon and Sconiers in the United States District Court, Northern District of Indiana, under cause number 3:16-cv-276. (Commission's Exhibit 54.) In the complaint, Respondent includes pages of irrelevant paragraphs about his alleged accomplishments. (Commission's Exhibit 54 at 775-81.) The complaint attempts to allege a cause of action for abuse of process and appears to rehash allegations already lodged in the prior case against Sconiers and Dixon. (Commission's Exhibit 54.) Respondent's prayer for relief seeks $90,000 from Dixon and an additional $90,000 from Sconiers. (Commission's Exhibit 54 at 800.)

### Facts Related to Count IV – Rutherford v. Zalas

97.     In 2014, Respondent represented Christopher Rutherford in a post-dissolution proceeding involving parenting time issues in Marshall County Superior Court 1. (V.C. ¶ 91;

15

Ans. ¶ 91.)

98.     The opposing party in the post-dissolution proceeding, Elizabeth Rutherford, was represented by attorney Clint Zalas ("Zalas").  (V.C. ¶ 92; Ans. ¶ 92.)

99.     On October 9, 2014, Respondent filed a lawsuit on behalf of Christopher Rutherford against Elizabeth Rutherford, Zalas and the Marshall County Superior Court 1, in the United States District Court, Northern District of Indiana, under cause number 2:14-cv-00369-JTM-PRC.  (V.C. ¶ 93; Ans. ¶ 93; Commission's Exhibit 35.)

100.    In the complaint, Respondent alleged that Elizabeth Rutherford and Zalas had violated the ADA by discriminating against Christopher Rutherford, a disabled man, regarding parenting time in the post-dissolution proceeding.  (V.C. ¶ 94; Ans. ¶ 94; Commission's Exhibit 35.)

101.    In the complaint, Respondent further alleged that the Marshall County Superior Court 1 had violated the ADA by issuing an order adverse to Christopher Rutherford in the underlying parenting time matter, by engaging in an *ex parte* communication, and by refusing to grant a change of venue.  (V.C. ¶ 95; Ans. ¶ 95; Commission's Exhibit 35.)

102.    In the complaint, Respondent sought an injunction to stop all action in the state court and to mandate the state court to grant a change of venue and to undo various orders.  (V.C. ¶ 96; Ans. ¶ 96; Commission's Exhibit 35 at 407-08.)

103.    In the complaint, Respondent also sought reimbursement of Christopher Rutherford's attorney fees and costs.  (V.C. ¶ 97; Ans. ¶ 97; Commission's Exhibit 35 at 409.)

104.    Elizabeth Rutherford and Zalas were not covered employers, public entities or facilities offering public accommodation and so are not subject to the requirements of the ADA.

16

Respondent did not allege that they were covered employers, public entities or facilities offering public accommodation in his complaint. (Commission's Exhibit 35.) He alleged that Zalas "violated [Christopher Rutherford]'s rights as a disabled person." (Commission's Exhibit 35 at 404.) He made no specific allegations against Elizabeth Rutherford, except to say that she is responsible for Zalas' actions and that she objected to using the Indiana Parenting Time Guidelines due to Christopher Rutherford's disability. (Commission's Exhibit 35 at 406.)

105.    The lawsuit filed by Respondent against Elizabeth Rutherford, Zalas and the Marshall County Superior Court 1 was frivolous.

106.    The lawsuit filed by Respondent against Elizabeth Rutherford, Zalas and the Marshall County Superior Court 1 was an improper collateral attack against the state post-dissolution proceeding.

107.    On October 10, 2014, Respondent filed a motion for sanctions against Zalas, an amended complaint alleging new allegations against Zalas, and a motion to compel. (V.C. ¶ 101; Ans. ¶ 101; Commission's Exhibit 36.) In the motion for sanctions, Respondent asked for sanctions against Zalas because Zalas sent him a letter pursuant to Rule 11 of the Federal Rules of Civil Procedure, asking him to withdraw his complaint because it is frivolous.

108.    The motion for sanctions filed by Respondent was baseless.

109.    On October 17, 2014, the district court denied Respondent's motion for sanctions. In its order, the district court called Respondent's actions in filing the motion for sanctions "ridiculous." (V.C. ¶ 103; Ans. ¶ 103; Commission's Exhibit 37.) The district court said Respondent's action "may itself be sanctionable conduct." (Commission's Exhibit 37.)

110.    On October 17, 2014, Elizabeth Rutherford and Zalas filed a joint motion to

dismiss for failure to state a claim and lack of jurisdiction.  (V.C. ¶ 104; Ans. ¶ 104; Commission's Exhibit 38.)  In their 20-page brief in support, they argue that the federal court lacked subject matter jurisdiction under the *Younger* abstention doctrine to intervene in a state court proceeding or to rule in a child custody matter, and that the complaint failed to state a claim under the ADA.

111.   On October 20, 2014, the district court entered an order striking the amended complaint filed by Respondent.  (V.C. ¶ 105; Ans. ¶ 105.)

112.   On November 11, 2014, Respondent filed a response to the motion to dismiss.  (V.C. ¶ 106; Ans. ¶ 106.)  Respondent's response did not present any cogent legal argument.  (Commission's Exhibit 39.)

113.   On November 12, 2014, the defendants filed a reply in support of the motion to dismiss.  (V.C. ¶ 107; Ans. ¶ 107; Commission's Exhibit 40.)

114.   During the course of the briefing, Respondent filed two "statements" which, including exhibits, comprised nearly 90 pages, as well as a reply to a reply.  (Commission's Exhibit 41 at 513.)  The court struck the "statements" and the reply to a reply as being outside of the rules and an end run on the page limits for briefs.  (Commission's Exhibit 41.)

115.   On November 22, 2014, on his client's direction, Respondent filed a motion to withdraw as Christopher Rutherford's attorney and a motion to voluntarily dismiss the case.  (V.C. ¶ 108; Ans. ¶ 108; Commission's Exhibits 42-43.)

116.   Initially, the defendants opposed the voluntary motion to dismiss and sought sanctions against Respondent and Christopher Rutherford.  (V.C. ¶ 109; Ans. ¶ 109; Commission's Exhibit 44.)

18

117.   Christopher Rutherford then filed a response to the motion for sanctions. (Commission's Exhibit 45.)  In his response, filed by new counsel, he alleged that he had been unaware of many of Respondent's actions and had only recently obtained copies of certain documents and orders by the court.  (Commission's Exhibit 45 at 546.)  Two days later, Christopher Rutherford alleged, he instructed Respondent to dismiss the case and terminated him as counsel.  (Id.)

118.   Ultimately, the defendants withdrew their opposition to the voluntary motion and their request for sanctions, citing a monetary settlement of the claim for sanctions, and the district court dismissed the case.  (V.C. ¶ 110; Ans. ¶ 110; Commission's Exhibit 46.)

## CONCLUSIONS OF LAW

119.   With regard to these findings and conclusions, any finding of fact that appears more appropriately to be a conclusion of law, and any conclusion of law that appears more appropriately to be a finding of fact, shall be deemed to be so.

120.   This matter is properly before the Hearing Officer for a final determination on the merits of this cause.

121.   The Disciplinary Commission has proved by clear and convincing evidence that the Respondent violated the Indiana Rules of Professional Conduct for Attorneys at Law as charged in the Commission's Verified Complaint for Disciplinary Action based upon the foregoing Findings of Fact and the following Conclusions of Law.

### Conclusions Related to Count I

122.   The Hearing Officer concludes that by bringing a civil RICO claim against Kloecker and Locke Lord LLP, the Respondent brought a proceeding without a basis in law and

19

fact for doing so that was not frivolous in violation of Indiana Rule of Professional Conduct 3.1.

### Conclusions Related to Count II

123.    The Hearing Officer concludes that by bringing a lawsuit against the ABA and 50 U.S. law schools which failed to state a cognizable claim, the Respondent brought a proceeding without a basis in law and fact for doing so that was not frivolous in violation of Indiana Rule of Professional Conduct 3.1.

### Conclusions Related to Count III

124.    The Hearing Officer concludes that by bringing an ADA lawsuit against Sconiers, Dixon, and the St. Joseph County Superior Court, the Respondent brought a proceeding without a basis in law and fact for doing so that was not frivolous in violation of Indiana Rule of Professional Conduct 3.1.

### Conclusions Related to Count IV

125.    The Hearing Officer concludes that by bringing an ADA lawsuit against Elizabeth Rutherford, Zalas and the Marshall County Superior Court 1, the Respondent brought a proceeding without a basis in law and fact for doing so that was not frivolous in violation of Indiana Rule of Professional Conduct 3.1.

## AGGRAVATORS AND MITIGATORS

### Facts and Conclusions in Aggravation

1.    By filing four separate frivolous lawsuits, Respondent engaged in a pattern of misconduct.  ABA Standards for Imposing Lawyer Sanctions 9.22(c).

2.    The Respondent showed a lack of insight into and failure to acknowledge the wrongful nature of his misconduct.  ABA Standard for Imposing Lawyer Sanctions 9.22(g).  In

20

his response to the initial grievance, the Respondent characterized the lawsuits he filed as the championing of disability rights. (Commission's Exhibit 3.) He repeatedly demanded an apology for the Disciplinary Commission's investigation and proceeding against him. (Commission's Exhibit 4 at 84; Exhibit 51 at 643, 672, 674-75.) He also repeatedly threatened to take legal action against the Commission, its staff and/or Brenda Rodeheffer, the initial grievant. (Commission's Exhibit 3 at 67; Exhibit 5 at 89; Exhibit 6 at 90; Exhibit 51 at 705.)

      3.      Respondent refused to participate in the disciplinary hearing. (Commission's Exhibit 51 at 759.)

      4.      Respondent engaged in activity that was inappropriately burdensome to others. He sent dozens of lengthy e-mails to the Commission's lawyer and others during the course of the disciplinary proceeding. (Commission's Exhibit 51.) Often his e-mails to disciplinary staff were unsolicited, unprovoked and/or off-topic. (Commission's Exhibit 51 at 609-10, 622-29, 632-37, 641-50, 653-54, 659-71, 693-704, 708-11, 714-16, 720-25, 741-44, 747-52, 756-58.) On occasion, the tone of Respondent's e-mails were frightening. He e-mailed Michael Witte, Angie Ordway and Chief Justice Rush, stating: "all of you need to be torn down. . . . you have picked an enemy who will bury you." (Commission's Exhibit 51 at 730.) He created a webpage using the Commission's lawyer as the domain name at www.angieordway.com on which he posted the Commission's responses to his requests for admission. (Commission's Exhibit 51 at 717; Exhibit 53 at 764.) He also created a webpage at www.indianaattorneydisciplinarycommission.com to complain about the Commission. (Commission's Exhibit 51 at 719; Exhibit 53 at 765-67.) Finally, he created webpages with no

content in the names of Brenda Rodeheffer, Lilia Judson, and Randall Shepard.  (Commission's Exhibit 53 at 768-73.)

5.     Respondent displayed either, at worst, a disregard for proper legal procedures or, at best, incompetence.  For example, Respondent asked a federal court for a permanent injunction of the disciplinary proceeding.  (Commission's Exhibits 47-48.)  The motion did not set forth a sound legal basis for the request for relief.  (Id.)  When that federal case was dismissed, rather than appeal, he asked the Seventh Circuit, in a completely unrelated matter, to enjoin the district court which had dismissed the case.  (Commission's Exhibit 49.) Respondent's motion for permanent injunction to the Seventh Circuit did not discuss any of the factors for injunctive relief, and instead included paragraphs of all caps demands.  (Id.) Respondent also filed a form petition for an order of protection in this disciplinary proceeding, alleging stalking by the Indiana Supreme Court.  (Commission's Exhibit 50.)  These are all requests one might expect of an overly litigious layperson, not a licensed attorney.

## RECOMMENDATION

In determining the appropriate sanction to be imposed upon the Respondent, it is appropriate to consider the nature of the misconduct, the lawyer's state of mind, actual or potential injury flowing from the misconduct, the duty of the Court to preserve the integrity of the legal profession, the risk to the public in allowing the respondent to continue in practice and any mitigating or aggravating factors. *Matter of Lehman*, 690 N.E.2d 696 (Ind. 1997).  Central to the purpose behind the lawyer discipline process is the need to protect the public and to promote public confidence in the administration of justice.  American Bar Association Standards for Imposing Lawyer Sanctions, Standard 1.1.

22

In order to determine the appropriate sanction for the misconduct here, the Hearing Officer must consider the totality of the circumstances of the proven violations, as well as any aggravating and mitigating circumstances that exist. Respondent repeatedly filed frivolous lawsuits, forcing the targets of his ire to hire counsel and defend against his vexatious behavior. Respondent's frivolous claims also burdened courts, who dedicated their resources to try and make sense of his haphazard claims and appeals. The aggravating circumstances in this case are serious. Respondent did not acknowledge his wrongful conduct, did not participate in the disciplinary hearing, and continuously took part in vexatious behavior toward the Commission, its staff, and other employees of the Supreme Court. Overall, Respondent appears to lack a genuine understanding about how to properly engage with the legal system. For this reason, Respondent cannot safely be recommended to the public as a lawyer in Indiana, and should be required to prove his fitness to practice through a reinstatement proceeding.

For all of the reasons stated above, the Hearing Officer submits that a suspension for 60 days without automatic reinstatement is appropriate in this case.

Dated: _____          _____
                                        Hon. James R. Ahler
                                        Hearing Officer



Distribution:

Clerk, Indiana Supreme Court
Statehouse
Indianapolis, IN  46204

G. Michael Witte
Angie L. Ordway
Indiana Supreme Court Disciplinary Commission

23

30 South Meridian, Street, Suite 850
Indianapolis, IN  46204

Andrew U.D. Straw
1900 E. Golf Rd., Suite 950A
Schaumburg, IL  60173