EX 18

# IN THE SUPREME COURT

## OF THE

## STATE OF INDIANA

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | Cause No. 98S00-1601-DI-12 |
| ANDREW U. D. STRAW ) | |
| Attorney Number 23378-53 ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Honorable James R. Ahler, having been appointed and qualified as the Hearing Officer in this matter, now submits the following findings of fact, conclusions of law and recommendation, pursuant to the Indiana Admission and Discipline Rules.

## FINDINGS OF FACT

### Background and Facts Relevant to All Counts against Respondent

1. This matter commenced on January 11, 2016, with the filing of the Disciplinary Commission's ("Commission") Verified Complaint for Disciplinary Action ("Verified Complaint"). (Commission's Exhibit 1.) The Verified Complaint alleges, under Counts I through IV, that Andrew U.D. Straw ("Respondent") violated Indiana Rule of Professional Conduct 3.1 on four (4) separate occasions.

2. On February 5, 2016, Respondent filed his Response with Answer Under Protest (Commission's Exhibit 2.)

3. On May 12, 2016, at the final hearing ("Hearing"), the Honorable James R. Ahler, Hearing Officer, heard the evidence the Commission offered regarding the charges against Respondent.

4. Staff Attorney Angie L. Ordway represented the Commission at the Hearing.

5.      Respondent, a self-represented litigant, failed to appear at the scheduled Hearing, despite having prior notice of the Hearing.  Respondent expressed in writing, both before and after the scheduled Hearing, that he refused to participate any further in the disciplinary proceeding.

6.      At the Hearing, the Commission submitted undisputed documentary evidence.

7.      Relying upon the documentary evidence presented at the Hearing, the Hearing Officer prepared the instant specific findings of fact.

8.      Respondent is an attorney in good standing, who was admitted to practice law in the State of Indiana on June 7, 2002, subjecting him to the Indiana Supreme Court's disciplinary jurisdiction. (Verified Complaint, Commission's Exhibit 1 ("V.C.") ¶ 1; Response with Answer Under Protest, Commission's Exhibit 2 ("Ans.") ¶ 1.)

9.      At all times relevant to this proceeding, Respondent has practiced law in Streamwood and/or Schaumburg, Cook County, Illinois. (V.C. ¶ 2; Ans. ¶ 2.)

**Facts Related to Count I – *Straw v. Kloecker***

10.     In 2013, Respondent sued Paddock Publications for defamation in Cook County Circuit Court in Illinois.  Attorney John Kloecker ("Kloecker") of the law firm of Locke Lord LLP represented Paddock Publications, Inc. in the action.  Respondent represented himself. (V.C. ¶ 3; Ans. ¶ 3.)

11.     On February 13, 2014, in the course of the 2013 action, Kloecker sent to Respondent a letter which referenced a statute requiring liability insurers to report to Medicare the details of settlements, judgments, awards or other payments to Medicare recipients ("the Medicare letter"). (V.C. ¶ 4; Ans. ¶ 4; Commission's Exhibit 8 at 126-28.)

12.     In the Medicare letter, Kloecker stated that the statute imposed "steep penalties for noncompliance with its reporting obligations of $1000 per claim per day." (V.C. ¶ 5; Ans. ¶ 5; Commission's Exhibit 8 at 126.)

13.     In the Medicare letter, Kloecker asked Respondent to disclose whether he was enrolled in the Medicare program, his Medicare number or social security number, his first and last name, his date of birth and his gender. (V.C. ¶ 6; Ans. ¶ 6; Commission's Exhibit 8 at 127.)

14.     On February 27, 2014, Respondent filed a lawsuit as a self-represented plaintiff against Kloecker and Locke Lord LLP, in the United States District Court, Northern District of Illinois, under cause number 1:14-CV-01420. (V.C. ¶ 7; Ans. ¶ 7; Commission's Exhibit 8.)

15.     In the complaint, Respondent alleged that Kloecker and Locke Lord LLP engaged in civil RICO racketeering activity by sending the Medicare letter. (V.C. ¶ 8; Ans. ¶ 8; Commission's Exhibit 8.)

16.     Respondent's complaint also requested $15 million in damages and injunctive relief. (V.C. ¶ 9; Ans. ¶ 9; Commission's Exhibit 8 at 101-02.)

17.     In rendering its opinion, the District Court concluded that Locke Lord LLP was not a "person" that could be the target of a civil RICO claim. (Commission's Exhibit 10 at 139; *Straw v. Kloecker*, No. 14 C 1420, 2014 WL 883289 (N.D. Ill Mar. 5, 2014).) The District Court determined that Respondent mischaracterized the Medicare letter as "racketeering activity." (Commission's Exhibit 10 at 139.)   The District Court further concluded that Respondent was not entitled to $15 million in damages or injunctive relief. (*Id.*)

18.     In its opinion, the District Court characterized Respondent's complaint as an "attack" and his prayer for relief therein as "bizarre."   (V.C. ¶ 17-18; Ans. ¶ 17-18; Commission's Exhibit 10 at 138.)

19.     The District Court found that Respondent's "effort to bootstrap the [Medicare letter] into a criminal violation through which he hopes to mulct $15 million from Kloecker and Locke Lord must be characterized as legally frivolous in the sense employed in *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000)."   (V.C. ¶ 16; Ans. ¶ 16; Commission's Exhibit 10 at 139.)   The District Court dismissed Respondent's lawsuit.   (V.C. ¶ 14; Ans. ¶ 14; Commission's Exhibit 10 at 139.)

20.     In its opinion, the District Court stated that it "might have been expected that a lawyer such as [Respondent] would have looked into the requirements of civil RICO before shooting from the hip as he has done in his Complaint, filed as it was less than two weeks after he received the [Medicare letter]."   (V.C. ¶ 19; Ans. ¶ 19; Commission's Exhibit 10 at 138.)

21.     On March 19, 2014, Respondent filed a request for reconsideration.   (V.C. ¶ 20; Ans. ¶ 20.)   On March 26, 2014, the District Court denied Respondent's request for reconsideration.   (V.C. ¶ 21; Ans. ¶ 21.)

22.     On April 3, 2014, Respondent appealed the District Court's decision to the Seventh Circuit Court of Appeals.   (V.C. ¶ 22; Ans. ¶ 22; Commission's Exhibit 11; *Straw v. Kloecker*, No. 14-1714 (7th Cir. Aug. 19, 2014).)

23.     The Seventh Circuit concluded that Respondent's appeal was meritless. Specifically, the Seventh Circuit stated that "[Respondent] lists 16 issues for our review, but he

elaborates on none of them.  Instead, he simply repeats the allegations from his complaint and accuses the District Court of abusing its discretion." (Commission's Exhibit 12 at 145.)

24.     In the course of the appeal, Respondent filed several extraneous memoranda and filings, including a notice of intent to file Memorandum Regarding Summons in Case Below, Memorandum Regarding Privacy Act and HIPAA, a motion to file Amended Complaint from state case below, notice of intent to file Plaintiff's Letter Regarding Other Defendants and Information Demands, Memorandum Regarding Ethical Issues with Counsel and Renewal of Request for Relief, and Memorandum Updating Information in Brief on defendant Bowers in state case. (Commission's Exhibit 11.)

25.     In the course of the federal appeal, Kloecker and Locke Lord LLP hired counsel and filed appellees' briefs and responses to Respondent's filings.  (V.C. ¶ 25; Ans. ¶ 25; Commission's Exhibit 11.)

26.     On August 19, 2014, the Seventh Circuit affirmed the judgment of the District Court.  (V.C. ¶ 26; Ans. ¶ 26; Commission's Exhibit 12.)  Moreover, the Seventh Circuit held that it was in agreement with District Court that "Straw's lawsuit under RICO is frivolous, as is this appeal." (V.C. ¶ 27; Ans. ¶ 27; Commission's Exhibit 12 at 146.)

27.     In its opinion, the Seventh Circuit ordered Respondent to show cause within thirty (30) days why he should not be sanctioned under Federal Rule of Appellate Procedure 38 for taking the appeal. (V.C. ¶ 28; Ans. ¶ 28; Commission's Exhibit 12 at 146.)

28.     The Respondent filed a Response to Sanctions Show Cause Order in which he stated, "[S]anctioning me with paying the appellee's [sic.] fees will simply push me into

bankruptcy. I am on SSDI due to my disabilities. I don't even own a car." (Commission's Exhibit 13 at 149.)

29.     Ultimately, the Seventh Circuit Court of Appeals did not impose any sanctions on Respondent. (V.C. ¶ 29; Ans. ¶ 29; Commission's Exhibit 11.)

30.     On August 20, 2014, Respondent filed a petition for rehearing *en banc*. (V.C. ¶ 30; Ans. ¶ 30.) On September 16, 2014, the Respondent's petition for rehearing *en banc* was denied. (V.C. ¶ 31; Ans. ¶ 31.)

31.     Thereafter, Respondent filed a Petition for Writ of Certiorari before the United States Supreme Court. (V.C. ¶ 32; Ans. ¶ 32.) Respondent's Petition for Writ of Certiorari was denied. (V.C. ¶ 33; Ans. ¶ 33.)

**Facts Related to Count II – *Straw v. American Bar Association***

32.     On July 8, 2014, Respondent filed a lawsuit, as a self-represented plaintiff, against the American Bar Association ("ABA") and 50 U.S. law schools. The lawsuit was filed in the Northern District of Illinois. (V.C. ¶ 35; Ans. ¶ 35; Commission's Exhibit 15.)

33.     In his complaint, Respondent alleged that the ABA and the 50 U.S. law schools had violated Title II and/or Title III of the Americans with Disabilities Act ("ADA"), which prohibit discrimination on the basis of disability in providing access to public entities and/or public accommodations. (V.C. ¶ 36; Ans. ¶ 36; Commission's Exhibit 15.)

34.     Respondent also alleged in his complaint that he has mental and physical disabilities, and that he planned to apply to a U.S. law school for a PhD program. (V.C. ¶ 37; Ans. ¶ 37; Commission's Exhibit 15.)

35.     Respondent further alleged that he wished "to know which law school was admitting the highest percentage of its class with disabilities", because he wished to choose a school that does not discriminate as much as other law schools.   (V.C. ¶ 38; Ans. ¶ 38; Commission's Exhibit 15 at 179.)

36.     Respondent alleged in his complaint that he was discriminated against because the ABA does not publish statistics regarding admissions of students and employment of faculty with disabilities at U.S. law schools. (V.C. ¶ 39; Ans. ¶ 39; Commission's Exhibit 15.)

37.     In his complaint, Respondent sought injunctive relief to require the ABA to include information about disabilities in its data collection efforts from law students and faculty. (V.C. ¶ 40; Ans. ¶ 40; Commission's Exhibit 15.)

38.     Respondent also sought injunctive relief to require each law school to collect disability information from law students and faculty and provide that information to Respondent. (V.C. ¶ 41; Ans. ¶ 41; Commission's Exhibit 15.)

39.     Several of the law schools named as defendants filed motions to dismiss Respondent's complaint.   (V.C. ¶¶ 48-49, 51; Ans. ¶¶ 48-49, 51; Commission's Exhibit 14 at 168.)

40.     On October 31, 2014, Respondent filed a Verified First Amended Complaint, in which he expressed that he no longer wished to pursue his suit against the 50 named law schools, and only wanted to proceed against the ABA. (V.C. ¶ 52; Ans. ¶ 52; Commission's Exhibit 16.) In his amended complaint, Respondent stated that he recognized that mandating law professors to reveal disability information, as his lawsuit sought to have the court to do, could be an invasion that leads to discrimination. (Commission's Exhibit 16 at 211.)  Respondent also stated

that he realized that what he actually wanted was a change to the ABA's reporting form, which would address the issue without seeking action by the individual law schools. (Commission's Exhibit 16 at 212.) Respondent's readiness to drop 50 defendants from the lawsuit in its initial stages is evidence that the lawsuit was ill-conceived and frivolous.

41.     On November 11, 2014, the District Court dismissed all defendants with the exception of the ABA. (V.C. ¶ 53; Ans. ¶ 53.)

42.     On November 21, 2014, the ABA filed a motion to dismiss the amended complaint. (V.C. ¶ 54; Ans. ¶ 54; Commission's Exhibits 14, 18.)  In support of its motion to dismiss, the ABA argued, among other things: (a.) that Respondent had not suffered any injury of a legally protectable interest and, therefore, lacked standing to sue; (b.) that he had not stated a claim upon which relief could be granted because the ABA was not a covered entity under Title III of the ADA; and (c.) that Respondent's Title III claim must fail on the merits because Respondent does not and cannot claim that the ABA was discriminating against him. (Commission's Exhibit 18 at 224.)

43.     On December 20, 2014, Respondent filed a response in opposition to the motion to dismiss. (V.C. ¶ 55; Ans. ¶ 55.)  Respondent's response fails to address most of the legal arguments advanced in the ABA's motion to dismiss. (Commission's Exhibit 19.)

44.     On January 9, 2015, the ABA filed a reply in support of its motion to dismiss. (V.C. ¶ 56; Ans. ¶ 56; Commission's Exhibit 20.)

45.     On February 11, 2015, the District Court issued an opinion granting the ABA's motion to dismiss, citing Respondent's lack of standing and failure to state a cognizable claim under the ADA.  (V.C. ¶ 57; Ans. ¶ 57; Commission's Exhibit 21; *Straw v. American Bar*

8

*Association*, No. 14 C 5194 (N.D. Ill. Feb. 11, 2015).)

46.    In its 17-page opinion, the District Court cited numerous reasons why Respondent's lawsuit failed.    (Commission's Exhibit 21.)    The District Court found that Respondent lacked standing because he had failed to allege an injury-in-fact, had failed to show a causal connection between the ABA's actions and Respondent's alleged harm, and had failed to show a likelihood of redress that was not merely speculative.    (Commission's Exhibit 21 at 272-76.)    The District Court also found that Respondent failed to show a statutory right to the statistics he wished to compel; the only statutory authority cited by Respondent was the congressional findings section, and not operative text.    (Commission's Exhibit 21 at 276-78.) The District Court further found that Respondent had failed to state a claim under the ADA because Respondent had not alleged that the ABA discriminated against him by denying him access to goods or services it provides to the public at large.    (Commission's Exhibit 21 at 279-82.)

47.    Respondent did not appeal the District Court's order.    (Commission's Exhibit 14.) Instead, he filed a "Letter to Court" in which he "protested" the District Court's use of the term "lacked standing" in its dismissal of his claims because Respondent previously had suffered two broken legs and a broken hip in a prior automobile accident.    (Commission's Exhibit 22 at 283.) Specifically, Respondent argued that terms such as "standing" perpetuate discrimination.    (*Id.*) Respondent's "Letter to Court" demonstrates his failure: (a.) to appreciate the use of common legal concepts; and (b.) to apply appropriate trial procedural practices and/or remedies.

**Facts Related to Count III – *Straw v. Sconiers***

48.　In 2012, Respondent represented Brenda Sconiers ("Sconiers") in connection with an employment discrimination claim. (V.C. ¶ 60; Ans. ¶ 60.)

49.　On October 18, 2013, Sconiers brought a legal malpractice action against Respondent in the St. Joseph County Superior Court, alleging that Respondent let the statute of limitations lapse without filing Sconiers' employment discrimination action. (V.C. ¶ 61; Ans. ¶ 61.)

50.　On August 3, 2014, Respondent filed a lawsuit as a self-represented plaintiff against Sconiers, her attorney Thomas Dixon ("Dixon") and the St. Joseph County Superior Court, in the United States District Court, Northern District of Indiana, under cause number 3:14-CV-1772-JD. (V.C. ¶ 62; Ans. ¶ 62; Commission's Exhibit 24.)

51.　In his complaint, Respondent alleged that Sconiers and Dixon discriminated, harassed and retaliated against him on the basis of his disability by bringing a malpractice action against him, in violation of the ADA. (V.C. ¶ 63; Ans. ¶ 63; Commission's Exhibit 24.)

52.　Respondent also alleged in his complaint that the St. Joseph County Superior Court was being used by Sconiers and Dixon to discriminate against him. (V.C. ¶ 64; Ans. ¶ 64; Commission's Exhibit 24.)

53.　Respondent sought damages based on the cost of defending against the malpractice action and his emotional distress. (V.C. ¶ 65; Ans. ¶ 65; Commission's Exhibit 24 at 300-01.)

54.　In his complaint, Respondent requested that the District Court mandate the St. Joseph County Superior Court to dismiss the malpractice action filed by Sconiers. (V.C. ¶ 66;

Ans. ¶ 66; Commission's Exhibit 24 at 300.)

55.     Respondent's complaint does not allege that the St. Joseph County Superior Court engaged in any violations of the ADA, or engaged in any other wrongful conduct. (*See generally*, Commission's Exhibit 24.) Having asserted no substantive allegations against it in his complaint, Respondent identified no factual or legal basis to name the St. Joseph County Superior Court as a defendant. (*Id.*)

56.     On August 21, 2014, St. Joseph Superior Court filed a motion to dismiss. (V.C. ¶ 71; Ans. ¶ 71; Commission's Exhibit 25.) In its brief in support of its motion to dismiss, the St. Joseph Superior Court pointed out that the Anti-Injunction Act, 28 U.S.C. § 2283, generally prohibits federal courts from entering an injunction to stay state court proceedings absent express statutory authorization. (Commission's Exhibit 25 at 320-23.) It also pointed out that Respondent did not plead any of the factors necessary to show a right to injunctive relief. (Commission's Exhibit 25 at 325-26.)

57.     On August 25, 2014, Dixon filed a motion to dismiss. (V.C. ¶ 72; Ans. ¶ 72; Commission's Exhibit 26.) In his brief in support of his motion to dismiss, Dixon pointed out that Respondent had not alleged that Sconiers or Dixon were his employer or that either employs the minimum number of employees of 15 or more to fall under the ADA, that either attempted to deprive him of public services, or that either had attempted to deprive him of public accommodations. (Commission's Exhibit 26 at 332.)

58.     On August 28, 2014, Sconiers filed a motion to dismiss. (V.C. ¶ 73; Ans. ¶ 73.)

59.     On August 28, 2014, Respondent filed a response to the St. Joseph Superior Court's motion to dismiss. (V.C. ¶ 74; Ans. ¶ 74; Commission's Exhibit 27.)

11

60.     On August 29, 2014, Respondent filed a motion for Rule 11 sanctions against Dixon. (V.C. ¶ 75; Ans. ¶ 75.)  Respondent's motion for Rule 11 sanctions was scattered and vague. (Commission's Exhibit 28.)  It appears to request sanctions against Sconiers for filing the state court malpractice action and against Dixon for sending a letter warning about the potential for Rule 11 sanctions to Respondent.  (Id.)  It does not assert any legitimate basis for Rule 11 sanctions.

61.     On December 7, 2014, Respondent filed a motion for summary judgment against all defendants. (V.C. ¶ 77; Ans. ¶ 77.)

62.     On December 10, 2014, Sconiers and Dixon filed a joint response in opposition to Respondent's motion for summary judgment.  (V.C. ¶ 78; Ans. ¶ 78.)  On December 24, 2014, the St. Joseph Superior Court filed a response in opposition to Respondent's motion for summary judgment.  (V.C. ¶ 79; Ans. ¶ 79.)

63.     On December 30, 2014, the District Court issued an opinion dismissing Respondent's lawsuit for lack of subject matter jurisdiction and, alternatively, failure to state a claim upon which relief may be granted. (V.C. ¶ 80; Ans. ¶ 80; Commission's Exhibit 31; *Straw v. Sconiers*, No. 3:14-CV-1772-JD (N.D. Ind. Dec. 30 2014).)

64.     In its opinion, the District Court found that Sconiers and Dixon are not covered employers, public entities or facilities offering public accommodations that would be subject to the requirements of the ADA. (Commission's Exhibit 31 at 364-65.)

65.     In its opinion, the District Court characterized Respondent's claims as "utterly frivolous" and "wholly insubstantial."  (V.C. ¶ 81; Ans. ¶ 81; Commission's Exhibit 31 at 359, 365.)

66.     Also in its opinion, the District Court denied Respondent's request for sanctions and his motion for summary judgment.  (V.C. ¶ 82; Ans. ¶ 82; Commission's Exhibit 31 at 368-69.)

67.     On January 30, 2015, Respondent filed a motion to amend his complaint.  (V.C. ¶ 83; Ans. ¶ 83.)

68.     On April 23, 2015, the District Court denied Respondent's motion to amend the complaint, citing the futility of the proposed amended complaint.  (V.C. ¶ 84; Ans. ¶ 84; Commission's Exhibit 32; *Straw v. Sconiers*, No. 3:14-CV-1772-JD-CAN (N.D. Ind. Apr. 23 2015).)  In its order, the District Court held that "Plaintiff's proposed amended complaint simply repackages the same conclusory, frivolous claims previously rejected by this Court." (V.C. ¶ 85; Ans. ¶ 85; Commission's Exhibit 32 at 374.)

69.     In its order, the District Court characterized Respondent's pleadings as "confusing and jumbled." (V.C. ¶ 86; Ans. ¶ 86; Commission's Exhibit 32 at 376.)

70.     On April 23, 2015, Respondent filed a motion for review of magistrate judge decision by a District Court judge.  (V.C. ¶ 87; Ans. ¶ 87.)

71.     On December 1, 2015, the District Court judge affirmed the magistrate judge's decision to deny the motion to amend the complaint.  (V.C. ¶ 88; Ans. ¶ 88; Commission's Exhibit 33; *Straw v. Sconiers*, No. 3:14-CV-1772-JD (N.D. Ind., Dec. 1, 2015).)  In its order, the District Court characterized the claims in Respondent's proposed amended complaint as "confusing, fantastical, and vague." (V.C. ¶ 89; Ans. ¶ 89; Commission's Exhibit 33 at 383.)

72.     On May 9, 2016, Respondent filed yet another federal lawsuit against Dixon and Sconiers in the Northern District of Indiana, under cause number 3:16-CV-276.  (Commission's

Exhibit 54.)   In his complaint, Respondent includes many paragraphs about his alleged accomplishments, much of which is irrelevant to issues he presents for consideration. (Commission's Exhibit 54 at 775-81.)   The complaint attempts to allege a cause of action for abuse of process and appears to rehash allegations previously presented in the prior federal court case against Sconiers and Dixon.   (Commission's Exhibit 54.)   Respondent's prayer for relief seeks $90,000 from Dixon and an additional $90,000 from Sconiers.   (Commission's Exhibit 54 at 800.)   The Hearing Officer did not receive any further evidence regarding this lawsuit, and, therefore, makes no further factual findings regarding it.

**Facts Related to Count IV – *Rutherford v. Zalas***

73.     In 2014, Respondent represented Christopher Rutherford in a post-dissolution proceeding involving parenting time issues in Marshall County Superior Court 1.   (V.C. ¶ 91; Ans. ¶ 91.)

74.     The opposing party in the post-dissolution proceeding, Elizabeth Rutherford, was represented by attorney Clint Zalas ("Zalas").   (V.C. ¶ 92; Ans. ¶ 92.)

75.     On October 9, 2014, Respondent filed a federal lawsuit on behalf of Christopher Rutherford against Elizabeth Rutherford, Zalas, and the Marshall County Superior Court 1 in the Northern District of Indiana under cause number 2:14-CV-00369-JTM.   (V.C. ¶ 93; Ans. ¶ 93; Commission's Exhibit 35.)

76.     In the complaint, Respondent alleged that Elizabeth Rutherford and Zalas had violated the ADA by discriminating against Christopher Rutherford, a disabled man, regarding parenting time in the state court post-dissolution proceeding, *Rutherford v. Rutherford*, Cause No. 50D01-1010-DR-00142.   (V.C. ¶ 94; Ans. ¶ 94; Commission's Exhibit 35 at 394-95.)

14

77.     Respondent further alleged in his complaint that the Marshall County Superior Court 1 violated the ADA by issuing an order adverse to Christopher Rutherford in the underlying parenting time matter, by engaging in an *ex parte* communication, and by refusing to grant a change of venue to another county.  (V.C. ¶ 95; Ans. ¶ 95; Commission's Exhibit 35.)

78.     In the complaint, Respondent sought, among other things: (a.) an injunction to cease all action in the state court proceeding; (b.) the issuance of a mandate to the state court to grant a change of venue to another county; and (c.) that "all of the actions of the state court defendant in any way related to health or disability be undone."  (V.C. ¶ 96; Ans. ¶ 96; Commission's Exhibit 35 at 407-08.)

79.     Respondent's complaint also sought reimbursement of Christopher Rutherford's attorney fees and costs.  (V.C. ¶ 97; Ans. ¶ 97; Commission's Exhibit 35 at 409.)

80.     The lawsuit filed by Respondent against Elizabeth Rutherford, Zalas and the Marshall County Superior Court 1 was an improper collateral attack against the state post-dissolution proceeding.

81.     He alleged that Zalas "violated [Christopher Rutherford]'s rights as a disabled person." (Commission's Exhibit 35 at 404.)  He made no specific allegations against Elizabeth Rutherford, except to say that she is responsible for Zalas' actions and that she objected to using the Indiana Parenting Time Guidelines due to Christopher Rutherford's disability. (Commission's Exhibit 35 at 406.)

82.     On October 10, 2014, Respondent filed a motion for sanctions against Zalas, an amended complaint alleging new allegations against Zalas, and a motion to compel.  (V.C. ¶ 101; Ans. ¶ 101; Commission's Exhibit 36.)  In the motion for sanctions, Respondent asked for

sanctions against Zalas because Zalas sent him a letter pursuant to Rule 11 of the Federal Rules of Civil Procedure, asking him to withdraw his complaint because it is frivolous.

83.     On October 17, 2014, the District Court denied Respondent's motion for sanctions.  In its order, the District Court called Respondent's actions in filing the motion for sanctions "ridiculous." (V.C. ¶ 103; Ans. ¶ 103; Commission's Exhibit 37.)  The District Court said Respondent's actions "may itself be sanctionable conduct." (Commission's Exhibit 37.)

84.     On October 17, 2014, Elizabeth Rutherford and Zalas filed a joint motion to dismiss for failure to state a claim and lack of jurisdiction.  (V.C. ¶ 104; Ans. ¶ 104; Commission's Exhibit 38.)  In their 20-page brief in support, they argue that the federal court lacked subject matter jurisdiction under the *Younger* abstention doctrine to intervene in a state court proceeding or to rule in a child custody matter, and that the complaint failed to state a claim under the ADA.

85.     On October 20, 2014, the District Court entered an order striking the amended complaint filed by Respondent.  (V.C. ¶ 105; Ans. ¶ 105.)

86.     On November 11, 2014, Respondent filed a response to the motion to dismiss.  (V.C. ¶ 106; Ans. ¶ 106.)  Respondent's response did not present any cogent legal argument. (Commission's Exhibit 39.)

87.     On November 12, 2014, the defendants filed a reply in support of the motion to dismiss.  (V.C. ¶ 107; Ans. ¶ 107; Commission's Exhibit 40.)

88.     During the course of the briefing, Respondent filed two "statements" which, including exhibits, comprised nearly 90 pages, as well as a reply to a reply.  (Commission's Exhibit 41 at 513.)  The court struck the "statements" and the reply to a reply as being outside of

the rules and an end run on the page limits for briefs. (Commission's Exhibit 41.)

89. On November 22, 2014, on his client's direction, Respondent filed a motion to withdraw as Christopher Rutherford's attorney and a motion to voluntarily dismiss the case. (V.C. ¶ 108; Ans. ¶ 108; Commission's Exhibits 42-43.)

90. Initially, defendants opposed the voluntary motion to dismiss and sought sanctions against Respondent and Christopher Rutherford. (V.C. ¶ 109; Ans. ¶ 109; Commission's Exhibit 44.)

91. Christopher Rutherford then filed a response to the motion for sanctions. (Commission's Exhibit 45.) In his response, filed by new counsel, he alleged that he had been unaware of many of Respondent's actions and had only recently obtained copies of certain documents and orders by the court. (Commission's Exhibit 45 at 546.) Two days later, Christopher Rutherford alleged, he instructed Respondent to dismiss the case and terminated him as counsel. (*Id.*)

92. Ultimately, the defendants withdrew their opposition to the voluntary motion and their request for sanctions, citing a monetary settlement of the claim for sanctions, and the District Court dismissed the case. (V.C. ¶ 110; Ans. ¶ 110; Commission's Exhibit 46.)

## CONCLUSIONS OF LAW

93. This matter is properly before the Hearing Officer for a final determination on the merits of this cause. However, it is the exclusive province of Indiana Supreme Court to regulate professional activity. *Matter of Mitthower*, 693 N.E.2d 555, 558 (Ind. 1998).

94. The Commission carries the burden of proof to demonstrate attorney misconduct by clear and convincing evidence. *See* Ind. Admission and Discipline Rule 23(14)(i).

95.    Indiana Rule of Professional Conduct 3.1 provides, in relevant part, that a "lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

## Conclusions Related to Count I – *Straw v. Kloecker*

96.    As to Count I of its Verified Complaint, the Hearing Officer finds that the Commission has carried its burden of proof and concludes that Respondent violated the Indiana Rules of Professional Conduct as charged.

97.    The Hearing Officer concludes that by filing and advancing a civil RICO claim against Kloecker and Locke Lord LLP, Respondent brought a frivolous proceeding.  Based on the findings set forth above, the Hearing Officer concludes that Respondent's conduct constitutes a violation of Indiana Rule of Professional Conduct 3.1.

## Conclusions Related to Count II – *Straw v. American Bar Association*

98.    As to Count II of its Verified Complaint, the Hearing Officer finds that the Commission has carried its burden of proof and concludes that Respondent violated the Indiana Rules of Professional Conduct as charged.

99.    The Hearing Officer concludes that by filing and advancing his lawsuit against the ABA and 50 U.S. law schools that failed to state a cognizable claim, Respondent brought a frivolous proceeding.  Based on the findings set forth above, the Hearing Officer concludes that Respondent's conduct constitutes a violation of Indiana Rule of Professional Conduct 3.1.

## Conclusions Related to Count III – *Straw v. Sconiers*

100.    As to Count III of its Verified Complaint, the Hearing Officer finds that the

18

Commission has carried its burden of proof and concludes that Respondent violated the Indiana Rules of Professional Conduct as charged.

101.   The Hearing Officer concludes that by filing and advancing his lawsuit against Sconiers, Dixon, and the St. Joseph County Superior Court, Respondent brought a frivolous proceeding.   Based on the findings set forth above, the Hearing Officer concludes that Respondent's conduct constitutes a violation of Indiana Rule of Professional Conduct 3.1.

## Conclusions Related to Count IV – *Rutherford v. Zalas*

102.   As to Count IV of its Verified Complaint, the Hearing Officer finds that the Commission has carried its burden of proof and concludes that Respondent violated the Indiana Rules of Professional Conduct as charged.

103.   The Hearing Officer concludes that by filing and advancing the lawsuit against Elizabeth Rutherford, Zalas, and the Marshall County Superior Court 1, Respondent brought a frivolous proceeding.   Based on the findings set forth above, the Hearing Officer concludes that Respondent's conduct constitutes a violation of Indiana Rule of Professional Conduct 3.1.

## AGGRAVATORS AND MITIGATORS

### Facts and Conclusions in Aggravation

1.   By filing four separate frivolous lawsuits, Respondent has engaged in a pattern of misconduct. *See* ABA Standards for Imposing Lawyer Sanctions 9.22(c).

2.   Respondent remains defiant throughout this proceeding and fails to acknowledge any wrongful conduct now at issue in this proceeding. *See* ABA Standard for Imposing Lawyer Sanctions 9.22(g). In his response to the initial grievance and through this entire proceeding, Respondent has characterized the lawsuits he filed as the championing of disability rights.

(Commission's Exhibit 3.)   Specifically, Respondent repeatedly demands an apology for the Commission's investigation and proceeding against him. (Commission's Exhibit 4 at 84; Exhibit 51 at 643, 672, 674-75.)  He also repeatedly threatened to take unwarranted legal action against the Commission, its staff and/or Brenda Rodeheffer, the initial grievant.  (Commission's Exhibit 3 at 67; Exhibit 5 at 89; Exhibit 6 at 90; Exhibit 51 at 705.)  In sum, Respondent denies any wrongdoing and, instead, elects to "double down" against the Commission and the Indiana Supreme Court.

      3.     Respondent refused to participate in the Hearing.  (Commission's Exhibit 51 at 759.)  And although he refused to participate in the Hearing, he attempts to offer evidence and argument in his defense through emails that he sends repeatedly to the Commission and this Hearing Officer, as well as to many others.

      4.     Respondent engaged in activity that was inappropriately burdensome and costly to many others.  He sent dozens of lengthy e-mails to the Commission, the Indiana Supreme Court and others during the course of the disciplinary proceeding.  (Commission's Exhibit 51.)  Often Respondent's e-mails to disciplinary staff were unsolicited, unprovoked and immaterial to the matters now at issue.  (Commission's Exhibit 51 at 609-10, 622-29, 632-37, 641-50, 653-54, 659-71, 693-704, 708-11, 714-16, 720-25, 741-44, 747-52, 756-58.)  On occasion, the tone and content of Respondent's e-mails were inappropriate, threatening, and even quite alarming.  For example, Respondent e-mailed Michael Witte, Angie Ordway and Chief Justice Rush, stating: "all of you need to be torn down. . . . you have picked an enemy who will bury you." (Commission's Exhibit 51 at 730.)  Respondent created a webpage using the Commission's lawyer as the domain name at www.angieordway.com on which he posted the Commission's

responses to his requests for admission.  (Commission's Exhibit 51 at 717; Exhibit 53 at 764.)

Respondent also created a webpage at www.indianaattorneydisciplinarycommission.com to

complain about the Commission.  (Commission's Exhibit 51 at 719; Exhibit 53 at 765-67.)

Finally, Respondent created webpages with no content in the names of Brenda Rodeheffer, Lilia

Judson, and Randall Shepard.  (Commission's Exhibit 53 at 768-73.)

     5.    In considering his conduct, Respondent displays either, at worst, a disregard for

proper legal procedures or, at best, incompetence.  For example, Respondent asked a federal

court for a permanent injunction of the disciplinary proceeding.  (Commission's Exhibits 47-48.)

The motion did not set forth a sound legal basis for the request for relief.  (*Id.*)  When that federal

case was dismissed, rather than appeal, he asked the Seventh Circuit, in a completely unrelated

matter, to enjoin the District Court that had dismissed the case.  (Commission's Exhibit 49.)

Respondent's motion for permanent injunction to the Seventh Circuit did not discuss any of the

factors for injunctive relief, and instead included paragraphs of all caps demands.  (*Id.*)

Respondent also filed a form petition for an order of protection in this disciplinary proceeding,

alleging stalking by the Indiana Supreme Court.  (Commission's Exhibit 50.)  In sum, the

Respondent's conduct now at issue before this Hearing Officer is very concerning and is not

appropriate for a licensed attorney.

## **RECOMMENDATION**

     In determining the appropriate sanction to be imposed upon Respondent, it is appropriate

to consider the nature of the misconduct, the lawyer's state of mind, actual or potential injury

flowing from the misconduct, the duty of the Court to preserve the integrity of the legal

profession, the risk to the public in allowing the respondent to continue in practice and any

mitigating or aggravating factors. *Matter of Lehman*, 690 N.E.2d 696, 704 (Ind. 1997). Central to the purpose behind the lawyer discipline process is the need to protect the public and to promote public confidence in the administration of justice. *See* American Bar Association Standards for Imposing Lawyer Sanctions, Standard 1.1.

To determine the appropriate sanction for the misconduct now at issue, the Hearing Officer must consider the totality of the circumstances of the proven violations, as well as any aggravating and mitigating circumstances that exist. Respondent has repeatedly filed frivolous lawsuits, forcing the defendants to hire counsel and defend against his vexatious behavior. Respondent's frivolous claims also burdened both state and federal courts, who dedicated their resources to try and make sense of his voluminous claims and appeals. The aggravating circumstances in this case are serious and alarming. Respondent avoided the disciplinary hearing, and, instead has engaged in a concerted effort to discredit and insult the Commission, its employees, as well as the employees and justices of the Indiana Supreme Court. Respondent does not acknowledge, and in fact remains defiant, as to any wrongful conduct on his part. Moreover, Respondent has repeatedly failed to employ material rules, procedures and relevant considerations pursuing his claims in both the state and federal court systems. For these reasons, Respondent cannot safely be recommended to the public as a lawyer in Indiana at this time. The Respondent should serve a brief suspension and, thereafter, should be required to prove his fitness to practice law through a reinstatement proceeding.

22

Based on all of the foregoing, the Hearing Officer respectfully suggests that, as an appropriate sanction, Respondent serve a brief period of suspension from the practice of law without automatic reinstatement.

Dated: 12/16/16

Hon. James R. Ahler
Hearing Officer

Distribution:

Clerk, Indiana Supreme Court
Statehouse
Indianapolis, IN  46204

G. Michael Witte
Angie L. Ordway
Indiana Supreme Court Disciplinary Commission
30 South Meridian, Street, Suite 850
Indianapolis, IN  46204

Andrew U.D. Straw
1900 E. Golf Rd., Suite 950A
Schaumburg, IL  60173

Andrew U.D. Straw
241 A Brittany Dr.
Streamwood, IL  60107

23