EX 19

# IN THE SUPREME COURT
# OF THE
# STATE OF INDIANA

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | Cause No. 98S00-1601-DI-12 |
| ANDREW U. D. STRAW ) | |
| Attorney Number 23378-53 ) | |

## RESPONSE TO DISCIPLINARY ACTION

Respondent Andrew U. D. Straw, having received the hearing officer report dated December 16, 2016, respond to clear my name:

1. I have informed this Court and its Disciplinary Commission that I will file another ADA, Title II, lawsuit, if this Court attempts to punish me for doing disability rights work, especially when the complaint came from **the ADA Coordinator of the Court, an absolutely outrageous act**. She betrayed my trust as a disabled lawyer and former Court employee who brought discrimination to her to be addressed. That retaliation betrayal was not only not punished, but it flowered into a completely illegitimate attack on me, one of the main disabled lawyers in the Indiana bar. www.andrewstraw.com

2. The ABA Commission on Disability Rights quoted me in 2014:

    > When asked about the inclusion of lawyers with disabilities in the legal profession, Andrew says we have a very long way to go. Attitudinal barriers are the most difficult to overcome. He is currently evaluating the relationship between disability, admission, and discipline rules of all state supreme courts. [1]

---

[1] http://www.americanbar.org/groups/disabilityrights/initiatives_awards/spotlight/straw_a.html

1

3. The deadlines for disciplining me expired months ago.

4. Under Disciplinary Rule 14(i), the Hearing Officer was required to provide a written "Hearing Officer's Report," but this was never done until **December 16, 2016**, 7 months after the hearing.

5. The hearing, to which I fervently objected as a kangaroo proceeding to violate my disability rights after all my pre-hearing motions were denied, took place on **May 12, 2016**.

6. Disciplinary Rule 15 provides 30 days to appeal the Hearing Officer's Report, and <u>the Commission did not do so</u> because no report issued during the time provided under Rule 14(i).

7. I have complained about the abuse of me by the Indiana Supreme Court and its agencies, and I have every right to do that. Retaliation against my disability rights cases in the form of discipline under Rule 3.1 is not allowed.

8. I have First Amendment and ADA rights to oppose disability discrimination by the Indiana Supreme Court and others. The hearing officer attacked me repeatedly in his report for exercising those <u>rights to oppose violations</u> and <u>those who committed</u> the disability rights violations. The U.S. Supreme Court has made clear that even criticizing judges is protected by the First Amendment: "* * * judges are to be treated as "men of fortitude, able to thrive in a hardy climate," *Craig v. Harney, supra*, 331 U.S. at 376 * * *"[2]

---

[2] *New York Times v. Sullivan*, 376 U.S. 254 (1964)

9. A thin-skinned Court with hostile intentions is the way the Supreme Court treats me, consistently.  It can violate any rule of ethics or procedure, <u>so long as it injures me</u>.

10. This singling me out for punishment after I broke both my legs and my pelvis driving there to work is the definition of a "rule of man, not rule of law."

11. The hearing officer report is nonsensical in its arguments, does not address my answers, and is <u>6 months late</u>.  It does not address the discrimination against me, but it should have.  It in fact made the discrimination of others into something I must tolerate or be punished under Rule 3.1.

12. Therefore, I ask for **punishment of Officer Ahler** for cooperating with the discrimination by the Commission and the Court.  He knew full well that the deadline had passed months ago for him to report, but he cooperated with the attack on me anyway, 7 months later.  He filed his defamatory report *anyway*.

13. Ahler's report is defamatory because he has no authority to issue such a report, attacking me 6 months after the deadline.

14. I have a right to use the ADA and other federal and state laws to protect people with disabilities, including myself, and this Court has **NO RIGHT** to continue discriminating against me or in any way limit my ability to "eliminate discrimination," as the ADA directs.

15. Like courts in the South after the Civil Rights Act was passed, some federal courts are hostile to civil rights legislation, despite the Supreme Court

requiring such legislation to construed broadly. *Gomez v. Toledo*, 446 U.S. 635, 639, 100 S.Ct. 1920 1923, 64 L.Ed.2d 572 (1980); *Gares v. Willingboro Tp.*, 90 F.3d 720, 728 (C.A.3 (N.J.), 1996); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (C.A.9 (Cal.), 1986); *Doe v. Brookline*, 722 F.2d 910, 919 (1st Cir.1983)

16. Due to the renewed attempt to discriminate with discipline, I again demand **compensation**, **an apology**, and creation of a **Disability Rights and Fairness Commission**, and punishment of those who have abused me.

17. The hearing officer shows no remorse for <u>**his own discrimination**</u> through suborning and protecting the discrimination of others.  He must be punished or he will do it again.  The Commission staff must be punished for the same reason.  They will do it again.  The Chief Justice of Indiana must take responsibility for the discrimination of staff and agencies over which she has supervisory authority.

18. I have made complaints to the Indiana Judicial Nominations/Qualifications Commission against all 5 members of the Indiana Supreme Court for the failure to monitor its agencies and prevent disability discrimination against me.  I have made complaints to both houses of the Indiana legislature, including the judiciary committee chairs of the House and Senate.

19. Those who discriminate think that I am the problem, but the issue is *discrimination*, and I am not the one doing it.  There is a rotten cancer in the

Court and its agencies, and I will be the surgeon until this thing is cured. The Court has forced me into this role, and I will not shirk that duty.

20. Disability discrimination in the Court agencies is a last relic of the Eugenics past that still haunts the State of Indiana.

21. Eventually, my role in reforming the Indiana Supreme Court will be historical in nature, and in my optimism, I believe my efforts, my suffering, will result in a better judicial branch for the State of Indiana.  I will fight this battle like my father, a U.S. Marine, fought in Vietnam, with persistence and honor.

22. He was drafted, and I am now drafted, and I have no choice but to fight until victory, because disability discrimination is anti-American and **it must be defeated**.

23. This Court will honor my sacrifice of my broken legs and pelvis at long last.[3] Maybe after these justices are all gone, if they cannot accept responsibility. Maybe when I have gray hair in retirement.  But it will happen, and the discrimination of today will look like the vicious lynchings of yesteryear.

24. On December 18, 2016, prior to receiving notice of this hearing officer report, I filed to be a 2018 U.S. Senate candidate under the **Disability Party** banner in the State of Indiana.  Reform of discrimination by state and federal courts is a high priority for me.  I have even proposed setting up a separate U.S. court of appeals solely to consider disability issues, circumventing the

---

[3] www.andrewudstraw.com

discriminating judges on the current courts of appeals. If necessary, with no right of appeal to a discriminating U.S. Supreme Court that had to be overturned with the ADA Amendments Act of 2008.

25. My disability rights work has been attacked, denigrated, and discriminated against in the most heinous manner, and this includes *both* federal and state judges, all of whom deserve punishment under Rule 8.4(g), which guarantees (like the ADA) that disabled lawyers will not experience discrimination from Indiana lawyers. That Rule must be enforced, but it has not been enforced.

26. When the Court comes out of its haze of disability discrimination attitudes and replaces the Disciplinary Commission staff, Rule 8.4(g) should be enforced. That is a high priority after what has happened to me.

27. In sum, the entire verified complaint and all its 4 discriminatory counts should be dismissed because the hearing officer report is untimely under Disciplinary Rules 14(i) and 15. The Virginia State Bar examined this situation and reactivated my license despite this discipline pending. That is a state court adjudication in exactly the opposite direction to the hearing officer's report. Every motion of mine that sat awaiting judgment for the past 6 months without opposition should be granted. 3 out of the 4 counts related to cases I brought *pro se*, and the other was to protect the disability rights of a man who attempted suicide because of the actions of a state court removing his parental rights. No discipline may be imposed on a *pro se* lay member of the public simply for accessing and using the courts, and none may be

imposed when I use the courts *pro se* in the same fashion. This disciplinary complaint was begun, processed, and completed in ***bad faith***, to punish a former Court employee who became physically disabled driving to this Court to work, then used the federal courts to protect his and others' disability rights. If this Court unlawfully interferes with my law license, it will negatively impact my work on the Camp LeJeune cases, in which my family is seeking over $22 million in compensation for poisoning and injuring 3 generations in my family, and the wrongful death of my mother. *In re: Camp LeJeune Water Contamination*, 1:11-md-2218 (N.D. Ga.). If this Court disrupts me with illegitimate interference based on disabilities I got from Camp LeJeune poisoning (Rodeheffer's complaint was based on this), I will seek the full amount from the State of Indiana, in addition to other compensation due to me. I will also inform the other poisoned families who will be affected, **200,000 family members** of **800,000 U.S. Marines**.[4]

I, respondent Andrew U. D. Straw, verify that the above statements and averments of law and fact are true and correct to the best of my knowledge, information, and belief, after an inquiry into the matters reasonable for an attorney under the circumstances, on penalty of perjury.

Respectfully,

/s/ Andrew U. D. Straw, Esq.
IN Bar# 23378-53
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
T 312-985-7333 F 877-310-9097
andrew@andrewstraw.com
www.andrewstraw.com                                          December 19, 2016

---

[4] https://www.youtube.com/watch?v=MKojwUm0qwk

7

## CERTIFICATE OF SERVICE

This MOTION was filed with the Indiana Supreme Court Clerk by its e-filing system on December 19, 2016 and will be served via that system on all attorneys of record. In addition, I will provide courtesy copies of this MOTION to Angie.Ordway@courts.IN.gov and betty.kosta@co.jasper.in.us

Respectfully,

/s/ Andrew U. D. Straw
IN Bar# 23378-53
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
T 312-985-7333
F 877-310-9097
andrew@andrewstraw.com
www.andrewstraw.com

December 19, 2016