EX 22

# IN THE
# CIRCUIT COURT OF MONROE COUNTY, INDIANA

| | |
|---|---|
| ANDREW U. D. STRAW, ) | |
|     Plaintiff, ) | |
| v. ) | Case No: 53C01-2110-PL-002081 |
| ) | |
| STATE OF INDIANA, ) | Hon. Geoffrey J. Bradley |
|     Defendant. ) | Judge Presiding |

### AFFIDAVIT TO VALUE THE LAW LICENSES OF
### ANDREW U. D. STRAW

I, Doug Allen Bernacchi BSFS, MBA, JD, being qualified as an expert on law and business and having previously been so qualified and testified in open in the past in Indiana, regarding both, depose as follows regarding the five (5) law licenses at issue in this case:

### EXPERT BACKGROUND

1. I am an expert on business, law, and property rights.

2. For over a decade, I taught as a paid professor graduate level business law classes to MBA candidates and to MS in criminal justice candidates, and as well at the university undergraduate level.

3. I earned a bachelor's degree (BSFS) in Foreign Service and International Economics from the Georgetown University Walsh School of Foreign Service.

4. I further earned My Master's Business Administration (M.B.A.) degree in Banking, Corporate, Finance, and Securities Law from University of Notre Dame.

5. Finally, I earned my law degree (J.D.) from Loyola University in Chicago. I was a student editor of the ABA Business Law Journal.

6. I worked fulltime as a market maker in the Eurodollars futures market as a Member of International Monetary Market division of the Chicago Mercantile Exchange and served on the Member-to-Member Arbitration Committee adjudicating large transaction final disputes.

1

7. I worked a private practice lawyer and law firm owner for 27 years, and I am competent to evaluate the loss in value of law licenses that have been suspended for long periods of time.

## BACKGROUND FACTS

8. Andrew U. D. Straw had his five (5) law licenses taken or lost to suspension, beginning with his Indiana law license, which has been suspended for nearly five (5) years despite Mr. Straw's requesting relief during that entire time.

9. All of Mr. Straw's four (4) U.S. District Court licenses have been suspended without any hearings or due process afforded to him despite statutes and other authorities that assure the opportunity to be heard. *Straw v. U.S. District Court*, 17-2523 (7th Cir. 2017).

10. The additional suspensions were in the following U.S. District Courts: 1) Northern District of Indiana, 2) Southern District of Indiana, 3) Northern District of Illinois, and 4) Western District of Wisconsin.

11. Besides his family members, Mr. Straw has only had a handful of clients based on PACER in these U.S. District Courts. His career was abruptly halted by three (3) federal judges inconsistently and actually terming his legitimate claims as "frivolous" at some point in those cases, but without any further Rule 11 punishments of him for filing frivolous action(s).

12. It is worth noting that while those judges, and specifically in the Northern District of Indiana and the Northern District of Illinois, had the option to punish Straw under Rule 11, they chose **only to criticize him**, which at a maximum can only be considered a **public reprimand**, or quite simply, just a denial of the relief he sought.

13. The Indiana Supreme Court has effectively exploded those reprimands into massive amounts of suspension, which is an acceleration and increase of damage far beyond a mere reprimand or loss.

14. Further, no portion of the suspension was based on any accusation of frivolous by any Indiana state court.

15. The Indiana Supreme Court, moreover, initiated this disciplinary case as a direct response to Mr. Straw's rightful ADA complaints about that state's Supreme Court, his former employer.

16. Based on the record, Mr. Straw relied on the language in <u>Tennessee v. Lane</u>, 541 U.S. 509, 511, 531 (2004), stating that state courts are subject to Title II of the ADA; yet his complaint was attacked in response by the ADA coordinator of the Court.  For this reason among others including but not limited to Indiana's Attorney Disciplinary process, the Virginia State Bar refused to cooperate and stated in a 3-judge panel ruling that Mr. Straw's disability work in those Midwest federal courts was not any kind of ethical violation and would not have been punished in Virginia.  <u>The VSB said that Straw proved his innocence of ethical violations by "clear and convincing evidence."</u>

17. https://www.vsb.org/docs/Straw-062217.pdf  is the source for that averment.

18. As Mr. Straw has said, the <u>ABA</u> case ended based on a lack of standing, not because of any accusation of frivolous, so not even a private reprimand happened in that case, but then this case was used by the Indiana Supreme Court to increase Mr. Straw's suspension.

19.  Rule 23 of the Indiana Attorney Disciplinary process states that its hearing officers are not required to follow the Trial Court Rules, or the Rules of Criminal Procedure and therefore, the process lacks due process on its face and is void or voidable.  Being more punitive than

civil, these unconstitutional Indiana processes should require that the 14th Amendment should apply and the Equal Protection Clause should afford accused lawyers, like Mr. Straw, the same rights afforded to criminal defendants. Mr. Straw was never accused of any crime, and so affording less rights to a person accused of ethical rule violation(s) should be greater, or equal to the right to the application of the Rules of Criminal Procedure, not less rights.

20. Further, Mr. Straw allowed his insurance carrier to settle the Rutherford and Sconiers matters with contracts and payments. The dismissal orders based on those contracts did not include any reference to the term "frivolous."

21. Also, state governments are not allowed to interfere with contracts, and thus any suspension based on a case that ended with a contract and no accusation of frivolous in the final ORDER must be seen as a constitutional violation and interference with those contracts.

22. U.S. Const. Art. I, Sec. 10, Clause 1:

> **No State shall** * * * **pass any** * * * **Law impairing the Obligation of Contracts**
> *                              *                              *

23. https://constitution.congress.gov/browse/essay/artI_S10_C1_5/

24. The Indiana Bill of Rights has a similar provision protecting the obligation of contracts:

> Ind. Const. Art. 1, Sec. 24. **No** ex post facto law, or **law impairing the obligation of contracts, shall ever be passed**.
>
> https://law.justia.com/constitution/indiana/art1.html

25. The last case, Kloecker, was dismissed *sua sponte* by a trial judge in Chicago who has had a history of abusing civil rights plaintiffs with a "tone of derision," according to the 7th Circuit, including towards women who brought sexual harassment claims before him not

4

so different from Mr. Straw's work in South Bend at the Housing Authority. https://www.youtube.com/watch?v=HJZyHJYCRMg

26. Mr. Straw complained about the sexual harassment crimes of the former Indiana Attorney General, Curtis T. Hill, and was vindicated when Hill was suspended, though only for a short time due to mitigating factors being considered when they were not in Mr. Straw's case. It is a testament to Mr. Straw's ethical nous that he was the one who saw fit to seek a righteous and rightful Request for Investigation of the top attorney in the state of Indiana when no one else was brave enough or wise enough to make that complaint. *In re Hill*, 144 N.E.3d 184 (Ind. 2020). Incidentally, Hill defended the Court against Straw's federal ADA case in 2017, which is a non-probative fact offered for full disclosure transparency.

27. Mr. Straw during his employment with the Court was credited with inventing the Indiana Supreme Court protective order database for a White House and Harvard University e-gov contest in 2001 and was allowed by Justice Frank Sullivan to present this idea in Washington, D.C. In other words, Mr. Straw is and was on the other side of this issue from that judge, now deceased.

28. https://www.abajournal.com/news/article/posner_opinion_tosses_judge_from_case_partly_for_his_tone_of_derision

29. One cannot deny that there was a similar tone of derision in Hon. Shadur's *sua sponte* decision against Mr. Straw, with flourishes of poetry from the 16th Century to belittle Mr. Straw's concern for his own health privacy.

30. Further, that nonagenarian judge, Hon. Shadur, was accused by the 7th Circuit of engaging in a "cascade of errors."

5

https://www.abajournal.com/news/article/7th_cir._skewers_judge_shadur_over_ex-lawyers_sentence_remands_to_another_j

31. One Kloecker defendant was the enormous law firm of Locke Lord LLP, which just a few years later in 2017 was found likely engaged in "a hornet's nest of ethical violations." https://caselaw.findlaw.com/us-7th-circuit/1773683.html

32. One may say the same about Kloecker's behavior (Kloecker was a lawyer with Locke Lord LLP) in Straw's case with extortionate threats of **$1,000 per day** Medicare fines (Medicare absolutely rejected this possibility) unless Mr. Straw coughed up access to **his Medicare claims account** for a newspaper to rummage through after Straw accused that newspaper of defamation against him.

33. While not treating Mr. Straw so nicely, the 7th Circuit in Domanus stated the absolute importance of allowing plaintiffs to petition government: "Whether the branch of government is the legislature, the executive, or **the courts**, the right to present one's viewpoint is protected by the First Amendment."

34. However, Straw was objectively punished *precisely* for presenting his disability rights viewpoints and it was as though he had no First Amendment rights at all. So thoroughly were his rights to petition the courts rejected, he has wrongly lost his legal career.

## THE LAW LICENSES

35. A law license as a practical matter only has income value for an attorney when it is active because a lawyer can only do business with that court and represent paying clients there with an active license in good standing.

36. This is why the 7th Circuit prior to Mr. Straw has found that a law license suspension requires **a serious crime**, not turning bloviated reprimands into suspension for **no crime**,

**no dishonest act**, and with **no disciplinary history**, as here.  In re Ming, 469 F.2d 1352, 1355-1356 (7th Cir. 1972).

37. In re Ming held that losing a law license to suspension is a severe economic blow for an attorney and his career.  This In re Ming case informs the value of Mr. Straw's licenses.

38. While Mr. Straw has had a law license at the U.S. Court of Appeals for the Fourth Circuit continuously and without any pause or discipline since 1999, Straw's 5 law licenses here, all in the 7th Circuit area, have been suspended since **February 14, 2017**.  In re Straw, 68 N.E.3d 1070 (Ind. 2/14/2017).

39. A law license quickly loses value the longer a suspension lasts because a long suspension tells clients this attorney is unreliable.  Note the 3-year suspension of Mr. Arthur J. Usher IV for his sexual harassment crimes of a woman at his Big Law firm in Indianapolis.  In re Usher, 987 N.E.2d 1080 (Ind. 2013).

40. The Indiana Supreme Court went a step farther, calling Straw's work "incompetent" and using Rule 3.1 for the first time in U.S. history to impose a suspension like this, lasting many years.  That incompetence designation was the death knell of Straw's legal career and other courts have repeated this accusation without even knowing the history of this relationship between the Indiana Supreme Court and its former statistical analyst who provided services to the Chief Justice of Indiana and 400 lower courts.

41. Based on my experience, and the fact that for many years, Indiana has only a subjective bar examination, there are so many truly incompetent lawyers allowed to practice law in Indiana and the rules are not equally enforced, nor are Indiana's ethical rules competently administered in this affiant's expert opinion.

42. It is clear from the ADA coordinator's complaint that Straw's mental disability is **the reason** for much if not all of the entire "attack" on him.

43. The Indiana Supreme Court has a ban on lawyers with disabilities, comparing them with alcoholics and drug abusers. Ind. R. Adm. & Disc., R. 23, Secs. 2(c) & 3(b).

44. It is critically important, therefore, to see Straw's law license removal as being a form of **property humiliation** and it is valid to consider how such humiliation was treated in other ADA cases, though this is not an ADA case. At the same time, the drop in value is correlated with the compensatory damage for each license.

45. The U.S. Supreme Court has found that $1 million is a valid amount of compensation for police spilling urine all over a paralyzed disabled man in the back of a police paddy wagon during one fateful trip to the police station.

46. Barnes v. Gorman, 536 U.S. 181, 183 (2002).

47. It is a fair comparison to say that the law license property was taken in the course of disability discrimination here and closure of the Courts in violation of the U.S. and Indiana constitutions. The value of the lost licenses should be commensurate with the **humiliation and injury**, which after 20 years of abuse to Mr. Straw, does reach the level of splashing urine all over him.

48. $1 million is a reasonable amount for each license taken from him under such conditions. His license in Indiana was obtained while working for the Chief Justice and serving over 400 courts while in agony from the broken bones caused by a reckless driver as Mr. Straw drove to the Indiana Supreme Court to work. His state law license is thus unique and to disrespect that license is to disrespect Mr. Straw's physical sacrifices to every court in the state of Indiana.

49. It is not acceptable to pay Mr. Straw anything less than the $1 million he demands for each of the 5 law licenses that the Indiana Supreme Court caused Mr. Straw to lose.

50. The Indiana Supreme Court could have approached Straw's ADA complaints in quite a different way in 2014. No disabled person expects an ADA coordinator to retaliate explicitly against ADA complaints. The Indiana Supreme Court could have found her complaint to be outrageous, as it was and continues to be. With the Virginia State Bar saying there was no ethical violation by Mr. Straw, the Indiana Supreme Court could have put aside its pride and found the same thing, tossing the ADA coordinator complaint and addressing Mr. Straw's ADA complaints with integrity rather than retaliation.

51. Mr. Straw paid all of the costs in March 2021 in this disciplinary matter in an act of good faith toward the Court where he used to work for the Chief Justice and the State Court Administrator and served every court in the state.

52. Straw has property rights in these 5 law licenses and these licenses must be compensated now by the State of Indiana. Supreme Court of N.H. v. Piper, 470 U.S. 274, 277 (1985) ("the opportunity to practice law is a 'fundamental' right").

53. When the Indiana Constitution, Art. 1, Section 21, provides for compensation for property taken by the state, Mr. Straw simply is demanding his right to compensation and it should be granted promptly after this long suspension that will not end even with Straw's compensation here.

54. He has not committed any crime or dishonest act and the Virginia State Bar appears to think Mr. Straw violated no ethical rule. The Indiana Supreme Court took his law license for almost 5 years simply by saying he is incompetent when there is no evidence of that from the record. This means the true reason for taking his licenses was to punish him for

his disability work (and complaint about the Supreme Court in 2014) and for having a mental disability that is disfavored under the disabled lawyer ban.

55. The U.S. Supreme Court has said that state courts discriminate based on disability. Tennessee v. Lane, 541 U.S. 509, 531 (2004) ("The unequal treatment of disabled persons in the administration of judicial services has a long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination"). However, there is no reliable way for Mr. Straw to demand justice for what happened to him. Federal courts act aloof and refuse to exercise their power in his favor. This is consistent with the massive and unrepentant misrepresentations of the ADA by hundreds of federal judges and the U.S. Supreme Court itself. ADA Amendments Act of 2008. https://www.ada.gov/pubs/adastatute08.htm#12101note

56. We find this type of discrimination here with no means besides property compensation to restore Mr. Straw in any meaningful way when the federal courts appear unwilling to protect him. Straw v. Indiana Supreme Court, et. al., 17-1338 (7th Cir. 2017) (the 7th Circuit hired Mr. Straw's Indiana hearing officer as a federal judge when Straw's appeal against **him was still open at the 7th Circuit. Mr. Straw has even been punished for objecting to a** U.S. Court of Appeals for **hiring his appellee**. (**Dkts. 79 & 80**).

57. Mr. Straw has lost five (5) law licenses to a very bizarre circumstance with his former employer retaliating against his ADA complaints. Mr. Straw's law license in Indiana is unique in value to him and to other disabled people in Indiana and three (3) Midwest states he will not be able to protect *anymore*.

58. **Five Million Dollars** (**$5,000,000.00**) is in my expert opinion and judgment, the conservative value of Mr. Straw's property takings being the long-term, loss of his earned

five (5) law/bar licenses being thus suspended, all caused by the Indiana Supreme Court disciplinary **property taking** without any fault by Mr. Straw beyond having a disfavored disability that causes courts to call him falsely "incompetent," or <mark>to term his legitimate efforts for justice as "frivolous."</mark>

Further, *affiant* sayeth not.

I, Doug Allen Bernacchi, verify that the above statements and conclusions and exhibits are made in good faith, are true and correct under penalty of perjury, and I arrived at them after inquiries reasonable under the circumstances.

**December 28, 2021, (December 29, 2021 Manila Time) electronically endorsed and emailed as a PDF to Mr. Straw, I am**

                          **Sincerely,**

                          **/s/ Doug Allen Bernacchi**
                          **Doug Allen Bernacchi, BSFS, MBA, JD**
                          **760 Walker Square, Unit 4B**
                          **Charlottesville, VA. 22903**
                          **(574) 210-4688**
                          **dbernacchi@gmail.com**

## CERTIFICATE OF SERVICE

I hereby certify that on this **28th day of December, 2021**, (**29th Day of December, 2021, Manila Time**) the foregoing **AFFIDAVIT** was served upon the Clerk of Court via E-File to accompany Straw's **MOTION FOR SUMMARY JUDGMENT** and all counsel of record shall be served via that system since defendant was fully served by the Clerk of Court on or about December 6, 2021.

Respectfully submitted,

*[signature]*

s/ Andrew U. D. Straw
700 12th ST NW, STE 700, PMB 92403
Washington, DC 20005
(847) 807-5237
andrew@andrewstraw.com