Filed: 1/4/2023 3:41 PM
Monroe Circuit Court 1
Monroe County, Indiana

EX 51

**IN THE**

# Monroe County, Indiana,
# Circuit Court

|  |  |  |
|---|---|---|
| ANDREW U. D. STRAW, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | Case No: 53C01-2110-PL-002081 |
| v. | ) | |
| | ) | |
| | ) | |
| STATE OF INDIANA, | ) | Hon. Geoffrey J. Bradley |
| *Defendant.* | ) | Judge Presiding |

### AMENDED COMPLAINT

I, Andrew U. D. Straw, *plaintiff* in this action, allege that the Indiana Supreme Court singled me out and took my state law license property without good cause and without paying compensation, also resulting in the takings of 4 U.S. District Court licenses, and I now seek full compensation for all 5 law license takings under the Indiana Bill of Rights, Section 21, and so COMPLAIN of depriving me of my 5 law licenses as a matter of **conscription of labor**, taking of **intangible property for a public use**, or pure and simple **destruction of an intangible property**:

NB: The Clerk noted a technical error in filing an earlier version of this document dated 12/30/2022, so this is a corrected refiling that will hopefully address whatever issues                               existed                               previously.

## EVIDENCE: MEDICAL (9 EXHIBITS)

1. I incorporate by reference **Exhibits 25** to **33**.

2. **Exhibit 25** is a doctor report suggesting I have "schizophrenia" and "autistic thinking." This report was done by **Dr. Bory** of Fredericksburg, Virginia, was part of my bar admission application in 2001 to the Indiana State Board of Law Examiners.

1

3. **Exhibit 26** is a Herald Times newspaper report on **February 23, 2001**, covering my car accident on the way to the Indiana Supreme Court to work.

4. **Exhibit 27** is my surgeon's **February 26, 2001**, Attending Physician's Statement to the State of Indiana. **Dr. Kaehr**

5. **Exhibit 28** contains true and correct X-ray (diagnostic) images showing my broken legs and pelvis as well as a true and correct copy of my Illinois-issued handicap placard, punched "permanent."

6. **Exhibit 29** is a letter dated **August 20, 2014**, from my former doctor, **Dr. Estrada**, which shows my bipolar disorder diagnosis. Note that this letter, showing my absence of active symptoms, was issued 2 weeks before the Indiana Supreme Court ADA coordinator attacked my mental illness.

7. **Exhibit 30** is a letter dated **December 30, 2015**, from my former doctor, **Dr. Shoush**, which shows my bipolar disorder and anxiety.

8. **Exhibit 31** is a **July 12, 2016**, fax from my **Nurse Practitioner, Ann Crenshaw**, of IU Health Goshen, allowing me to have a service animal because I have diagnoses of bipolar, depression, anxiety, and migraine headaches causing blindness.

9. **Exhibit 32** is my Social Security benefit letter demonstrating I get SSDI for my disabilities as of **December 29, 2022.**

10. **Exhibit 33** is my **December 29, 2022,** Social Security Earnings Statement showing I have not had any income reportable to SSA from 2015-2020. The same will be true of 2021 and 2022.

11. **FINDINGS REQUESTED:** From these documents, the Court should find that I am **physically and mentally disabled** for all purposes of law and civil rights protections.

<p style="text-align:center">**EVIDENCE: BAR MEMBERSHIPS & STATUSES (8 EXHIBITS)**</p>

12. I incorporate by reference **Exhibits 34** to **41**.

13. I am currently a member of the bar of the Fourth Circuit U.S. Court of Appeals, Active in Good Standing from **June 7, 1999** to **January 1, 2023**. See page 130 of the Roll of Attorneys for that Court:

14. https://www.ca4.uscourts.gov/AttorneyBarAndECFStatus/rptN0046ActiveAttorneyss.pdf

15. The Fourth Circuit allowed me a special status, **free PACER**, so that I could do research on disability rights issues and write amicus briefs on behalf of the political party I started in 2013, Disability Party. **Exhibit 41**.

16. When I took the MPRE, covering attorney ethics, I received a scaled score of **101**, which is well above the Indiana requirement of **80**. **Exhibit 34**.

17. While in Law School, I was the dean's research assistant and he wrote a letter of recommendation when I first applied to take the Indiana bar exam. **Exhibit 35**.

18. My 2001 bar exam application form for my 2002 Indiana bar exam is provided at **Exhibit 36**

19. The doctor who diagnosed me as having schizophrenia and with "autistic" thinking provided a report to the Indiana Supreme Court. **Exhibit 37**.

20. I was forced, as a result of the answers in the application and Dr. Bory's report, to endure a hearing including many people with whom I worked at the Supreme Court. After this hearing, I had to agree to a consent agreement in order to be granted a law license. **Exhibit 38** is this **5/31/2002** agreement.

21. In 2006, the Indiana State Board of Law Examiners sent me a show cause letter stating that if I did not explain why I had failed to provide quarterly reports from my psychiatrist, my license would be revoked. I immediately responded and said that the consent agreement was an illegal violation of the ADA, Title II, and that in 2004 the U.S. Supreme Court made clear that the ADA, Title II, applies to the actions of state courts. Tennessee v. Lane, 541 U.S. 509, 511, 525, 531 (2004). The consent agreement was dropped.

22. In January 2014, I was honored as an ABA Commission on Disability Rights Spotlight disabled attorney who is an *asset to the profession of law*. I include a PDF of this page as **Exhibit 39**.

23. A large group of individuals wrote a combined letter to help a bipolar lawyer get admitted to the bar in 2014 in Connecticut. I include this as **Exhibit 40**.

24. I was forced to answer questions on the Indiana bar exam application form that were later thrown out as violating the ADA, Title II. Perdue v. Individual Members of Indiana State BLE, 266 F.R.D. 215 (S.D. Ind. 2011) (**Dkt. 193**)

25. I was admitted, conditionally, to the Indiana bar and was not sanctioned by the Indiana Supreme Court from **2002 to 2017**.

26. When I passed the Indiana bar in 2002, the U.S. District Courts for the Northern and Southern Districts of Indiana granted me law licenses at the same time.

27. After moving back to the United States in 2010, I moved to Illinois and lived there from 2013 to July 2016, with some stints in Indiana with relatives, during that time. I moved into Elgin Public Housing in **July of 2016**. I moved to the City of Bauan, the Philippines, on Luzon Island on **June 14, 2018**, and have not returned to the United States since that time.

28. In about 2013, I was admitted to the bar of the U.S. District Court for the Northern District of Illinois. In about 2015/2016, I was granted admission to the bar of the U.S. District Court for the Western District of Wisconsin.

29. All of my 4 U.S. District Court licenses were active in good standing until Indiana decided to suspend me on **February 14, 2017**.

30. These 4 federal law licenses were automatically suspended because of the Indiana Supreme Court suspension and I was not granted any hearing to challenge these. <u>Straw v. U.S. District Court</u>, 17-2523 (7th Cir. 2017).

31. Two of these district courts, ILND & WIWD, allowed me to resign the licenses rather than accept the humiliation of having suspended licenses based on my actions in which no federal judge said any suspension was necessary. This, I call *ex nihilo* suspension. The two Indiana district courts would not allow me to resign and the 7th Circuit affirmed. *Straw v. U.S. District Court*, 18-2192 (7th Cir. 2018). So, in the Midwest, I have two resigned federal licenses, 2

reciprocally suspended federal licenses, and one state court law license from Indiana that has remained suspended for almost 6 years.

32. The U.S. Court of Appeals for the Fourth Circuit never saw fit to seek any sanction, even after I told that Court what happened in the Midwest. So, the highest level court where I have ever been admitted has left me active in good standing from **1999-2022**. 23 years.

33. Please note that I was served the documents (**Exhibits 6, 10, 14, 15, 17, & 18**) used in my Indiana sanctions case across state lines into Illinois when this is not allowed. <u>Pennoyer v. Neff</u>, <u>95 U.S. 714</u>, 727 (1878):

> Process from the tribunals of one State **cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them.** Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish                his                personal                liability.

34. **REQUESTED FINDINGS:** From these BAR exhibits (**Exhibits 34-41**), the Court should find that I experienced and/or opposed ADA Title II discrimination on **the bar application**, in **bar admissions**, and in the **consent agreement** that violated my privacy and my doctor-patient relationship. In short, please find I experienced discrimination as a lawyer. Also, please find that serving me in Illinois violated <u>Pennoyer v. Neff</u> and thus, due process.

## EVIDENCE: WORK EXPERIENCE (9 EXHIBITS)

35. In order to help the Court understand what was taken from me with the Indiana suspension, I incorporate by reference **Exhibits 42** to **50**.

36. **Exhibit 42** shows the high level work I was doing for famous transportation planner Alan M. Voorhees, 1998 – 2000. It is a fax written on July 27, 2011, sent to describe my work for Mr. Voorhees and the author is his former CFO, **Mary Gonet**.

37. **Exhibit 43** is a certificate of court management leadership I obtained from the Mid-Atlantic Association of Court Managers, dated **October 3-6, 1999**.

38. My CV shows a variety of things I did for Mr. Voorhees. www.andrewstraw.com

39. **Exhibit 44** is my **August 30, 2000**, hiring letter from the Indiana Supreme Court, with a salary $1,000 above the top of the band in the hiring advertisement. My duties are listed on pages 2-3. IU Law School Dean Lauren Robel recommended me for this role, as did Mr. Voorhees and former Dean Aman.

40. **Exhibit 45** is the July 2001 National Finalist badge I earned in an e-gov contest held by Harvard University's Kennedy School of Government, the White House, and the Council for Excellence in Government (which Mr. Voorhees founded). My idea was for a local/state/federal database of protective orders to help police protect domestic violence victims.

41. **Exhibit 46** is the letter firing me from that Statistical Analyst role. This was done less than 5 weeks after I passed the bar exam while working for the Chief Justice with both my legs broken and my pelvis and skull fractured, and while suffering the depression phase of my bipolar illness after the severe physical injuries. This while I provided services to every court in the State of Indiana. I

think it is important to note all of those facts about me and take the firing letter with a grain of salt. The "policy" I supposedly violated was "using the Internet too much" while my supervisor had asked me to redesign the Supreme Court website to be the best organized in the nation. I was constantly using the Internet, just as Dean Aman said that I do. **Exhibit 35**. The justices took advantage of my skills while blaming me for using the resources necessary to achieve what they wanted. The rest of the firing letter consists of vague pretexts without any factual foundation.

42. **Exhibit 47** shows that just a few years later, the Indiana Supreme Court obtained a federal grant to build the protective order database that was the subject of my National Finalist entry in the e-gov competition. This shows that not only was I an outstanding and forward-thinking employee; to say I was a bad employee was a bad faith, ***fraudulent*** statement about me.

43. **Exhibit 48** is a November 14, 2010, news story from South Bend that shows that I continued to be concerned about the statistical system used by the Court and the poor maintenance of data. I had personal knowledge of this.

44. **Exhibit 49** is a November 11, 2013, email from IU Provost Lauren Robel that demonstrated her faith in my abilities even ***after*** I was fired by the Indiana Supreme Court. She hired me as an assistant dean at the Law School in 2003, in charge of the international programs. That's a role one gives to someone ***trusted by the dean***. She was my principal recommendation from the IU-Maurer School of Law in 2000 to work for the Indiana Supreme Court.

45. Note for full disclosure that I made the complaint that took out AG Curtis Hill over his **sexual harassment of 4 women**. <u>In re Hill</u>, <u>144 N.E.3d 200</u> (Ind. 2020): <u>https://www.indystar.com/story/news/politics/2019/03/26/indiana-attorney-general-curtis-hill-complainant-has-ax-to-grind/3266485002/</u>

46. Professor Robel made a complaint about the sitting Attorney General, Todd Rokita, over his opposition to **women's personal autonomy and abortion rights**: <u>https://www.theindianalawyer.com/articles/former-iu-maurer-dean-robel-calls-for-disciplinary-investigation-against-ag-rokita-for-comments-about-abortion</u>

47. **Exhibit 50** is the **March 14, 2017**, letter from the ABA terminating my membership even after I was featured at the national level and that profile is still posted on the ABA Commission on Disability Rights website:

48. <u>https://www.americanbar.org/groups/diversity/disabilityrights/initiatives_awards/spotlight/straw_a/</u>

49. The only reason for this ABA Membership (#02158874) termination was the Indiana Supreme Court suspension.

50. Even *in Virginia*, where I was totally, 100% exonerated, insurance companies refused to do business with me because of the Indiana suspension. <u>Straw v. Aon Plc</u>, 2:19-cv-00598 (D.UT. 2019) (settled out of court).

51. The Chief Judge of the 11th Circuit denied me a law license to protect the rights of my family members in the Camp LeJeune toxic water case, MDL-2218. <u>Straw v. United States</u>, <u>16-17573</u>-GG (11th Cir. 2019).

52. Further, others have spread news of the suspension even when I told them the truth about it. Nobody would listen to me or the VSB ORDER that exonerated me 100%. I was denied relief at the 2nd Circuit and the 9th Circuit.

53. **REQUESTED FINDINGS:** The Court should find from these exhibits that I had a promising career as a disability rights lawyer ahead of me and had already established much corporate law and other court reform experiences when the 2017 suspension happened. I had worked for a billionaire in Mr. Voorhees and worked both for the Indiana Supreme Court and as an assistant dean at the IU-Maurer School of Law. My honor was impugned when the ABA terminated my membership and even the ABA's settlement did not fully address this or restore my membership. *Straw v. ABA*, 18-1795 (7th Cir. 2018) (settled). A whole host of negative things happened because Indiana suspended me **without any crime or dishonest act alleged**.

### EVIDENCE: GENERAL/SUSPENSION (24 EXHIBITS)

54. In order to help the Court understand the suspension, I provide 24 exhibits that fully explain what happened. I incorporate **Exhibits 1-24** by reference.

55. **Exhibit 1** is my explanation of court traditions of disability discrimination.

56. **Exhibit 2** is my explanatory document that shows the total lack of any mitigating fact being considered in my suspension case.

57. **Exhibit 3** is my document explaining how I am a crime victim at the state and federal level.

58. **Exhibit 4** is the affirmance OPINION of the Court of Appeals in 22A-PL-766 so this Court can see the contours of the property right as explained by the higher court. I will return to this OPINION below because it did not adopt the precise grounds in the dismissal ORDER dated 4/4/2022, but gave its own reasons for denying, and I should have a right to respond to those arguments with this amended complaint.

59. **Exhibit 5** is the petition for disability rights redress I presented to the Clerk of the Indiana Supreme Court on ==August 15, 2014==. It is important to note that this is just **9 days** after Loretta Rush was appointed Chief Justice of Indiana. I made this as a disabled attorney and former employee of the Supreme Court.

60. **Exhibit 6** is the ==January 5, 2015==, letter from the IADC demanding that I respond to the disciplinary complaint filed against me by the Court ADA coordinator after she received my petition. The second page of this exhibit shows the original disciplinary complaint dated ==September 3, 2014==, and how it attacked my disability, called me incompetent, trashed my petition (**Exhibit 5**), and a variety of other things, including ==4 federal lawsuits== for disability rights I had open or on appeal at that time.

61. **Exhibit 7** is the **September 19, 2014**, email the ADA coordinator wrote to me refusing to help and ridiculing the contents of my petition.

62. **Exhibit 8** is a state court exhibit with 2 emails the ADA coordinator sent to the opposing party (dated **9/3/2014 & 10/16/2014**) in one of the 4 matters she attacked, letting that attorney know that she had a disciplinary complaint

pending attacking my side of his matter, which he then revealed to the trial court as part of his litigation strategy. Thus, she revealed her interference well outside of her own office at the Indiana Supreme Court and invited others to attack me *outside of the disciplinary process*.

63. **Exhibit 9** is Andrew Straw's ==**January 7, 2015**==, response letter to the ==**January 5, 2015**==, IADC demand for response.

64. **Exhibit 10** is the ==**January 11, 2016**==, verified complaint filed by the former IADC executive director, G. Michael Witte. This date is very important because it is more than 12 months after the demand letter dated ==**January 5, 2015**==, and my ==**January 7, 2015**==, response. His letter asked me to respond to the disciplinary complaint. Indiana Adm. & Disc. [Rule 23](), **Sec. 10(h)** explicitly states that in the absence of a timely verified complaint, a disciplinary complaint is deemed dismissed as of 12 months past the letter demanding response. Here, the disciplinary complaint was filed on **9/3/2014** and the letter demanding response was dated **1/5/2015**. Given the verified complaint was filed more than 12 months after these dates and given there was *no request for more time*, the suspension officially, by rule, was ==**deemed dismissed on 1/5/2016**==. This time limit serves as a statute of limitations by court rule.

65. **Exhibit 11** is the **January 22, 2016**, appointment ORDER for hearing officer James R. Ahler, who at that time was a declared candidate for an Indiana Supreme Court vacancy:

https://www.insideindianabusiness.com/articles/commission-names-finalists-
for-supreme-court-vacancy

66. **Exhibit 12** is the **February 5, 2016**, set of Andrew Straw's responses and
answers to the verified complaint.

67. **Exhibit 13** is the **February 17, 2016**, affidavit of Andrew Straw explaining his
disabilities and discrimination he has confronted in his life and work.

68. **Exhibit 14** is the **May 5, 2016**, interrogatory responses of the IADC Bar
Counsel.

69. **Exhibit 15** is the **March 21, 2016**, set of admissions and denials of the IADC
Bar Counsel. Please note the admissions at numbered responses **3, 23, 38, 41**
(admission there were no federal sanctions in the 4 cases), **42, 43, 49**
(disciplinary complaint admitted to be 16 months before verified complaint),
**52** (race and gender treated differently), **58** (admitting IADC Bar Counsel
asked Andrew Straw to put his license into disability status to avoid any
sanctions), and **61**.

70. Note that the IADC claimed no knowledge of the Eugenics Law of 1907 and
how it forced sterilization on disabled people in the State of Indiana,
representing the most heinous of discrimination. **Response #11**. The denials
are just as if not more interesting and fantastical than the admissions, often
proving the proofs needed to admit, but denial happened anyway. This
document is definitely worth reading, just like the interrogatories.

71. **Exhibit 16** is the **May 7, 2015**, deposition of Brenda Sconiers, wherein she admitted under oath that I did not have any agreement with her to file a lawsuit for her as her attorney. This showed that her lawsuit demonstrated no damages. The Indiana Supreme Court used that case against me, so her deposition is fair game. **Page 136** is where my attorney declared that there was no promise to file any lawsuit in my agreement with this client. Her attorney stipulated to this. **Page 137** includes my former client admitting this. But the Indiana Supreme Court said that I had a duty, nowhere admitted by me or present in my representation agreement, to file a lawsuit.

72. Let's get this straight. I don't file lawsuits for a client without prior written authorization to do so, and this client never gave me such written directions. That is why this does not appear in the agreement she made with me. She wanted a settlement and if that failed, I said I would *help her* find another attorney who does trial work. It's not that complicated, but I was raked over the coals for not doing trial work. And when I started doing trial work, I was attacked. Damned if you do, damned if you don't. My client attacked me for asking to do business with her via email rather than over the phone. I like my communications with clients to be written unless there is some compelling reason not to. **I don't like he said, she said.** The 4 corners of my agreement with Ms. Sconiers included no promise to file any federal lawsuit for her. She agreed to the terms. If I had filed a federal lawsuit without an explicit agreement to do so, that itself would have been unethical, but that is what Indiana wanted

me to do. It's outrageous. No attorney **reads the client's mind** and files a lawsuit that was not agreed in writing.

73. **Exhibit 17** is the **June 13, 2016**, set of proposed findings filed by the IADC Bar Counsel. It includes **not one word of mitigating fact**, just like the verified complaint. It does not mention the timetable or that the verified complaint was untimely. IADC Recommendation: **60 days of suspension without automatic reinstatement**.

74. **NB** that this recommendation is **only for alleged Rule 3.1 violations**. It is not based on committing any crime or any accusation of dishonest behavior. By contrast, the Attorney General, Curtis Hill, was found to have committed crimes of moral turpitude, grabbing 4 women sexually at a public party. He was given the benefit of mitigating factors and only 30 days of suspension was imposed on him, **with automatic reinstatement**. In re Hill, 144 N.E.3d 200 (Ind. 2020). Again, I made that complaint against Hill, successfully, showing my understanding of lawyer ethics was superior to that of the sitting Attorney General of Indiana.

75. **Exhibit 18** is the **December 16, 2016**, hearing officer report of James R. Ahler. It **failed to mention even one mitigating fact** though it recognizes that both mitigating and aggravating facts need to be considered. Ahler concluded that only a **"brief suspension"** was merited.

76. **Exhibit 19** is the **December 19, 2016**, response of Andrew Straw to the hearing officer report. It describes many **due process violations** and provides many reasons to dismiss, just like Virginia State Bar and the Bernacchi affidavit did.

77. **Exhibit 20** is the 180-day suspension order. It **does not mention any mitigating fact** or the fact that the IADC and the hearing officer, respectively, only asked for 60 days of suspension and a "brief suspension." There is no citation to any authority for using Rule 3.1 as a means to circumvent the fact that none of the 4 federal judges imposed any sanction on me **with the required separate order** under FRCP Rule 11. It is because of the **total lack of sanctions, exploded to nearly 6 years of suspension**, that the federal courts (INND, INSD, ILND, & WIWD) where I was licensed in the 7th Circuit area imposed suspensions reciprocally where no federal court had done so. This was a Frankenstein's Monster of discipline, cobbled together by the mad scientists at the Indiana Supreme Court. This represents state/federal collusion. **Exhibit 3**.

78. The problem with this is that the VSB was first to make a binding and final ORDER on whether my actions violated Rule 3.1.

79. **Exhibit 21** is the **June 20, 2017**, final and binding ORDER of DISMISSAL of the Virginia State Bar. That ORDER found that I had not violated Rule 3.1 and proved it to a level of "clear and convincing evidence." This ORDER is also online: https://www.vsb.org/docs/Straw-062217.pdf

80. **Exhibit 22** is the **December 28, 2021**, affidavit of Doug Allen Bernacchi, the expert who explained that I have not violated Rule 3.1 and that I deserve the

16

full $5 million I demand under the Indiana Bill of Rights, Art. 1, Sec. 21, and its takings compensation provision. Bernacchi's affidavit went even farther, stating that not only did I **not violate any ethical rule**, when my cases are reviewed without the Indiana Supreme Court's jaundiced eye, **I should have won instead of losing in those 4 federal cases**.

81. It is not a leap to see the interference using a trial balloon disciplinary complaint with federal cases still open or on appeal was Indiana's attempt to **inform those federal judges how Indiana wanted them to turn out**. The ADA coordinator, after all, was going around informing people outside the Indiana Supreme Court of what she had done. **Exhibit 8**.

82. **Exhibit 23** is a **January 6, 1984**, opinion of the D.C. Circuit that law licenses can indeed be taken for 5th Amendment purposes and compensated under certain conditions.

83. **Exhibit 24** was former IADC executive director Witte's 2017 Indiana Law Review public comments on my disciplinary case replete with falsehoods like the notion that I did not defend myself. The exhibits here show how false his statements were and misleading to the public. The fact that he never addresses is that ==his verified complaint was too late== and ==the whole matter was deemed dismissed by rule as of January 5, 2016==.

84. **REQUESTED FINDINGS:** Given these 24 exhibits, the Court should find that **no suspension happened** due to the verified complaint being late and without excuse or request for more time as well as the VSB ORDER stating there was

no ethical violation. The Court should find that imposing further process after the rules deemed the disciplinary complaint dismissed was a violation of due process. The Court should find that attacking 4 federal lawsuits in which no sanction happened violated the First Amendment right to use the Courts. Domanus v. Locke Lord LLP, 847 F.3d 469, 483 (7th Cir. 2017). Attacking federal lawsuit **merits** in the **absence of sanctions** should be found to violate federal criminal laws protecting the right to use federal courts without interference or oppression after the fact. 18 U.S.C. §§ 241, 245, 249, 1503(a). The Court should agree with the U.S. Supreme Court that losing on a Rule 12(b)(6) dismissal **does not automatically equate to the case being frivolous**. Neitzke v. Williams, 490 U.S. 319 (1989). The Court should also find that the VSB ORDER finding no Rule 3.1 ethical violations by Andrew Straw in those 4 federal lawsuits is now *res judicata* that no Indiana court can challenge at this point. 28 U.S.C. § 1738. And as a result of these findings, the Court should engage in a proper analysis of ==law licenses taken by the state without good reason or good cause== being a ==taking that the State of Indiana must compensate==.

85. In short, given the constitutional, statutory, court rule violations, and federal criminal violations, there was <u>no actual suspension here as a matter of law</u>. The takings analysis must start with that fact.

<span style="background-color: #00ff00">**TAKINGS ANALYSIS**</span>

86. I now turn to **Exhibit 4**, the affirmance opinion that allowed the dismissal, though not for the reasons given in the dismissal.

87. In **paragraph [9]**, the Indiana Court of Appeals *agreed with me* and not the dismissal order: "We, like Straw, do not read *Hulbert* as setting forth a bright-line rule that the holder of a professional license has no property interest whatsoever."

88. Paragraph [10] says what I did not do, and so I address those things here.

89. Now, **I do challenge the merits of my suspension**. Not to reverse that suspension, because the Indiana Supreme Court has sole power over attorney suspensions. But I challenge it just the same to show that no suspension was warranted; thus, **I deserve takings compensation**.

90. Now, **I do assert a wholesale lack of due process in my suspension**. The lack of mitigating factor analysis in multiple court filings by IADC shows that there was no interest in considering my mitigating facts, which are so obvious and should be front and center here. **Exhibits 2 & 3** explain the mitigating facts and the crimes I have suffered as a victim, including in the suspension.

91. If I have to allege that the State of Indiana took my 5 law licenses as some sort of **public use**, I do allege that now. Purging the entire bar of disabled lawyers is a public use. <mark>That rule exists.</mark> Ind. Adm. & Disc. R. 23, Sections 2(c) & 3(b). I was even asked by Bar Counsel to put myself into a disability status that has the same effect as a permanent suspension given my disabilities are permanent. **Exhibit 15, #58 admission**.

92. That ban may or may not be a violation of the ADA, Title II. I have not had a chance, amazingly, to test that theory. Procedural roadblocks have always

been placed in my way. But I do believe the **disabled attorney ban** violates Title II.

93. Paragraph [12] was the operative explanatory portion of Exhibit 4 that denied me.

94. That paragraph said I have not alleged there to be any ==forced labor== constituting a takings as well as there being no alleged taking of ==intangible property for a public use==.

95. These 2 types of deprivations based on a law license taking now appear are protected under the 5th Amendment and Indiana's Bill of Rights, Section 21. This is explained at ¶ 12 of the affirmance ORDER. <u>Straw v. Indiana</u>, 22A-PL-766 (Ind. Ct. App. 6/22/2022). **Exhibit 4**.

96. Those 2 grounds are now available on the reasoning of the Court of Appeals. I allege that **destroying property is also a grounds** that should be available, and this was not addressed in the dismissal or affirmance. My licenses are destroyed because there is no way to restore me and put me into the same position I was in 8 years ago before the full weight of the Indiana Supreme Court and its officers were turned against me like a barrage of cannons. *See*, ABA Rule 10 3-year suspension limit. I was singled out as an attorney with disabilities on SSDI, **disabled serving the Court that took my property**. **Exhibits 26, 27, & 28**.

97. The core of the 4/4/2022 dismissal ORDER's arguments, that law licenses are mere privileges and not constitutionally protected property, was ***rejected*** by the Indiana Court of Appeals. **Exhibit 4, ¶ [9]**.

98. The dismissal was granted because of a legal interpretation of my facts, not because law licenses are just royal privileges. Here is the critical paragraph:

> [12] In this instance, such cases are distinguishable because the State of Indiana did not likewise ==compel Straw to provide services==. The Disciplinary Commission neither ==conscripted Straw's labor without compensation== nor ==appropriated intangible property for public use==. The Disciplinary Commission suspended Straw's license to practice law ==as a sanction for professional misconduct==, thus prohibiting his provision of legal services. The suspension was ordered not for a ==public use==, but to further a ==public policy==. Considering the **allegations of the Amended Complaint as true**, Straw has stated no claim for inverse condemnation.

99. This affirmance ORDER was dated June 22, 2022, and today is January 4, 2023.

100.   But given there was no suspension and the discipline violated law and the Constitution, there was no public policy to transmogrify this taking of intangible property from a public use into a public policy. **Exhibits 2, 3, 21**.

101.   Given ==forced labor== and ==taking intangible property for a public use== are covered, as we now know, I am now going to allege via legal argument that these types of takings exist here.

102.   I also allege ==destruction of intangible property== and First Amendment retaliation (and federal crimes) as equitable grounds to support my takings claims and reject the false and pretextual statement that this was about lawyer discipline as "public policy" when it was not.

21

103.    No other person has EVER been suspended under these unlawful and criminal conditions, with the Indiana Supreme Court now subject to the hard law and prison time if this is treated honestly and prosecuted.

104.    I fully accept that if I had **actually been sanctioned by the federal courts**, Indiana could impose a reciprocal sanction at the same level or lower. But there were **no federal sanctions**. IADC admits this. **Exhibit 15, Admission #41.**

105.    I also allege that meddling in my 4 federal lawsuits in which I had no sanction at all, much less any suspension, was a **violation of federal criminal law** and successfully shut down my ability to use the federal courts, which is a First Amendment right. 18 U.S.C. §§ 241, 245, 249, 1503(a). Domanus v. Locke Lord LLP, 847 F.3d 469, 483 (7th Cir. 1/31/2017) ("Whether the branch of government is the legislature, the executive, or **the courts, the right to present one's viewpoint is protected by the First Amendment**."). **Exhibit 2 & 3**.

106.    Being decided before the Indiana suspension, Domanus put Indiana on notice that filing cases and pleadings in federal courts is a First Amendment right. That right was established in the 7th Circuit by a unanimous panel and with an opinion written by the Chief Judge of the 7th Circuit.

107.    The suspension, moreover, violated due process, including by allowing a **late verified complaint** that should have resulted in the disciplinary complaint being **"deemed dismissed"** and not considering any mitigating fact, on the face of the suspension order. **Exhibits 6, 9, & 10**.

108.    In re Straw, 68 N.E.3d 1070 (Ind. 2/14/2017):

## FEDERAL CIRCUIT COURTS FAILED TO PROTECT TAKINGS RIGHTS

109.     The Federal Circuit refused to protect my 5th Amendment property rights in my Indiana license and the 4 federal district court licenses that were suspended on the Indiana Supreme Court's request reciprocally.  These were 5th Amendment Takings claims under the Tucker Act and could not have been pursued in Indiana federal courts because the damages claimed were above $10,000.  Straw v. U.S., 21-1597, 21-1598 (Fed. Cir. 10/13/2021) (*certiorari* denied).

110.     The U.S. Court of Appeals for the D.C. Circuit did exactly the same thing, refusing to review any other court, state or federal, for takings, even if they exist.  Straw v. United States, 21-5300 (D.C. Cir. 3/1/2022).

111.     Providing only the tiniest of chances to have any review at the U.S. Supreme Court, **which refused to review any of this, state or federal,**[1] means that I have no constitutional rights as a practical matter because the courts reviewing are only the ones doing the attacking, ultimately. This is why the certiorari system violates due process. *Nemo judex in causa sua*. No foxes guarding henhouses.

112.     But *cf.*, Family Div. Trial Lawyers v. Moultrie, 725 F.2d 695, 707 (D.C. Cir. 1984):

> A "taking" might occur if the following crucial findings were made: First, the attorneys' expectations of pursuing the specialty practice of family law would have to be shown to be **sufficiently established within the norms and traditions of legal practice to constitute a property interest**.

---

[1] 16-1346, 17-6812, 17-8004, 17-8005, 17-8246, 17-8426, 17-7499, 17-8427.

The dissent takes umbrage at the notion that a protected interest in a specialty practice could ever be legally recognized, although it admits that ==the practice of law generally might so qualify==. See Diss.Op. at 714. We fail to see any inherent reason why ==the practice of law is protected by the takings clause== but the practice of a legal specialty could never be protected. Surely, for instance, it is at best questionable whether the District could declare that henceforth all lawyers practicing before the Family Division ==may not accept any fees or compensation at all==. We rule today only that the existence of a property interest in such practice is a matter calling for material factual development and argument in the district court, not one to be decided by appellate fiat in the absence of any record whatsoever. Second, the number of Family Division cases where the parties can pay for their own counsel would have to be limited enough so that withdrawing from the market of government compensated cases would effectively be a decision to **withdraw altogether from practice before the Family Division**, contrary to the appellees' and dissent's suggestion that the appellants would be "free to decide whether to conform to the proposed specifications or withdraw from the government market." *See* Brief for Appellees at 23 (quoting <u>Control Data Corp. v. Baldrige</u>, 655 F.2d 283, 293 (D.C. Cir. 1981)); *see also* Diss.Op. at 713. Finally, the assignment of uncompensated neglect cases attached to "volunteering" for CJA-compensated cases would have to be **so burdensome that it effectively denies the appellants' ability to earn a living by practicing family law**.

113.   **Exhibit 23**.

114.   See also: Costonis, *Presumptive and Per Se Takings: A Decisional Model for the Taking Issue,* <u>58 N.Y.U. L.Rev. 465</u>, 486-87 (1983) ("the taking determination depends on whether a linkage exists between the purpose of a measure and **the use of the affected property** establishing that the proprietor has not been ==unfairly singled out to bear losses== that should be distributed among the public generally").

115.   I have been singled out to bear losses and no one can question this. Taking my 5 law licenses is not like imposing a general tax. It is specifically *directed to me* and it was allowed to run indefinitely without review so my law

24

career would be OVER without any way to challenge it before judges and courts that are clearly causing the damage.

116.    "[R]equiring an attorney to accept **uncompensated appointments** as a condition of granting a license to practice law **has been considered a taking**." *State v. Bell,* 244 Ind. 701, 195 N.E.2d 464, 466 (1964).

117.    There is no real, substantive difference between forcing an attorney to do work for free and being forced not to work at all, both resulting in poverty. When the dictator orders a person to stand silent, it exercises the same control power of shouting at the victim to pick up a board and hold it over his head in punishment. Just because **the labor is doing nothing useful** does not deprive the dictator of dictator status.

118.    No ethical violation, moreover, was proven, so there is not even that excuse. **Exhibits 21 & 22** demonstrate this fact. This is about my former employer ==getting revenge and making up reasons on the fly== and violating every contrary rule and law to come to the permanent takings conclusion. I must be paid for what was taken.

## LAW LICENSE USAGE

119.    My first bar exam was in Virginia in 1999 and I passed. I was admitted on June 7, 1999. On that same date, I became a member of the Fourth Circuit U.S. Court of Appeals bar. I provided volunteer work for the Virginia State Bar Task Force on Technology and later I was a member of the Diversity Conference.

120.     My first legal client was in Virginia. His name was Alan M. Voorhees and he was a famous transportation planner.[2] I helped him as his corporate counsel and his CFO wrote a letter for me in 2011 after Mr. Voorhees died. **Exhibit 42.** I helped Mr. Voorhees with court records reform in Virginia. **Exhibit 43**.

121.     After that, I worked for the Indiana Supreme Court and every court and judge and clerk in the State of Indiana. **Exhibit 44.** I invented major reforms to protect domestic violence victims. **Exhibits 45, 47.**

122.     I worked for the Indiana University Maurer School of Law even after being fired by the Indiana Supreme Court. **Exhibit 46.** The dean, Lauren Robel, later the IU Provost, was on my side. **Exhibit 49.**

123.     Later, I did oppose data practices at the Supreme Court. **Exhibit 48**. Instead of respecting my views after I had statewide statistical responsibilities, my observations were discounted and I was called **"disgruntled."**

124.     Sadly, my law career crumbled after the suspension, including the ABA terminating my membership even after honoring me as a disabled lawyer. **Exhibit 50**.

125.     https://www.americanbar.org/groups/diversity/disabilityrights/initiativ es_awards/spotlight/straw_a/

---

[2]     https://www.washingtonpost.com/archive/local/2005/12/24/pioneer-in-highway-design-spread-talents-broadly/922663ef-58a5-4b78-bb81-e3cbee0831a5/

https://www.nytimes.com/2006/01/01/us/alan-m-voorhees-is-dead-at-83-designed-transportation-systems.html

126.     The history of my bar memberships and their destruction can be found in **Exhibits 34-41**.

## FIRST & FIFTH AMENDMENTS VIOLATED

127.     The suspension ORDER, **Exhibit 20**, specifically listed the suspension time as 180 days but added a provision not possible under the Disciplinary Rules, namely that the suspension was to continue after the 180 days without automatic reinstatement.  Ind. Adm. & Disc. R. 23, Sec. 3(a). This violates Due Process because that was never an option under the Disciplinary Rules.

128.     Further, the Disciplinary Commission and Supreme Court on multiple occasions failed to mention that I had a long list of mitigating facts. **Exhibits 2, 9, 10, 14, 15, 17, 18, & 20**. I placed these facts and documents on a website so anyone can review them easily.  http://mitigation.andrewstraw.com

129.     Such facts include my past service to the Indiana Supreme Court, my physical disabilities from driving to the Indiana Supreme Court, and this disciplinary process starting as a retaliation for my having used the ADA in federal court and because I made ADA complaints about the Indiana Supreme Court discriminating against me for over a decade.  **Exhibits 5 & 6.**

130.     Attacking my use of federal courts is a First Amendment violation and violates federal criminal law. Domanus at 483. **Exhibit 3**. Further, it was a due process violation not to mention the **total lack of any discipline** against me from 2002-2017.  It was a violation of due process to completely fail to mention that I was not accused of any crime or dishonest act.  It violated due process and a

federal statute to fail to mention how another state ==completely and totally rejected that I have violated Rule 3.1 or any other disciplinary rule==. 28 U.S.C. § 1738.

131.    https://www.vsb.org/docs/Straw-062217.pdf (**Exhibit 21**)

132.    The investigation went over the maximum time allowed, and thus the verified complaint was stale, too late, and violated Due Process. The rules, R. 23, Sec. 10(h), provide that the disciplinary complaint would be deemed dismissed after 12 months, but the matter continued and grew worse rather than *dying through deeming* as should have happened.

133.    The hearing officer report (**Exhibit 18**, ==12/16/2016==) was presented months past his 60-day deadline. IADC filed its proposed findings on ==June 13, 2016==, more than six months prior. **Exhibit 17**. Rather than *6 months* after the IADC's proposed findings, the time limit was 60 days. R. 23, Sec. 14(g)(1).

134.    The verified complaint was late with no request for extra time. The hearing officer report was late by about 4 months. There was no sanction in the original federal courts. Another state exonerated me.

135.    How much does it take before someone starts seeing I was yanked around from the moment I started complaining? ==I am the whistleblower== and taking my law license properties is NEVER GOING TO FLY as a response.

136.    It is dishonest. ==It is an ethical violation to take my licenses this way.==

137.    When the 180 days was up, the Supreme Court simply allowed my suspension to continue and directed the Clerk to **receive my pleadings but not**

<u>act upon them</u>.  There was NEVER any ORDER causing this suspension to be 71 months long.

138.    Thus, lateness made this discipline a violation of due process on multiple occasions, including letting it drag out for nearly 6 years.  The fact that no ORDER was made expanding suspension from a bogus 180 days without automatic reinstatement to 5 years and 11 months shows that the Court is ==taking from me without actually taking responsibility by issuing an ORDER after 180 days==.  I have objected practically every month since this false and misleading suspension ORDER was imposed on Valentine's Day, a massacre of my property rights, Chicago-style, on ==February 14, 2017==.

139.    Given the constitutional and legal and retaliation violations present here, ==I am not suspended==.  Virginia said that I did not violate Rule 3.1 and that is <u>the LAW</u>.  Indiana cannot override this law, especially over 5.5 years after it was decided in Virginia, 6/20/2017.  28 U.S.C. § 1738 (clauses 3):

> Such Acts, records and **judicial proceedings** or copies thereof, so authenticated, shall have the ==same full faith and credit in every court within the United States== and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from            which            they            are            taken.

140.    Indiana asked Virginia to suspend me. Indiana could have participated but chose not to. Virginia has the last word and my demands here simply give effect to that judicially final ORDER from Virginia. **Exhibit 21**.

141.    ==I am not legally suspended.==  My former employer is simply attacking me for complaining and using the ADA in ways they would not.  But American

state courts have been discriminating and violating and hurting disabled people like me from the time of the Founding until now, unabated and undeterred by federal law. **Exhibit 1**. <u>Tennessee v. Lane</u>, <u>541 U.S. 509</u>, 511, 525, 531 (2004).

142.     The Indiana Supreme Court bans all disabled people from practicing law. Ind. Adm. & Disc. <u>R. 23, Sections 2(c) & 3(b)</u>. This shows the public policy and use in ruining a disability rights leader like myself who challenged a former employer and called out their discrimination. **Exhibit 5**. This policy violates Due Process and the ADA. It is also unethical under <u>Judicial Conduct Rule 2.3</u> and Attorney Discipline <u>Rule 8.4(g)</u>.

143.     I am being attacked because my disability work and complaints (my **"advocacy"**) against the courts for their own discrimination is being viewed by my former employer as sedition or a threat.

144.     I now get bounced messages when I write to any Indiana Supreme Court email address that my message bounced to <u>indianasupremecourtsecurity@courts.in.gov</u>

145.     **That is harassment and it has happened even in December 2022**. I have a right to petition ANY state court officer who has hurt me. I should not be threatened with these messages that ***my messages*** are being reported to some kind of court police.

146.     I am being punished like any person subject to a sedition law.  However, my speech is not very inflammatory but merely seeks greater protections under

law for disabled people.  I should be protected by the First Amendment, but the U.S. Supreme Court has failed to allow me to protect my own law licenses, all 5 of them suspended by Indiana either directly or reciprocally.  I challenge it.

147.     I have rights to use the courts and I have rights under the First Amendment against states like Indiana.  <u>Brandenburg v. Ohio</u>, <u>395 U.S. 444</u>, 449 (1969):

> Held: Since the statute, by its words and as applied, **purports to punish mere advocacy** and to forbid, on pain of criminal punishment, assembly with others merely to advocate the described type of action, it falls within the condemnation of the First and Fourteenth Amendments. **Freedoms of speech** and press **do not permit a State to forbid advocacy** of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. <u>Whitney v. California</u>, 274 U.S. 357, overruled.

148.     When Indiana says that I was deprived of law licenses because of a public policy or because I violated some bogus and inapplicable professional conduct rule, that's simply not true.  Just because some outlier violator court, my former employer, says something does not make it true.

149.     The 5 Indiana justices have reasons to retaliate. They are not neutral arbiters of ethics here. They are former employers ==**getting revenge**== for my explicit complaints. **Exhibit 5**.

150.     When VSB says I did not violate any ethical rule, including Rule 3.1, this is the truth because VSB was first in time final to say that I proved my case by <u>**clear and convincing evidence**</u>.   **Exhibit 21, pages 4-5**. VSB directly

contradicts my former employer's suspension ORDER.  In re Straw, 68 N.E.3d 1070 (Ind. 2/14/2017). **Exhibit 20**.

151.      Thus two states have said polar opposite things about me, but one is my former employer with motivation to seek revenge against me for having made complaints about it. **Exhibits 5 & 6**. The Virginia State Bar had no ulterior motives.

## SUSPENSION OF LAW LICENSE AS PROPERTY TAKING: LABOR

152.      I was ORDERED to be suspended by my former employer on February 14, 2017.  **Exhibit 20**. This means that until the ORDER is lifted (it is still in effect as of this date), I have not been allowed to practice law and was thus **denied the ability** in Indiana and 4 federal courts (which reciprocally suspended me) **to earn money as a lawyer with those licenses**.  **Exhibits 25 & 33**.

153.      No compensation was made to me. *I* had to pay costs and I did in 2021 out of respect for the institution, not the illegal suspension.

154.      This was a prohibition on me earning money in Indiana with the licenses that I earned while working for the Indiana Supreme Court and its Chief Justice of Indiana in 2002. **Exhibit 44**.  No specific ORDER either continuing the suspension after 180 days or lifting it was imposed covering the full 5 years and 11 months.  Just as this should have been deemed dismissed by rule on 1/5/2016, the suspension should have lifted because there is no option to impose 180 days *without automatic reinstatement*. That suspension, **Exhibit 20**,

should have expired on ==August 13, 2017== if the rules were followed. R. 23, Sec. 3(a).

155.     I simply ***remain suspended*** because the Indiana Supreme Court ==**<u>wants it and will not act on my pleadings</u>**==, replete with truth, not because I was accused of **<u>ANYTHING</u>** meriting nearly 6 years of suspension.  I did nothing wrong in the first place.  **Exhibits 21 & 22**.

156.     Those without their own axes to grind like a vindictive former employer don't see me as having done anything unethical. Not only do they want to steal my ideas without giving me credit. They want to injure my reputation on top of that.

157.     Dirty pool.

158.     I was not ordered to provide attorney labor *to* anyone.  I was ordered **NOT TO LABOR AS A LAWYER IN INDIANA AT ALL, FOR ANYONE**.  And as I said above, this was imposed as a kind of punishment for sedition, and thus violated my First Amendment rights to use the courts and express my **viewpoints**, however unwelcome.  <u>Domanus v. Locke Lord LLP</u>, <u>847 F.3d 469</u>, 483 (7th Cir. **1/31/2017**); <u>Brandenburg v. Ohio</u>, <u>395 U.S. 444</u>, 449 (1969).

159.     The D.C. Circuit has said that "the practice of law is protected by the takings clause" in the plainest terms possible. <u>Family Div. Trial Lawyers v. Moultrie</u>, <u>725 F.2d 695</u>, 707 (D.C. Cir. 1984).

160.    There is no substantial difference between being forced to labor for 6 years and provide legal services for free and being ordered not to labor at all for 6 years, resulting in **poverty and humiliation**.

161.    For the attorney, the result is the same.  **Lack of compensation.**  If I had been ordered to **labor for 6 years for free exclusively for the Indiana Supreme Court**, this would have been a "conscription" under the terms of the Court of Appeals opinion. **Exhibit 4, ¶ [12].**

162.    However, being told **not to labor** **as a lawyer for 6 years** and not getting any compensation from the license and law degree ***I earned*** and paid for is not substantially different from being told to labor for free. Or, in my case, being told to stand in the corner for 6 years, unpaid, like some naughty little child.

163.    A slave being **told to sit on a stump** for 6 years as a punishment for criticizing Master is equally a slave to the slave forced to pick cotton for 5 years. Both are **not paid.**  Both are slaves. Their liberties have been restricted as well as their property rights in their labor.

164.    **I am the slave chained to the stump.**  I was not paid for that time on the stump.  I am rhetorically whipped for demanding greater civil rights and was punished with an anti-sedition type of attack. Attacking my use of federal courts is a federal crime. 18 U.S.C. §§ 241, 245(b)(1)(B), 249, 1503(a). **Exhibit 3.**

165.    The Indiana Supreme Court could express its political disfavor for a lawyer by ORDERING him to stand in the hallway of the Supreme Court for 6

years without paying him anything.  This is the **slave on the stump style of taking**.  ==This is me.==

166.     Discipline when there is no ethical violation is an attempt by the State ==to get even== against a civil rights violation victim.  ==ITS OWN VICTIM==. Psychologists call this DARVO:  **"Deny, Attack, and Reverse Victim and Offender."** https://www.blackburncenter.org/post/what-is-darvo

## SUSPENSION OF LAW LICENSE AS PROPERTY TAKING: INTANGIBLE PROPERTY TAKEN FOR A PUBLIC USE OR DESTROYED

167.     The Indiana Court of Appeals also mentioned in its paragraph 12 that taking an intangible property for ==a public use== is another example where compensation must be paid.

168.     My law license is a "New Property" under Goldberg v. Kelly, 397 U.S. 254, (n. 8) (1970).  It is thus an intangible property, like a lien or a right to welfare even when nobody else has that individual welfare or law license right from the government. The money from the right is fungible but the welfare or law license is not. That right is quite **specific to an individual**.

169.     My 5 law licenses taken here are ==specific to me==. No one else can use them. Just like when someone is granted Social Security on their own record or welfare under one's SSN.

170.     The D.C. Circuit has said ==a law license is protected property under the takings clause==. Family Div. Trial Lawyers v. Moultrie, 725 F.2d 695, 707 (D.C. Cir. 1984).

171.     Takings of intangible property can also be through **destruction** of the intangible property interest, as happened to me here after such an outrageously long period of suspension with no justification for it, only pretexts:[3]

172.     <u>Armstrong v. United States</u>, <u>364 U.S. 40</u>, 48 (1960) (**Government's total destruction of an intangible property [liens] was a compensable taking.**).

173.     **Personal property** is treated the same as real property and this is important to establish. "Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to **appropriation of personal property**. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." <u>Horne v. Department of Agric.</u>, <u>576 U.S. 350</u>, 358 (2015).

174.     A law license when suspended has an impact on the market for disabled lawyers and disability rights lawyers. There is a **fear factor** involved that affects the market for such lawyers and their services, suppressing the income of such lawyers and discouraging good lawyers from going into that specialization.

175.     The political court purpose is to chill the arguments of all other lawyers in that field by showing what happened to *my state law license* when I made

---

[3] The properties should be considered destroyed upon the expiration of the 3-year suspension limit in the ABA Model Rules, <u>Rule 10</u>. Thus, 3 years after the suspension started on 2/14/2017 was 2/14/2020. My law licenses, all 5, should be considered destroyed as of that date.

*arguments in federal court* that were labeled as frivolous when *they were not frivolous*. **Exhibit 22**.

176.    Frivolous can be applied to ***anything a court disfavors***. It is a term of attack used by judges against lawyers with whom they disagree and want to punish using their special powers, beyond any reproach.

177.    The first thing to be demonstrated is that <mark>an intangible property was taken</mark>, and that is *res ipsa loquitur* here. My 5 law licenses were taken through the actions of the Indiana Supreme Court, reciprocally expanded in damage. No one denies this.

178.    The due process and other violations and total failure to consider my mitigating facts demonstrate that intangible property will be taken from any lawyer who stands up to the big bad courts and their human rights violations, easily demonstrated through history. <u>Tennessee v. Lane</u>, at 511, 525 & 531.

179.    This affects the market of attorney services in many different ways, including the chilling factor and economic impacts for disabled people and their lawyers. **Exhibit 22.**

180.    An intangible property was taken here to effectuate **multiple public purposes and uses**. One can find that property was <mark>taken by suspension</mark> or <mark>destroyed by suspension</mark> on these facts. Either way you look at it, my property was taken, suppressed, or destroyed for multiple public purposes of a state court hostile to disability rights and wanting to purge the bar of disabled people, myself as the bellwether.

181.    The Indiana Supreme Court ban on a disabled person having a law license shows suspending me forever is ==a public use==: the goal being ==a bar with no disabled attorneys==. However presented, the taking of intangible property through destruction or any other means to create an environment of law hostile to disabled people is a public use that effectuates a public policy and ==the use furthers that policy==.

182.    The public policy was not to oppose my having done something unethical. That train derailed when the VSB contradicted it. **Exhibit 21**.

183.    Compensation is due because this is not spreading a burden over an entire population with a neutral tax. Here we have ==one individual being singled out for punishment to achieve a public use==. It could not be more obvious that my law licenses need to be compensated.

### OTHER SUPPORTING, EQUITABLE FACTS

184.    Even the Rodeheffer disciplinary complaint (**Exhibit 6, p. 2**) made this clear.  ADA Coordinator Rodeheffer **attacked my disability**, my petition to the Court, my federal lawsuits, and even my work helping Ukrainian refugees in 2014, before most of the world even knew there was a problem in Ukraine. I was providing human rights assistance to Ukrainians *8 years* before Russia fully invaded in 2022. Rodeheffer was engaging in a political attack to defend her client, the Indiana Supreme Court.  She was a lawyer for that court.

185.     This violated the unrepresented person rule because **she took my complaint (Exhibit 5) and used it against me (Exhibits 6 & 7) to benefit her own client**:

Rule 4.3. Dealing with Unrepresented Persons

In dealing on behalf of a client with a person who is not represented by counsel, **a lawyer shall not** state or **imply that the lawyer is disinterested**. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, **the lawyer shall make reasonable efforts to correct the misunderstanding**. The lawyer **shall not give legal advice to an unrepresented person**, other than the advice to secure counsel, if the lawyer knows or reasonably should know that **the interests of such person are or have a reasonable possibility of being in conflict with the interests of the client**.

Comment

[1] An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. In order to avoid a misunderstanding, **a lawyer will typically need to identify the lawyer's client** and, where necessary, **explain that the client has interests opposed to those of the unrepresented person**. For misunderstandings that sometimes arise when a lawyer for an organization deals with an unrepresented constituent, see Rule 1.13(d).

[2] The Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the client's. In the former situation, the possibility that the lawyer will compromise the unrepresented person's interests is so great that the Rule prohibits the giving of any advice, apart from the advice to obtain counsel. Whether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur. This Rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person. So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may inform the person of the

terms on which the lawyer's client will enter into an agreement or settle a matter, prepare documents that require the person's signature and explain the lawyer's own view of the meaning of the document or the lawyer's view of the underlying legal obligations.

186.    It is an easy matter to see that the ADA coordinator violated this rule. **Exhibits 5, 6, & 7**.

187.    The disciplinary complaint (**Exhibit 6, p. 2**) has the same tone of DARVO one finds in the suspension order 29 months later. **Exhibit 20**. My complaints are brushed aside and I am made into the ethical violator when the exact opposite is true.

188.    The disciplinary complaint was a legal document drafted to assist the Indiana Supreme Court in its legal defense against a former employee and his explicit complaints. **Exhibit 5**.

189.    The 7th Circuit has allowed every violation and has been 100% opposed and biased against me, even hiring the Indiana hearing officer (my appellee) who conducted the *in-absentia* hearing used against me by 5 courts.  The 7th Circuit hired him while he was actually my appellee: Straw v. Indiana Supreme Court, et. al., 17-1338, 692 F. App'x 291 (7th Cir. 2017) (**Dkts. 79 & 80**).

190.    https://www.ca7.uscourts.gov/news/positions/2017_appt_Judge_Ahler.pdf

191.    My law license has been suspended for **71 months as of January 2023**. It remains so. Instead of Ahler's **"brief suspension,"** *6 years* was imposed. **Exhibit 18, p. 23**.

40

192.     I want **just compensation** for the *de facto* disbarment of myself, <mark>making my law licenses useless</mark> after such a long suspension and my career as a civil rights lawyer in the Midwest is as a result now at an end.  My reputation was ruined everywhere when this should have been deemed dismissed by rule in 2016, avoiding all this damage to me starting with taking or destroying my licenses.

193.     The property taken in suspending 5 law licenses is intertwined with the reputation that goes with having an active in good standing law license. Taking the licenses does not just disallow me from using courts and representing people. It prevents the whole community from having me as an advocate with a good reputation rather than a bad one.

194.     4 federal law licenses were reciprocally suspended based on the Indiana suspension.  WIWD, ILND, INND, INSD.  I want the same compensation for each lost license. **$1 million**

195.     The 11th Circuit has refused me a license based on the Indiana suspension so I could represent my own family in the Camp LeJeune poisoning MDL-2218 appeal.

196.     An insurance company refused to do business with me *in Virginia* because of the Indiana suspension.  Straw v. Aon, *PLC*, 2:19-cv-00598 (D.UT 2019).

197.     A national lawyer directory has posted this Indiana suspension on my profile and made my Virginia license useless by saying I was not active in

Virginia ==when I was for 3 years==.  Straw v. Avvo, Inc., 20-35971 (9th Cir. 2021)
(9th Circuit allowed dishonesty in pleadings by Avvo's counsel and refused to
overturn a ridiculous district court order, thus allowing Avvo to libel me and
its law firm [hired the federal judge's clerk](#)).

198.    You can always tell when one side is going to be unfairly favored. It
happens when ==a court hires a party== or ==a party hires the clerk of the judge==! It
happens when a lawyer's lies and deliberate omissions but the judge protects
them.

199.    It is beyond question that the Indiana Supreme Court damaged my
reputation (**Exhibits 20 & 24**) and Avvo's profile is just the tip of the iceberg,
with many others ==repeating the falsehoods== that injured me nationwide.  Ind.
Const. Art. 1, Sec. 12.

200.    Even Mr. Witte for the Disciplinary Commission, who falsely omitted all
mitigating factors about me in his ==late verified complaint==, took a certain
pleasure in wrecking my reputation in an Indiana law review article that same
year.  [https://mckinneylaw.iu.edu/ilr/pdf/vol51p1181.pdf](https://mckinneylaw.iu.edu/ilr/pdf/vol51p1181.pdf) (**Exhibit 24**)

201.    He reveled in taking my licenses, like I was just another feather in his
cap. But he committed ***crimes*** to do this to me and broke rules and law.

202.    In the absence of law work as a lawyer even in Virginia, I did not have
money to pay for my Virginia law license renewal and had to resign and this
was accepted on 9/9/2021. **22 years after earning that license**, my poverty
caused me to resign a license never sanctioned for any actual unethical act.

42

203.    The ABA featured me as a disabled attorney and national leader on disability rights in 2014, but Indiana **ruined this** by taking my 5 law licenses:

204.    https://www.americanbar.org/groups/diversity/disabilityrights/initiatives_awards/spotlight/straw_a/

205.    When I was suspended in Indiana, the <mark>ABA expelled me from its membership</mark>. Straw v. ABA, 18-1795 (7th Cir. 2018) (settling my ADA claim for this act). **Exhibit 50**.

206.    This suspension and ABA expulsion severely limited my ability to advocate for the law changes needed to restore the disability rights Indiana has attacked.

207.    These include Medicare health claims privacy in the context of promoting 150 missing handicap spaces and being called an extortionist (Kloecker), disabled parents' fundamental right to parenting time (Rutherford), ADA coordinator integrity (Sconiers), and ABA's requirement to gather the same data in bar admissions for disability that it does for gender and race (ABA). http://InreStraw.andrewstraw.com

208.    The ABA has **almost** decided to agree with me in 2022 on collecting data to ensure disabled people are counted in law school admissions, just like gender and race. My ideas have become proposals, even if withdrawn. My idea, **8 years ago**, punished with suspension for almost 6 of those 8 years, is now <mark>a proposal at the ABA</mark>.

209.    This shows how crazy, how **absolutely nuts** the suspension was on me.

210.    As a matter of policy and law reform, I was right in all 4 of those cases. My expert has explained it. **Exhibit 22**. My responses to the proposed discipline also explain, perfectly, why I should have been left alone. **Exhibit 9, 12, 13, 19**.

211.    <u>Kloecker</u> was decided wrongly. http://kloecker.andrewstraw.com

212.    <u>Rutherford</u> was decided wrongly. http://rutherford.andrewstraw.com

213.    <u>Sconiers</u> was decided wrongly. http://sconiers.andrewstraw.com

214.    <u>ABA</u> was decided wrongly. http://aba.andrewstraw.com

215.    The Indiana Supreme Court was so aggressive and irrational toward me that it said I had an ethical obligation to file a lawsuit when I had explicitly agreed *in writing* with my client that I would do no such thing. **Exhibit 16, pages 136 & 137**.

216.    All of this damage flows from the illegal, animus-based disability discriminating suspension in Indiana.

217.    5 law licenses lost. My reputation and career injured without recourse up to now.

218.    The ABA, Rule 10, sets a 3-year limit on suspensions.

219.    2/14/2023 will be **6 years of Indiana law license suspension**.

220.    It is worth noting that I lived in Elgin, Illinois, at the Housing Authority on 120 South State Street from July 2016 through June 2018.  Thus, while the hearing officer was sitting on his laurels for months in 2016, I was not subject to his authority and could not be forced to participate, something he made a big deal about in his report *against me*. (**Exhibit 18**)

221.     Similarly, I was living in Elgin, Illinois, when the sanction ORDER was issued. **Exhibit 20**. The U.S. Supreme Court has explained service due process rights very clearly.   For most of the period from 2013 to 2016, I lived in Streamwood, Illinois.  The **demand for response letter**, dated 1/5/2015 (**Exhibit 6**), the **Verified Complaint**, dated 1/16/2016 (**Exhibit 10**), the **hearing officer report**, dated 12/16/2016 (**Exhibit 18**), and the Bar Counsel admissions and interrogatory responses (**Exhibits 14 & 15**) all show an **Illinois** address and it was a violation of constitutional due process law that I was forced to respond. Two of the federal cases Indiana attacked (<u>Kloecker</u> & <u>ABA</u>) were in **Illinois, not Indiana**.  They demanded my participation in 2015 and 2016 while I lived in Illinois and punished me while I lived in Illinois.  <u>Pennoyer v. Neff</u>, <u>95 U.S. 714</u>, 726 (1878).

## COUNT I – TAKING OF LAW LICENSE PROPERTY

222.     My law licenses are intangible private property and may not be taken by any judge without cause and without compensation.  <u>Family Div. Trial Lawyers v. Moultrie</u>, <u>725 F.2d 695</u>, 707 (D.C. Cir. 1984). **Exhibit 4, ¶¶ 9-12**.

223.     I have shown that my labor was oppressed, my licenses taken to rid the bar of disabled people or outright destroyed once the ABA maximum suspension time was reached (<u>3 years</u>).  These were grounds available, but I must be more explicit because the Indiana Court of Appeals (**Exhibit 4, ¶ 12**) wants an explicit argument on the **forced labor** or **intangible property taken for public use** grounds.  I make that argument here.

45

224.     I paid for the law school needed to obtain these licenses, studied for
years as my mother died of a U.S. Marine Corps cancer from Camp LeJeune,[4]
and I paid for the license fees themselves.  Ind. Const. Art. 1, Sec. 21.  *See also*,
Smith v. United States, 709 F.3d 1114, 1115-1117 (Fed. Cir. 2013).  Smith
contains a discussion of judicial takings and an attorney's law license.  See also
how a **state supreme court judicial takings without compensation** was *rejected*:
Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 159-165 (1980).

225.     The Scheehle case shows how conscripting an attorney's labor can
violate takings compensation requirements.  Scheehle v. Justices of Supreme
Court of Ariz., 508 F.3d 887 (9th Cir. 2007).  The Indiana Court of Appeals
opinion (**Exhibit 4, ¶ 12**) shows that **taking private intangible property for a
public use** must be compensated. Exhibit 4, ¶ 9.

226.     **No cause** was shown for a suspension here, **no crime or dishonest act**,
especially not a suspension lasting 5 years and 11 months.  In re Straw, 98S00-
1601-DI-12, 68 N.E.3d 1070 (Ind. 2/14/2017). **Exhibit 20**.

227.     The Indiana suspension imposed a sanction based on what happened in
***federal courts***, not state courts. But federal law licenses cannot be suspended
in the 7th Circuit without **a serious crime**.  In re Ming, 469 F.2d 1352, 1355-
1356 (7th Cir. 1972).

---

[4] Public Law 117-168, SEC. 804 (became law on 8/10/2022).

228.     By suspending without any original federal court sanction, the Indiana Supreme Court twisted the law so that federal courts that found **NO CRIME** suspended me ***as if*** **I had committed a crime.**

229.     That's dirty pool.

230.     VSB noted this fact, calling this Indiana suspension a "drive-by shooting." **Exhibit 21, pages 4-5.** The Bernacchi affidavit also denounced this suspension as wholly unwarranted and abusive. **Exhibit 22.**

231.     The 7th Circuit has explained that an attorney suspension is extremely serious and damages that attorney in their livelihood, which is why **a serious crime** is needed.  In re Ming, 469 F.2d 1352, 1355-1356 (7th Cir. 1972).

232.     How prescient, as that poverty is what happened to me and **I did NOT commit a crime** and **was not alleged to have committed any dishonest act** either, even by Indiana. That poverty caused me to resign my Virginia State Bar license after not earning any income with the license.

233.     In re Ming showed that **a serious crime was needed for a suspension** and **none was even accused here**. **Exhibit 20.**

234.     Furthermore, **all mitigating facts were omitted** from the official documents submitted to further this suspension from the Verified Complaint (**Exhibit 10**) forward.  This despite admissions from the Disciplinary Commission counsel to mitigating facts. **Exhibits 14 & 15.**  Placing false omissions into the disciplinary case record to injure me was criminal under federal law.  **Exhibits 2 & 3.** 18 U.S.C. §§ 241, 245(b)(1)(B), 249, 1503(a).

47

235.    **Omitting mitigating facts was done repeatedly** and the result was misleading the Indiana Supreme Court about my mitigating factors.   Even criminals like Curtis Hill get the benefit of mitigating factors, but not me. **Exhibits 2 & 3**.

236.    My law license was therefore more likely than not taken ==not under Rule 3.1== but to give effect to the ==ban on all disabled attorneys in Indiana==.   Ind. Adm. & Rule 23, Sections 2(c) & 3(b).

237.    This <u>disabled lawyer ban</u> is a political act by the Indiana Supreme Court that has not been approved by the Indiana legislature, the governor, or the People.   Article 7 of the Indiana Constitution ***does not authorize it***. And even if it did, the ADA, Title II, overrides the Indiana Constitution.

238.    Just because the justices can regulate law admissions and discipline does not give *carte blanche* to attack lawyers based on their civil rights work in federal courts.   No ADA coordinator gets to attack the mental illness of a lawyer like what happened to me. The Court does not, moreover, get to attack people for being women, black, Latino, LGBTQ+, Jewish, Muslim, or any other trait. Just being able to regulate the profession does not imply anything beyond that. There is also no original action in the Indiana Constitution at the Indiana Supreme Court for property takings, even if law licenses are involved.

239.    Given I am not asking this court to overturn the bogus suspension, but only to ==**FIND it bogus**== so as to allow property compensation, this should be granted without so much trouble. I have provided more than enough reasons.

48

240.    The Indiana disabled attorney ban libel of an entire class of people based on a civil rights trait that has long been protected in federal law.  42 U.S.C. §§ 12132, 12203.  <u>Tennessee v. Lane</u>, <u>541 U.S. 509</u>, 525, 531 (2004).

241.    At one time, it was permitted to ban women from being lawyers, but no longer.  <u>Bradwell v. State of Illinois</u>, 83 U.S. (16 Wall.) 130 (1873).

242.    Today, instead of banning women, **4 of the 9 U.S. Supreme Court justices *are women*.**

243.    I ache for the day when the Supreme Court of the United States is full of overtly disabled lawyers. Women's rights in law are far ahead of disability.

244.    At one time, even the NAACP's lawyers were accused of making frivolous constitutional arguments on behalf of race-based housing rights that are now entrenched in federal FHA law.  <u>Corrigan v. Buckley</u>, <u>271 U.S. 323</u>, 329 (1926). Like with me, making arguments that fail can be part of law reform efforts.

245.    The Indiana Supreme Court snubs federal law, including the Bill of Rights.  <u>Timbs v. Indiana</u>, <u>139 S. Ct. 682</u> (2019) (U.S. Supreme Court reversed Indiana Supreme Court, 9-0, on an 8th Amendment **excessive fines** property question).

246.    My law license means a great deal to me because **I received my law license while an employee of the Indiana Supreme Court, its Chief Justice, and the State Court Administrator, and I served over 400 Indiana courts.** Exhibit

**44**. I served those 400+ courts with broken bones in both my legs, my pelvis, my hand, ribs, nose, and skull behind my nose. **Exhibits 26**, **27**, & **28**.

247.    Nobody, not even the Chief Justice of Indiana, had a right or power to attack me for my <mark>disability advocacy</mark> in federal court after the reckless driver did that to me on the way the Indiana Supreme Court to work. ADA Title II. **Exhibits 26**, **27**, & **28**. <u>Brandenburg v. Ohio</u>, <u>395 U.S. 444</u>, 449 (1969).

248.    My two U.S. District Court licenses (INND & INSD) were granted in 2002, while I was working for the Chief Justice of Indiana. They are just as precious to me for that reason, just as **unique**.

249.    Despite that 2002 attack in firing me, I have accomplished something no other Indiana lawyer has ever accomplished. **Exhibits 44 & 46**. I was severely disabled in service to the Supreme Court that fired me. I was **working full time** on projects for 400+ state courts when I took and passed the Indiana Bar Exam. **Exhibits 34-41**.

250.    I was so determined to get this license, I passed the exam, I passed the character & fitness interview, and I passed the ***extra hearing*** wherein I was forced to discuss my bipolar and its symptoms, embarrassing the hell out of me in front of people with whom I worked. **Exhibit 38**.

251.    No other attorney will ***ever*** experience that constellation of **<u>pain and service</u>** to the Indiana Supreme Court and every court and judge in the state while obtaining his Indiana law license (and 2 federal law licenses). <mark>**I am unique.**</mark>

252.     I was an Indiana lawyer working for the Indiana Supreme Court when I was fired. **Exhibit 44**.

253.     I was not incompetent but pretexts were invented to justify removing me. **Exhibit 46**.

254.     The Supreme Court simply discriminates based on my civil rights category.  It does not do so for gender or race.  In fact, the Court has in 2021 established a diversity office that focuses on **gender and race, but not disability**.

255.     The justices are so backwards on disability, they let their ==ADA COORDINATOR RETALIATE AGAINST COMPLAINTS==.  **Exhibits 5, 6, 7 & 8**. To me, focusing on "popular" civil rights categories appears to be *whitewash* so people like me can continue to be disfavored.

256.     Being so unique and with <u>such unique service</u>, my licenses are worth more than other attorneys' licenses.  All 5 of them that Indiana took or caused to be indefinitely suspended, now at **71 months**.

257.     Ruined because I was ==conscripted to do NOTHING== and not be paid while doing that nothing.

258.     Ruined because ==my licenses were either destroyed or thrown in a vault and impossible to use== so as to chill the market for lawyers of my kind.  Chilled because it was announced for the whole world to see and published in a national reporter.  <u>In re Straw</u>, 68 N.E.3d 1070 (Ind. 2017). **Exhibit 20**.

259.     The fact is, I am being attacked because I am a witness to the civil rights violations (**Exhibits 2, 5, 21, & 22**) and crimes (**Exhibit 3**) of the highest court

in Indiana and that Court is predictably acting as many civil rights violators and criminals do.

260.      They attack their victims and the witnesses.

261.      This explains the crime, which is just an escalation of the problems that were never solved (**Exhibits 5 & 7**) when I made my ADA complaints in 2014. **Exhibit 3**.  All they have done in attacking me and committing crimes against me is prove I was right all along.

262.      They did not prove my being incompetent.  They proved only their own malice and the fact that they can get federal judges to cooperate with their evil actions.

263.      I want criminal prosecution and I want the Chief Justice to go to jail, but here I demand civil relief to compensate the taking of my property.

264.      My demand is a simple, flat **$5,000,000** ($1 million per license) so I can move on with my life and stop this poverty that is unnecessarily being inflicted on me, **singling me out for injury**.  I would not ask for the other licenses except I was denied at the Federal Circuit and D.C. Circuit U.S. Courts of Appeals unjustly.  Not a merits review against me in either of those courts. That was REFUSAL to give me a merits review and compensation, allowing **courts that violated me** to be the only ones that can decide the fate of my licenses and whether I am compensated or not.

265.      So, Indiana must clean up its own mess as a whole and the *Indiana* Bill of Rights has a provision for this. Ind. Const. Article 1, Sec. 21.

266.    The Indiana Court of Appeals (**Exhibit 4, ¶ 12**) has explained that **conscription of labor** is one grounds for a lawyer to be granted takings compensation.  Further, **taking intangible property for a public use** like the disabled lawyer ban and scaring off other disabled law students and lawyers is likewise grounds for compensation under Section 21. Both apply, as I have explained.

267.    The Indiana Court of Appeals affirmance verified that law licenses can be property and protected with takings compensation. **Exhibit 4, ¶ 9.**

268.    Destruction of intangible personal property was found to fall under the Takings Clause in <u>Armstrong v. United States</u>, 364 U.S. 40, 46-49 (1960)

269.    The Indiana Bill of Rights, Section 21, is enough grounds to pay me this **$5,000,000** for the taking of my 5 law license properties and I demand it.

## PRAYER FOR RELIEF

270.    I pray that this Court will consider the facts and grant me the compensation that is long overdue for the taking of my Indiana law license and 4 U.S. District Court licenses.  $5,000,000 is my compensation damages demand for either conscripting my labor or taking my intangible property for public uses or simply destroying them (<u>Armstrong</u>), which has not been compensated up to now. I have 3 theories for relief, any of which are sufficient.

271.    I have provided ample explanation for why I was not suspended in a legal fashion. The lateness evidenced over and over again was one reason. The retaliatory nature is another. My being right in the original 4 cases is another

reason. My not being suspended in the original courts is another reason. My First Amendment right to use the federal courts as I see fit without interference is another reason. My right to advocate and even be found wrong as part of a law reform program is another reason. My not being given the benefit of mitigating facts is another reason. My being served illegally out of state is another reason. The interference in federal court cases being a federal crime is the cherry on top. It is a federal crime to use the state disciplinary system to interfere with what happens in federal lawsuits, when the disciplinary complaint was made with those cases open or on appeal and the discipline acting as punishment for "not winning." Since no federal judge found any ethical violation or sanctioned me, that's the most that can be said. State courts must keep their noses out of federal court proceedings or be convicted and put in jail. **18 U.S.C. §§ 241, 245, 249, 1503(a)**.

272.   Unlike those who perpetuated the Big Lie such as "the Groper" Curtis Hill, I have not made any frivolous filing or case and I will never admit that my civil rights work has any frivolous purpose. Even in failing, my work is always a law reform effort at a minimum, outlining where courts say no and **Congress needs to act**. Example: ADA Amendments Act of 2008 (findings). In other words, anyone can be wrong about a legal issue and the history of the United States shows markedly different views on civil rights among the 3 branches. The elected officers of government are often much more amenable to civil rights changes than judges are.

273. Others may have a different opinion of my disability rights work (***always*** providing facts and law), but that's the problem with opinions. Any fool can have one, but making me into a ***crime victim*** after my sacrifices for every Indiana court just goes too far. I want just property takings compensation now.

**VENUE AND JURISDICTION**

274. Venue is proper in Monroe County, Indiana, as the Indiana Supreme Court injured me on the basis of the same bipolar disorder while I resided there in 2001-2003. **Exhibits 36, 37, 38; Exhibit 46**. The same bipolar disorder was the reason for the disciplinary attack against me in 2014 and the suspension in 2017. Monroe County is where my car accident occurred (**Exhibit 26**) on the way to the Indiana Supreme Court to work, also making my bipolar worse from the intense physical pain. (**Exhibits 28-31**) Indiana seems to get away with every denial of justice for me and I ask this to end. Even Workers Compensation was denied me when **I EARNED THAT**. A.S. v. Indiana, 22A-EX-679 (Ind. Ct. App. 2022). Also, every county court has jurisdiction since the Supreme Court's takings are done statewide, not in any one place, and my law license was suspended in Monroe County just like every other county. Monroe County is also located in the Southern District of Indiana and this is one of the law licenses I seek to be compensated by the State of Indiana. Ind. T.R. 75. Ind. Const. Art. 7, Section 4. The grounds for payment is a state constitutional ground, Indiana Constitution, **Article 1, Section 21, for property and/or labor compensation and/or intangible property destruction**. Indiana trial courts

have inherent power to enforce the Indiana Constitution and its money-mandating provisions. **Ind. Const. Art. 7, Sec. 1**. Trial courts adjudicate takings in Indiana. <u>Bayh v. Sonnenburg</u>, <u>573 N.E.2d 398</u> (1991). The original dismissal ORDER took jurisdiction and this was correct. It should keep jurisdiction and enforce my constitutional property rights.

275.     Further, this trial court is mandated to be open so that I may demand justice. **Indiana Constitution, Article 1, Section 12**:

> Section 12. ==All courts shall be open==; and every man, for injury done to him in his person, ==property==, or reputation, shall have ==remedy== by due course of law. Justice shall be ==administered freely==, and without purchase; ==completely==, and ==without denial==; speedily, and ==without delay==.

I verify on penalty of perjury that the above statements are true and correct or matters of opinion and my viewpoints. Dated: **January 4, 2023**.

Respectfully,

s/ Andrew U. D. Straw
712 H ST NE, PMB 92403
Washington, D.C. 20002
(847) 807-5237
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I hereby certify that on **January 4, 2023**, the foregoing **AMENDED COMPLAINT** was e-filed with the Court using the IEFS system and was served upon the opposing counsel by that electronic system. This should replace any prior operative complaint. Opposing counsel in the office of the Indiana Attorney General is:

1.  Alexander Carlisle, Alexander.Carlisle@atg.in.gov

Respectfully submitted,

s/ Andrew U. D. Straw
712 H ST NE, PMB 92403
Washington, D.C. 20002
(847) 807-5237
andrew@andrewstraw.com